# EXHIBIT 17

IBN WILLIAMS,  *

     *Plaintiff,*  *   IN THE

v.  *   CIRCUIT COURT

COPPIN STATE UNIVERSITY,  *   FOR
THE UNIVERSITY SYSTEM OF
MARYLAND, LUCIEN  *   BALTIMORE CITY
BROWNLEE, DEREK CARTER,
JUAN DIXON, THE STATE OF  *   No. 24-C-22-004662
MARYLAND, JOHN DOES I-X,
AND ABC CORP. I-X,  *

     *Defendants.*



*   *   *   *   *   *   *   *   *   *   *   *

## UNIVERSITY DEFENDANTS' MOTION TO DISMISS

Defendants, Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon, (collectively the "University Defendants"), through counsel, move to dismiss the complaint under Maryland Rule 2-322(b) because they are entitled to immunity and for failure to state a claim upon which relief can be granted. For the reasons set forth more fully in the accompanying memorandum, the University Defendants respectfully request that all claims against them be dismissed in their entirety with prejudice.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

ARIEL LICHTERMAN
Attorney No. 1801110004
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
alichterman@oag.state.md.us
(410) 576-6459
(410) 576-6437 (facsimile)

May 18, 2023

Attorneys for Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon

## CERTIFICATE OF SERVICE

I certify that, on this 18th day of May, 2023, the University Defendant's Motion to Dismiss and Memorandum of Law in Support of the Motion to Dismiss were served by first-class mail and email on all persons entitled to service:

Terence Davis, Esq.
Kayann Chambers, Esq.
Morgan & Morgan
1901 Pennsylvania Ave. N.W., Suite 300
Washington, DC 20006
tdavis@forthepeople.com
kschambers@forthepeople.com
*Attorneys for Plaintiff*

Tiffani Collins, Esq.
Collins Legal Group, LLC
20 South Charles Street, Suite 901
Baltimore, MD 21201
Tiffani@tcollinslaw.com
*Attorney for Lucien Brownlee*

Ariel Lichterman

IBN WILLIAMS,                                  *

        *Plaintiff*,                        *          IN THE

v.                                             *          CIRCUIT COURT

COPPIN STATE UNIVERSITY,                       *          FOR
THE UNIVERSITY SYSTEM OF
MARYLAND,             LUCIEN                    *          BALTIMORE CITY
BROWNLEE, DEREK CARTER,
JUAN DIXON, THE STATE OF                        *          No. 24-C-22-004662
MARYLAND, JOHN DOES I-X,
AND ABC CORP. I-X,                             *

        *Defendants*.                     *

*   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OF LAW IN SUPPORT OF
## THE UNIVERSITY DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................... 1

LEGAL STANDARD .......................................................................................... 6

ARGUMENT ....................................................................................................... 7

    I.     DEREK CARTER AND JUAN DIXON ARE IMMUNE FROM SUIT. ................ 7

    II.    THE UNIVERSITY DEFENDANTS ARE IMMUNE FROM PLAINTIFF'S BREACH OF CONTRACT CLAIM. ............................................................. 9

    A.    Plaintiff's Breach of Contract Claim is Not Based on a Written Contract. .. 9

    B.    Plaintiff's Breach of Contract Claim is Barred as Untimely. ...................... 11

    III.    THE COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST THE UNIVERSITY DEFENDANTS. ................................................................. 13

    A.    The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress. .............................................................................................. 14

    B.    The Complaint Fails to State a Claim for Negligence. ............................... 14

    1.    The University Defendants Had No Duty to Protect Plaintiff from the Blackmailer. ............................................................................................ 15

    2.    The University Defendants Did Not Breach Any Purported Duty to Protect Plaintiff and Did Not Cause Plaintiff Any Injury. ............................................ 21

    C.    The Compaint Fails to State a Claim for Negligent Hiring and Retention. 22

CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*Abrishamian v. Washington Med. Grp., P.C.,*
216 Md. App. 386 (2014) ................................................................................ 2, 3

*Adamson v. Correctional Med. Svcs., Inc.,*
359 Md. 238 (2000) ............................................................................................ 6

*Alban v. Fiels,*
210 Md. App. 1 (2013) ..................................................................................... 14

*ARA Health Servs., Inc. v. Dep't of Pub. Safety & Corr. Servs.,*
344 Md. 85 (1996) .............................................................................................. 7

*Ashburn v. Anne Arundel Cnty.,*
306 Md. 617 (1986) ......................................................................................... 16

*Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 630 n. 2 (1986) ....................................... 16

*Asphalt & Concrete Servs., Inc. v. Perry,*
221 Md. App. 235 (2015) ................................................................................. 22

*Baltimore City Bd. of Sch. Comm'rs v. Koba Inst., Inc.,*
194 Md. App. 400 (2010) ................................................................................. 10

*Barclay v. Briscoe,*
427 Md. 270 (2012) ......................................................................................... 19

*Bobo v. State,*
346 Md. 706 (1997) ................................................................................. 6, 7, 18

*Conaway v. State,*
108 Md. App. 475 (1996) ................................................................................... 8

*Corinaldi v. Columbia Courtyard, Inc.,*
162 Md. App. 207 (2005) ................................................................................. 16

*Daughton v. Maryland Auto. Ins. Fund,*
198 Md. App. 524 (2011) ................................................................................. 11

*Dennard v. Towson Univ.,*
62 F. Supp. 3d 446 (D. Md. 2014) .................................................................... 13

*Dep't of Pub. Safety & Corr. Servs. v. ARA Health Servs., Inc.,*
107 Md. App. 445 (1995) ................................................................................... 9

*Dept. of Natural Resources v. Welsh,*
308 Md. 54 (1986) .............................................................................................. 7

*Doe v. Bd. of Trustees of St. Mary's Coll. of Maryland,*
No. CV CBD-19-1760, 2019 WL 6215543 (D. Md. Nov. 20, 2019) ........................... 10

*Evans v. Morsell,*
284 Md. 160 (1978) ...................................................................................................... 22

*Gourdine v. Crews,*
405 Md. 722 (2008) ...................................................................................................... 15

*Hamilton v. Ford Motor Credit Co.,*
66 Md. App. 46 (1986) ................................................................................................. 14

*Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.,*
382 Md. 170 (2004) ...................................................................................................... 23

*Hrehorovich v. Harbor Hosp. Ctr.,*
93 Md. App. 772 (1992) ................................................................................................. 6

*Katz v. Washington Suburban Sanitary Commission,*
284 Md. 503 (1979) ........................................................................................................ 7

*Keerikkattil v. Hrabowski,*
No. CIV.A. WMN-13-2016, 2013 WL 5368744 (D. Md. Sept. 23, 2013) ................... 10

*Kelly v. McCarrick,*
155 Md. App. 82 (2004) ............................................................................................... 20

*Lamb v. Hopkins,*
303 Md. 236 (1985) ...................................................................................................... 17

*Lubore v. RPM Assocs., Inc.,*
109 Md. App. 312 (1996) ............................................................................................... 6

*Monarch Acad. Baltimore Campus, Inc. v. Baltimore City Bd. of Sch. Commissioners,*
457 Md. 1 (2017) .......................................................................................................... 10

*Montgomery Cnty. v. Woodward & Lothrop, Inc.,*
280 Md. 686 (1977) ........................................................................................................ 3

*Muthukumarana v. Montgomery Cnty.,*
370 Md. 447 (2002) ................................................................................................ 14, 21

*Patton v. United States of Am. Rugby Football,*
381 Md. 627 (2004) ...................................................................................................... 16

*Patton v. Wells Fargo Fin. Md., Inc.,*
437 Md. 83 (2014) .......................................................................................................... 6

*Perry v. Asphalt & Concrete Servs., Inc.,*
447 Md. 31(2016) .................................................................................................... 22, 24

*Polek v. J.P. Morgan Chase Bank, N.A.,*
424 Md. 333 (2012) ...................................................................................................... 11

*Rhaney v. Univ. Of Maryland E. Shore,*
  388 Md. 585 (2005) ................................................................................. 15, 16

*State v. Sharafeldin,*
  382 Md. 129 (2004) ........................................................................................ 11

*Stern v. Bd. of Regents, Univ. Sys. of Maryland,*
  380 Md. 691 (2004) ........................................................................ 8, 9, 10, 11

*Stubbs v. Morgan State Univ.,*
  No. 0813 Sept. term 2019, 2020 WL 4018319 (Md. Ct. Spec. App. July 16, 2020) .... 20

*Student "A" v. Hogan,*
  513 F. Supp. 3d 638 (D. Md. 2021) .............................................................. 10

*Todd v. Mass Transit Admin.,*
  373 Md. 149 (2003) ........................................................................................ 15

*Univ. of Maryland v. Maas,*
  173 Md. 554 (1938) ........................................................................................ 13

*Valentine v. On Target, Inc.,*
  353 Md. 544 (1999) .................................................................................. 15, 20

**STATUTES**

Educ. § 12-101 .............................................................................................. 8, 13

Educ. § 12-102(a) ............................................................................................... 8

Cts. & Jud. Proc. § 5-522(b) ............................................................................... 7

State Gov't. § 12-104 .......................................................................................... 7

State Gov't § 12-105 ......................................................................................... 7, 8

State Gov't § 12-202 .................................................................................. 9, 11, 12

State Gov't. § 12-201 ........................................................................................... 9

**RULES**

Maryland Rule 2-322(b) ...................................................................................... 5

Maryland Rule 5-201(d) .................................................................................. 2, 3

**TREATISES**

Restatement (Second) of Torts § 319 ................................................................ 17

Restatement (Second) of Torts, §§ 316-320 ................................................. 16, 17

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants Coppin State University (the "University"), the University System of Maryland (the "System"), the State of Maryland, Derek Carter, and Juan Dixon (collectively the "University Defendants"), by their undersigned attorneys, submit this memorandum of law in support of their motion to dismiss the claims against them.

## INTRODUCTION

Plaintiff Ibn Williams filed a complaint against the University Defendants asserting claims of negligence, negligent hiring and retention, negligent infliction of emotional distress, and breach of contract relating to their management of the University's basketball program while he was a student-athlete on the basketball team.[1]  Plaintiff claims that as result of the University Defendants' purported negligent management of the basketball team, he was harassed and blackmailed outside of basketball activities by an unknown individual.  For the reasons set forth herein, all claims against the University Defendants should be dismissed in their entirety with prejudice.

## FACTUAL ALLEGATIONS[2]

Plaintiff began attending the University as a freshman in the Fall of 2018, after being recruited to become a member of the University's basketball program.  Complaint ¶¶ 10-11, 21, 29.  Plaintiff alleges that, during his freshman year, he was contacted on social

---

[1] A separate claim for intentional infliction of emotional distress was brought solely against Defendant Lucian Brownlee.

[2] The University Defendants assume the truth of the factual allegations for the purposes of the instant motion only, and reserve their right to challenge or contest any factual allegation in the event any claims survive this motion.

media by an individual who claimed to be a woman interested in a "romantic relationship." Compl. ¶ 15. As part of this "developing romantic relationship," plaintiff alleges he sent "highly personal sexual images of himself" to this individual via social media. Compl. ¶¶ 16-17. After receiving these images, the individual allegedly informed plaintiff that the woman he thought he was communicating with "did not exist," and that the individual would publicly disclose these images unless plaintiff complied with certain "depraved demands." Compl. ¶¶ 17-19. Plaintiff claims he "attempt[ed] to appease his tormenter" (hereinafter "the blackmailer"), because he was afraid that release of the images would cause "devastating embarrassment and shame to him and his family" and would "destroy his reputation and basketball career." Compl. ¶¶ 20, 22.

The complaint alleges that the blackmailer's demands escalated in the spring 2019 semester and became increasingly "salacious." Compl. ¶ 21. Plaintiff learned that other members of the University's basketball team were being blackmailed as well, including defendant Lucian Brownlee. Compl. ¶¶ 21-22.[3] Mr. Brownlee was a fellow student-athlete on the University's basketball team through the spring 2019 semester.[4] Plaintiff claims the

---

[3] The complaint erroneously repeats paragraph numbers "21" and "22" twice before continuing in sequential order. The citation in this sentence refers to the second paragraph "21" and the second paragraph "22."

[4] *See* 2018-2019 Coppin State University Men's Basketball Roster and bio information for Lucian Brownlee, available at https://coppinstatesports.com/sports/mens-basketball/roster/lucian-brownlee/1263 (last visited May 18, 2023). The University Defendants request that the Court take judicial notice of this fact under Maryland Rule 5-201(d). It is appropriate for a court to take judicial notice "of matters of common knowledge or [those] capable of certain verification." *Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 413–14 (2014) (quotations and citations omitted). Maryland Rule 5-201(b) defines this as facts that are "either (1) generally known within the territorial

2

blackmailer directed him to engage in sexual encounters with Mr. Brownlee, which plaintiff resisted, until November 2019. Compl. ¶¶ 24-26. During the fall 2019 semester, Mr. Brownlee was no longer an athlete on the team, but had become Director of Player Development. Compl. ¶ 22.[5] Plaintiff alleges that under threat of exposure of the sexual images he had already sent to his blackmailer, he and Mr. Brownlee agreed to comply with the blackmailer's demand, and recorded a video of them engaging in oral sex and sent it to the blackmailer. Compl. ¶ 26.

The complaint alleges that the blackmailer made repeated demands for sexual videos, including of plaintiff and Mr. Brownlee together, through the Spring 2020 semester. Compl. ¶¶ 27-34. Plaintiff claims that when he attempted to "disengage," or

---

jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In other words, judicial notice may be taken of "adjudicative facts," which "usually answer the questions 'of who did what, where, when, how, why, with what motive or intent.'" *Montgomery Cnty. v. Woodward & Lothrop, Inc.*, 280 Md. 686, 712 (1977). Such facts typically fall "into either the 'everybody around here knows that' category, or the 'look it up' category." *Abrishamian*, 216 Md. App. at 414. When requested by a party and the information is supplied, Rule 5-201(d) makes it mandatory for the court to take judicial notice. Md. Rule 5-201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information."). "Many different types of information can fall under the umbrella of judicial notice, most commonly public records such as court documents, or facts that are widely known (often within the particular geographic area where a case is pending)." *Abrishamian*, 216 Md. App. at 413 (citations omitted). The fact sought to be judicially noticed here is a public record of the University, readily available and ascertainable in the University's public files and searchable on its website. Accordingly, the Court should take judicial notice of this fact.

[5] *See also* 2019-20 Coppin State University Men's Basketball Coaching Staff, available at https://coppinstatesports.com/sports/mens-basketball/coaches/2019-20 (last visited May 18, 2023). The University Defendants request that the Court take judicial notice of this fact under Maryland Rule 5-201(d). *See* footnote (4) above.

3

satisfy his blackmailer by sending more sexual videos of himself alone, the blackmailer threatened to "wild out" if he did not comply. Compl. ¶¶ 28, 31. Plaintiff states that he did not inform his family or anyone else about the blackmail and sexual images and videos. Compl. ¶ 35. Instead, plaintiff claims he told his family that there was "unchecked use of illegal drugs" by members of the basketball team while they travelled for away games, and he sought to transfer to a different school. Compl. ¶ 35. In furtherance of this plan, plaintiff entered his name into the National Collegiate Athletic Association ("NCAA") transfer portal. Compl. ¶ 35.[6] After the 2019-2020 basketball season concluded, and the disruption caused by the onset of the COVID-19 pandemic, Mr. Brownlee left the University and was no longer the Director of Player Development for the basketball team. Compl. ¶ 36.[7]

The complaint alleges that in June 2020, after conclusion of the spring 2020 semester, plaintiff and his father met with defendant Juan Dixon, who then was coach of the basketball team, to discuss plaintiff's allegation about drug use on the basketball team and his desire to transfer to a different school, but plaintiff did not inform his father or Mr. Dixon about his blackmailer. Compl. ¶ 35.[8] Plaintiff claims he was not satisfied that Mr. Dixon could "address the drug issue in any meaningful way," but nevertheless, agreed to exit the transfer portal and resume his status with the University's basketball team. Compl.

---

[6] The complaint erroneously lists paragraph number "35" twice. The citation in this sentence is to the second paragraph "35."

[7] *See also* Men's Basketball Coaching Staff rosters for 2020-21, 2021-22, and 2022-23, available at https://coppinstatesports.com/sports/mens-basketball/coaches (last visited on May 18, 2023). The University Defendants request that the Court take judicial notice of this fact under Maryland Rule 5-201(d). *See* footnote (4) above.

[8] This citation also refers to the second paragraph "35."

4

¶ 35.[9]  Plaintiff claims that Mr. Dixon assured him that the financial assistance that had previously been provided to him would continue if he returned to the basketball team the following semester, but he does not allege that there was a signed, written agreement to that effect.  Compl. ¶ 35.[10]

Plaintiff claims that after the disruption caused by the COVID-19 pandemic, he returned to campus in the fall of 2020, and the blackmailer continued making demands. Compl. ¶¶ 36-37.  Plaintiff alleges that he did not respond to the blackmailer, and as a result, the blackmailer publicly released the sexual videos of plaintiff and Mr. Brownlee. Compl. ¶¶ 36-37.

The complaint states that the identity of the blackmailer is unknown, *see, e.g.* Compl. ¶¶ 17, 18, 24, 25, but plaintiff alleges, "upon information and belief," in another part of the complaint, that Mr. Brownlee was the blackmailer. Compl. ¶ 29. The complaint does not allege that plaintiff ever reported the harassment or blackmail to anyone or communicated to anyone his purported belief that Mr. Brownlee was the blackmailer, and indeed, it alleges plaintiff hid these facts. *See, e.g.* Compl. ¶ 35.  Plaintiff claims he met with Mr. Dixon the day following the release of plaintiff's sexual videos, but does not allege that he informed Mr. Dixon that the videos were the result of blackmail or harassment, or that he believed Mr. Brownlee, who was no longer associated with the University or its basketball program, was the blackmailer.  Compl. ¶ 38-39.  Plaintiff

---

[9] This citation also refers to the second paragraph "35."

[10] This citation also refers to the second paragraph "35."

alleges that Mr. Dixon expressed concern for plaintiff and allegedly noted that Mr. Brownlee had a "troubled background" and was "emotionally imbalanced." Compl. ¶ 38-39.

Plaintiff alleges that he subsequently requested that the University conduct an investigation into the blackmail and harassment. Compl. ¶ 41. The complaint states that the University hired a third party to conduct an independent investigation, but plaintiff allegedly became distressed when the investigator questioned him about his sexual activities and orientation. Compl. ¶ 42. The complaint alleges that the financial assistance that had "previously [been] promised and provided" to plaintiff was "terminated without explanation" for the fall 2020 semester. Compl. ¶ 45.

## LEGAL STANDARD

Under Maryland Rule 2-322(b), a complaint should be dismissed if a defendant is entitled to governmental immunity or if the complaint fails to state a claim upon which relief may be granted. A defendant moving under this rule "is asserting that, even if the allegations of the complaint are true, the plaintiff is not entitled to relief as a matter of law." *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 322 (1996) (citing *Hrehorovich v. Harbor Hosp. Ctr.*, 93 Md. App. 772, 784 (1992)). In ruling on such a motion, the court assumes the truth of the complaint's well-pled factual allegations and any reasonable inferences that can be drawn therefrom. *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 95 (2014) (citing *Bobo v. State*, 346 Md. 706, 708 (1997)). However, "'the facts comprising the cause of action must be pleaded with sufficient specificity'" or the complaint will be dismissed. *Adamson v. Correctional Med. Svcs., Inc.*, 359 Md. 238, 246 (2000) (quoting *Bobo*, 346

Md. at 708-09). "Bald assertions and conclusory statements by the pleader will not suffice." *Id.* If a complaint contains allegations that are "doubtful and ambiguous, it will be construed most strongly against the pleader in determining sufficiency." *Bobo*, 346 Md. at 709.

## ARGUMENT

### I.    DEREK CARTER AND JUAN DIXON ARE IMMUNE FROM SUIT.

Mr. Carter and Mr. Dixon are entitled to statutory immunity from all of plaintiff's claims and should therefore be dismissed from this action. Absent legislation consenting to suit, the doctrine of sovereign immunity precludes an action in tort or contract against the State. *Dept. of Natural Resources v. Welsh*, 308 Md. 54, 58-9 (1986). Although immunity may be waived "either directly or by necessary implication," *Katz v. Washington Suburban Sanitary Commission*, 284 Md. 503, 507-508 (1979), "dilution of the doctrine should not be accomplished by 'judicial fiat.'" *ARA Health Servs., Inc. v. Dep't of Pub. Safety & Corr. Servs.*, 344 Md. 85, 92 (1996) (citation omitted).

The State of Maryland has waived its sovereign immunity from actions in tort brought in courts of the State through the Maryland Tort Claims Act ("MTCA"). *See* Md. Code Ann., State Gov't. § 12-104 (LexisNexis 2021). In exchange for this waiver, however, the MTCA protects "State personnel" by conferring upon them immunity from suit in courts of the State and from liability for a tortious act or omission that is within the scope of their public duties and is made without malice or gross negligence. State Gov't § 12-105; Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (LexisNexis Supp. 2019). Thus, if State personnel "perform a negligent act, for which the State has waived immunity, then

7

'State personnel' are immune from suit." *Conaway v. State*, 108 Md. App. 475, 496 (1996). In other words, State personnel are immune from suit or liability as to any claim of negligence or other non-malicious tortious conduct arising out of the performance of their duties for the State.

Plaintiff's claims against Mr. Carter and Mr. Dixon, namely for negligence, negligent hiring and retention, negligent infliction of emotional distress, and breach of contract, are claims against which Mr. Carter and Mr. Dixon are immune. Coppin State University is a constituent institution of the University System of Maryland, Md. Ann. Code, Educ. § 12-101(b)(6)(vi) (LexisNexis 2018), which is an "instrumentality of the State," and "an independent unit of State government." Educ. § 12-102(a); *see also Stern v. Bd. of Regents, Univ. Sys. of Maryland*, 380 Md. 691, 702 (2004) (holding that the "Board [of Regents of the University System of Maryland] is considered to be an arm of the State Government for the purposes of asserting the defense of sovereign immunity"). As the Athletic Director and Men's Basketball Coach at Coppin State University at all relevant times, respectively, Mr. Carter and Mr. Dixon are "State personnel." State Gov't § 12-105; Compl. ¶ 43. Plaintiff's claims against Mr. Carter and Mr. Dixon are for negligence (Count I), negligent hiring and retention (Count II), negligent infliction of emotional distress (Count IV), and breach of contract (Count V), the very type of non-malicious conduct for which Mr. Carter and Mr. Dixon retain their immunity as State personnel. *See Conaway*, 108 Md. App. at 496. Accordingly, all claims against Mr. Carter and Mr. Dixon should be dismissed in their entirety.

8

## II.   THE UNIVERSITY DEFENDANTS ARE IMMUNE FROM PLAINTIFF'S BREACH OF CONTRACT CLAIM.

In addition to the individual State personnel immunity to which Mr. Carter and Mr. Dixon are entitled, as set forth above, all of the University Defendants are immune from plaintiff's breach of contract claim asserted in Count V of the complaint. The State of Maryland has enacted only a limited waiver of sovereign immunity for contract claims against State entities which requires that certain preconditions be met. If a claim is not "based on a written contract that an official or employee executed for the State," and the claimant does not meet a one-year filing deadline, then the State retains its immunity. State Gov't. §§ 12-201(a), 12-202. Plaintiff's breach of contract claim fails to meet both preconditions.

### A.   Plaintiff's Breach of Contract Claim is Not Based on a Written Contract.

Plaintiff's breach of contract claim is barred because it is not based on a written contract. State Gov't. § 12-201. A breach of contract claim is "based on" a contract "where that contract contains the terms whose breach is alleged." *Dep't of Pub. Safety & Corr. Servs. v. ARA Health Servs., Inc.*, 107 Md. App. 445, 409 (1995), *aff'd*, 344 Md. 85 (1996). The explicit "waiver language of § 12–201(a) requires a written contract signed by a person expressly authorized to execute the contract for the University System." *Stern v. Bd. of Regents, Univ. Sys. of Maryland*, 380 Md. 691, 722 (2004). "A written contract is defined as one 'whose terms have been reduced to writing.'" *Id.* at 721 (citation omitted). Because this condition is unambiguously stated in the statute, there is "little, if any, room for a court to find a common law exception to SG § 12–201 on the basis of theories of

9

quasi-contract or implied contract." *Baltimore City Bd. of Sch. Comm'rs v. Koba Inst., Inc.*, 194 Md. App. 400, 413 (2010), disapproved on other grounds by *Monarch Acad. Baltimore Campus, Inc. v. Baltimore City Bd. of Sch. Commissioners*, 457 Md. 1 (2017).

Consistent with this understanding of the statute, courts have held that student tuition bills, although written, did not constitute "a signed written contract sufficient to satisfy the requirements of § 12–201(a)." *Stern*, 380 Md. at 723. In fact, even written policies and procedures from the University System of Maryland and its member institutions have been deemed insufficient to create a written contract under the statute. *Student "A" v. Hogan*, 513 F. Supp. 3d 638, 644 (D. Md. 2021) (citing *Doe v. Bd. of Trustees of St. Mary's Coll. of Maryland*, No. CV CBD-19-1760, 2019 WL 6215543, at *1 (D. Md. Nov. 20, 2019), and *Keerikkattil v. Hrabowski*, No. CIV.A. WMN-13-2016, 2013 WL 5368744, at *8 (D. Md. Sept. 23, 2013)). Equally insufficient are a University's advertisements about the benefits and activities available to students, *Student "A"*, 513 F. Supp. 3d at 644, as well as "[l]etterhead, a school stamp or a school insignia on a document...." *Stern*, 380 Md. at 723.

Fatal to plaintiff's breach of contract claim is that it is based on no contract at all. The complaint alleges that the University Defendants purportedly breached "promises" when Plaintiff was not provided with financial assistance for housing and tuition costs for the fall 2020 semester. Compl. ¶¶ 69-70. Specifically, plaintiff alleges that this was a violation of what he was "[p]romised," Compl. ¶ 70, and of "agreement assurances provided by Defendant Dixon." Compl. ¶ 71. Yet nowhere in the complaint does plaintiff allege that there was a written contract signed by an authorized University employee stating

10

that he was to be provided financial assistance for the fall 2020 semester. These alleged oral "promises" or "agreement assurances" are insufficient to satisfy the requirements of Section 12-201(a). *Stern*, 380 Md. at 723 ("As the parties here did not have such a signed written contract sufficient to satisfy the requirements of § 12–201(a), the Board has not waived its sovereign immunity...."). Because there was no such written and signed contract, the University Defendants retain their immunity and plaintiff's breach of contract claim must be dismissed. State Gov't. § 12-201(a); *see also Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012) (holding that a breach of contract suit "'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'") (citation omitted)).

**B.     Plaintiff's Breach of Contract Claim is Barred as Untimely.**

Plaintiff's breach of contract claim fails for the additional reason that plaintiff did not timely file suit. Any contract claim against the State is barred if a claimant fails to file suit within one year after the later of: "(1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim." State Gov't. § 12-202. This one-year filing deadline "is not a mere statute of limitations but sets forth a condition to the action itself." *State v. Sharafeldin,* 382 Md. 129, 148 (2004). "At the end of the one-year period, '[t]he waiver of the State's immunity vanishes' and any action is barred." *Daughton v. Maryland Auto. Ins. Fund*, 198 Md. App. 524, 538 (2011) (quoting *Sharafeldin*, 382 Md. at 148-49).

Plaintiff's purported breach of contract claim arose when the "promised" financial assistance was allegedly withheld "upon his return to Coppin State University for the 2020 fall semester." Compl. ¶ 70. Although the complaint fails to state a specific date for plaintiff's return to campus, the fall 2020 semester began on August 31, 2020.[11] Thus, to be timely, plaintiff must have filed the instant lawsuit by August 31, 2021. State Gov't. § 12-202(1). However, plaintiff did not initiate this lawsuit until November 2, 2022, over one year late.

Even if the oral "promises" of financial assistance were deemed breached at the end of plaintiff's 2020-2021 academic year, plaintiff's claim would still be barred as untimely. The 2020-2021 academic year concluded on May 13, 2021,[12] and thus even under this theory, plaintiff's suit was required to be filed by May 13, 2022 to be timely. State Gov't. § 12-202(2). Yet plaintiff filed suit nearly six months after this date. Therefore, under any interpretation, the University Defendants retain their statutory immunity against plaintiff's untimely breach of contract claim.

---

[11] *See* Coppin State University Fall 2020 Academic Calendar, publicly available at https://www.coppin.edu/sites/default/files/pdf-library/2021-05/fall_2020_academic_calendar_0.pdf (last visited May 18, 2023). The University Defendants request that the Court take judicial notice of this fact under Maryland Rule 5-201(d). *See* footnote (4) above.

[12] *See* Coppin State University Fall 2020 Academic Calendar, publicly available at https://www.coppin.edu/sites/default/files/pdf-library/2021-07/Spring_2021_Academic_Calendar.pdf (last visited May 18, 2023). The University Defendants request that the Court take judicial notice of this fact under Maryland Rule 5-201(d). *See* footnote (4) above.

III.   **THE COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST THE UNIVERSITY DEFENDANTS.**

Plaintiff's complaint should additionally be dismissed because it fails to state a claim upon which relief can be granted for negligent infliction of emotional distress (count IV), negligence (count I), or negligent hiring and retention (count IV) against the University Defendants.

As an initial matter, all claims brought against the State of Maryland and the University System of Maryland should be dismissed because they are identical to, and duplicative of, the claims against the University. By statute, the University is a "constituent institution" of the University System of Maryland, Educ. § 12-101(b)(6)(vi), "which is itself 'an arm or agency of the state government.'" *Dennard v. Towson Univ.,* 62 F. Supp. 3d 446, 451 (D. Md. 2014) (*citing Univ. of Maryland v. Maas,* 173 Md. 554, 557 (1938)). Plaintiff has not alleged any actions or omissions on the part of the State or the System independent of the University itself. Rather, the complaint makes clear that the State and the System are being sued solely by virtue of their relationship to the University. Compl. ¶¶ 3, 7 (alleging that the System is the State's public higher education system and is "responsible for the operation of all public universities in the State of Maryland which includes Coppin State University"). Nor is plaintiff seeking to proceed under a different legal theory against, or seeking different relief from, the State or the System. As such, the University is the proper defendant, and all claims asserted against the State and the System should be dismissed.

13

**A.    The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress.**

Fatal to plaintiff's claim for negligent infliction of emotional distress is that "Maryland does not recognize the tort of negligent infliction of emotional distress." *Alban v. Fiels*, 210 Md. App. 1, 16 (2013); *see also Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 63 (1986) (holding that "while other jurisdictions may allow recovery under the concept of negligent infliction of emotional distress Maryland does not."). Instead, a plaintiff may pursue recovery for emotional distress arising out of alleged negligent conduct "as an element of damage, not as an independent tort." *Hamilton*, 66 Md. App. at 63. Thus, to the extent plaintiff is seeking to recover for his purported emotional distress, he may do so only as part of his negligence claim. Plaintiff's claim for negligent infliction of emotional distress must therefore be dismissed.

**B.    The Complaint Fails to State a Claim for Negligence.**

Plaintiff's negligence claim fails because he fails to allege facts that will satisfy the elements of this claim against the University Defendants. "To maintain an action in negligence, a plaintiff must assert the following elements: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Muthukumarana v. Montgomery Cnty.*, 370 Md. 447, 486 (2002) (citations omitted). Whether the University Defendants owed a duty to plaintiff must be determined first because, "[a]bsent a duty owed to the plaintiff, as established by the plaintiff, there can be no liability in negligence...." *Rhaney v. Univ. of*

14

*Maryland E. Shore*, 388 Md. 585, 597 (2005).  "[T]he existence of a legal duty ordinarily is a question of law to be decided by the court." *Todd v. Mass Transit Admin.*, 373 Md. 149, 155–56 (2003).

### 1.    The University Defendants Had No Duty to Protect Plaintiff from the Blackmailer.

A negligence duty is defined as "'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Todd*, 373 Md. at 155-56 (citations omitted).  "[W]hether a duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant." *Gourdine v. Crews*, 405 Md. 722, 745 (2008).  The existence of a duty is a policy question because courts recognize that "[o]ne cannot be expected to owe a duty to the world at large...." *Valentine v. On Target, Inc.*, 353 Md. 544, 553 (1999).

Courts that have addressed a university's duty towards its students apply the respective duties of a business owner to a business invitee for incidents that occur in the common spaces, dining halls, and academic buildings of a university campus, and the duties of a landlord to a tenant for incidents that occur in a dormitory or residence hall. *See Rhaney*, 388 Md. at 602.  However, neither scenario is at issue in this case, where the alleged conduct, i.e. plaintiff's interactions with the blackmailer, occurred in "private," via plaintiff's personal social media account, not on the University campus or in relation to University activities.  Compl. ¶ 15, 16, 20, 35.

In a case such as this, courts in Maryland have consistently held that unless a special relationship exists, "[t]here is no duty generally to control the conduct of a third person so

as to prevent him or her from causing physical harm by criminal acts or intentional torts…"
*Rhaney*, 388 Md. at 597. A special relationship can exist between a party and a third person, which imposes a duty to control the third person's conduct, or between the party and a victim, which imposes a duty to protect the victim. *Corinaldi v. Columbia Courtyard, Inc.*, 162 Md. App. 207, 219 (2005); Restatement (Second) of Torts § 315 (1965). Examples of the types of special relationship which may impose a duty to control the conduct of a third person are set forth in the Restatement (Second) of Torts, §§ 316-320, and include the relationships between a parent and child, master and servant, landowner and licensee, a person who takes formal charge over one with known dangerous propensities, and those who have taken custody of others. Restatement (Second) of Torts §§ 316-320; *see also Corinaldi*, 162 Md. App. at 219 ("The Restatement (Second) of Torts §§ 314–320, addresses the duty to act for the protection of others.); *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 630 n. 2 (1986) (summarizing Restatement (Second) of Torts §§ 316-320). Similarly, § 314A sets forth the types of relationships that impose an affirmative duty to protect another, for instance, a common carrier, innkeeper, or one who has taken custody of another. Restatement (Second) of Torts § 314A; *Patton v. United States of Am. Rugby Football*, 381 Md. 627, 639–40 (2004) (holding that Maryland courts have "adopted previously as Maryland common law § 314A of the Restatement ….").

Plaintiff's negligence claim fails at the first step of this analysis because there was no such special relationship that imposed a duty upon the University to protect plaintiff against harm caused by the blackmailer or to control the blackmailer's conduct for plaintiff's protection. Indeed, none of the types of relationships explicated in the

16

Restatement (Second) of Torts is present in this case. This case does not involve a parent-child, landowner-licensee, or custodial relationship. Neither does it involve a person who has taken charge of another with dangerous propensities, as this type of special relationship only applies where a person "takes charge of a third person by placing him in some form of custody," and requires knowledge that the third person is "likely to cause bodily harm to others if not controlled." *Lamb v. Hopkins*, 303 Md. 236, 243-46, 253 (1985); Restatement (Second) of Torts § 319.[13]

To the extent plaintiff attempts to base a special relationship on his unsupported belief that Mr. Brownlee was the blackmailer, and argue that Mr. Brownlee was a University "employee," his negligence claim still fails at the first step of this analysis. There is not a single factual allegation stating the basis for plaintiff's belief that Mr. Brownlee was the blackmailer other than an amorphous assertion that it is based "upon information and belief." Compl. ¶ 29. By contrast, the complaint is replete with factual

---

[13] Examples of this include "a correctional institution incarcerating a dangerous criminal or a mental institution confining a dangerous patient." *Lamb*, 303 Md. 246 (holding that probation officers were under no duty to control probationer "because they had not taken charge of him"). To the extent plaintiff argues that this type of relationship existed because Mr. Brownlee had "dangerous propensities," the complaint fails to allege the elements needed to impose a special relationship under § 319 of the Restatement. The sole allegation that could be construed to support such a relationship is the allegation that Mr. Dixon was purportedly aware that Mr. Brownlee had "emotional issues." Compl. ¶ 38. But this does not suffice, as the University Defendants did not have custody of Mr. Brownlee. *Lamb*, 303 Md. 246. Nor does the vague reference to "emotional issues" satisfy the requirement of dangerous propensities that are equated with those of a person incarcerated for a dangerous crime or a dangerous patient confined to a mental institution. *Id.* Also absent from the complaint is information that the University Defendants were aware of such dangerous propensities. *Id.* Thus, any attempt to claim that such a relationship existed should be rejected as wholly insufficient.

allegations that Mr. Brownlee, like plaintiff, was actually a victim of the blackmailer. *See* Compl. ¶¶ 21-22, 24, 26 (alleging that Mr. Brownlee was ordered by the same blackmailer to engage in sexual encounters with plaintiff, video record the encounters, and send the videos to the blackmailer). Given his admission that the blackmailer's identity is unknown and the factual assertions that Mr. Brownlee was victimized by the blackmailer, plaintiff's unsupported claim about the identity of the blackmailer cannot be assumed to be true for purposes of the instant motion. *See Bobo*, 346 Md. at 709 (holding that "doubtful and ambiguous" pleadings should be "construed most strongly against the pleader in determining [their] sufficiency."). Without the identity of the blackmailer, plaintiff cannot show that the unknown blackmailer had an employment relationship with the University Defendants.

Nevertheless, even if plaintiff's unsupported assertion that Mr. Brownlee was the blackmailer is assumed to be true, the complaint still lacks sufficient allegations to show that Mr. Brownlee was a University "employee," or to plead the other elements required to impose a special relationship under § 317 of the Restatement. Critically, because Mr. Brownlee was a fellow student athlete on the basketball team through the 2018-2019 academic year, there was undoubtedly no employment relationship during that time. And other than the assertion that Mr. Brownlee "was engaged" as the Director of Player Development, plaintiff has alleged no facts to show that Mr. Brownlee had an employment relationship with the University. More importantly, plaintiff has failed to allege any of the other elements required to impose a duty under § 317 of the Restatement, including that the employee acted in a harmful way while "upon the [employer's] premises," using the

18

employer's property, and that the employer "has the ability to control" the employee. *See Barclay v. Briscoe*, 427 Md. 270, 295–96 (2012); Restatement (Second) of Torts § 317. In fact, the complaint explicitly alleges that plaintiff interacted with the blackmailer in "private," via his personal social media account, and apart from any University activities, rather than upon the University campus or using the University's property. *See* Compl. ¶ 15, 16, 20, 35. Thus, even if plaintiff's unsupported assertion that Mr. Brownlee was the blackmailer is assumed to be true, the complaint makes clear that there was no relationship between the University Defendants and plaintiff or the blackmailer that imposed a duty upon the University Defendants to protect plaintiff from the blackmailer. *See Barclay*, 427 Md. at 296 (holding that an employer was not liable for a car accident caused by its fatigued employee on the way home from work, even where the employer caused the employee's fatigue, because the employee was not on the employer's property or using its chattel at the time of the collision, and the employer did not have "the authority to control [the employee]'s driving to and from work").

Instead of pleading facts to show that any special relationship existed between plaintiff and the University Defendants that entitled him to protection, he asserts that the University Defendants had broad responsibility "for providing students a safe, suitable environment free from violence and harassment, narcotics and otherwise being responsible for ensuring the well-being of those students under their care." Compl. ¶ 47. He claims that the University Defendants were negligent in their "control/operation/supervision and oversight of the basketball program," Compl. ¶ 48, and that they "knew or should have known" that he was being harassed and "failed to take effective measures to end it...."

19

Compl. ¶ 50. Fatal to this claim is that it runs contrary to Maryland law, as outlined above, which does not impose such a sweeping duty upon a university towards its student population as a whole. Indeed, even in cases where a university's duty to a student is deemed to be that of a business invitee or tenant, courts typically find the university had no duty to protect its students from conduct of a third party. *See, e.g., Rhaney*, 388 Md. at 597-98, 603 (holding the university had no duty to protect a student from assault by the student's roommate in their shared dormitory room on campus, either as a business owner or landlord); *Stubbs v. Morgan State Univ.*, No. 0813 Sept. term 2019, 2020 WL 4018319, at *8 (Md. Ct. Spec. App. July 16, 2020) (holding the university "had no duty to foresee and prevent the fight," in which the plaintiff, a member of the university's football team, was stabbed); *Kelly v. McCarrick*, 155 Md. App. 82, 100 (2004) (discussing duties of a coach for athlete while playing on the field, but refusing to reach liability for "off-field conduct that is not an intrinsic part of the sport").

Plaintiff's lawsuit seeks to make the University Defendants the guarantor of every student's safety and impose upon them the duty to monitor and regulate every aspect of their students' personal lives and conduct. But that is not the law. The Supreme Court of Maryland cautioned against this when it stated that there is no "duty to the world at large to protect it against the actions of third parties." *Valentine*, 353 Md. at 553. The Court was concerned that "[t]he class of persons to whom a duty would be owed under these bare facts would encompass an indeterminate class of people, known and unknown." *Id.* The far-reaching duty that Plaintiff seeks to impose upon the University Defendants in this case

is not recognized under the law.  Accordingly, plaintiff's negligence claim should be dismissed.

### 2. The University Defendants Did Not Breach Any Purported Duty to Protect Plaintiff and Did Not Cause Plaintiff Any Injury.

Although plaintiff's negligence claim fails because the University Defendants owed no duty to protect plaintiff from the blackmailer, equally fatal to plaintiff's negligence claim is that the University Defendants did not breach any such duty or cause plaintiff any injury.  As set forth above, plaintiff's negligence claim requires sufficient facts to show that the University Defendants breached any duty they had to protect plaintiff, and that this breach proximately caused loss or injury to plaintiff. *See Muthukumarana*, 370 Md. at 486. Plaintiff alleges that the University Defendants "knew or should have known" that he was being harassed and "failed to take effective measures to end it," Compl. ¶ 50, yet the complaint is devoid of any facts from which it could be inferred that the University Defendants were on notice of the harassment.  Indeed, the complaint states explicitly that plaintiff never even reported the blackmail and harassment to his family, let alone to the University Defendants, until after the videos were publicized.  Compl. ¶¶ 35, 37, 41.  In fact, there are no allegations to suggest that the University Defendants were aware that the sexual videos of plaintiff and Mr. Brownlee were the result of blackmail until plaintiff decided "to bring the foregoing situation to light," and then informed the University about the harassment and blackmail and requested an investigation.  Compl. ¶ 41.  Without plaintiff reporting the conduct that took place over his private social media communications during his personal time, there was simply no way for the University

21

Defendants to become aware of the harassment and blackmail, and no way for them "to take effective measures to end it." Compl. ¶ 50. It is therefore clear that any injury plaintiff sustained was solely attributable to the blackmailer's conduct, not to any purported breach of a duty owed by the University Defendants. Accordingly, plaintiff's negligence claim asserted against the University Defendants should be dismissed.

### C.     The Compaint Fails to State a Claim for Negligent Hiring and Retention.

Plaintiff's negligent hiring and retention claim suffers from the same failures as his negligence claim. A negligent hiring and retention claim requires a plaintiff to plead: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 256 (2015), *aff'd*, 447 Md. 31 (2016). In order for this claim to be "legally cognizable," it must have been "foreseeable that the negligent act would cause the specific injury complained of in the case." *Perry v. Asphalt & Concrete Servs., Inc.*, 447 Md. 31, 54–55 (2016). This claim turns on "whether the employer knew or should have known that the individual was potentially dangerous." *Evans v. Morsell*, 284 Md. 160, 165–66 (1978).

Plaintiff's complaint is lacking sufficient allegations to state his entitlement to relief under this claim. As demonstrated above, plaintiff cannot sufficiently plead this claim because the identity of the blackmailer is unknown and thus he has not shown that the

University Defendants had an employment relationship with the blackmailer. Even if plaintiff's unsupported claim that Mr. Brownlee was the blackmailer is construed in his favor, this claim still fails because he has not sufficiently alleged the existence of an employment relationship between Mr. Brownlee and the University, that Mr. Brownlee was incompetent or potentially dangerous, or that the University Defendants knew about any purported dangerous propensity of Mr. Brownlee. *See Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004) (dismissing as "woefully inadequate" negligent hiring and retention claim arising from social workers' alleged failure to heed warning signs that child was being abused, where complaint failed to allege they were unqualified, acted in an incompetent manner, or that the employer was or should have been aware of it). Most importantly, plaintiff cannot satisfy the causation element, as the complaint makes clear that the harassment and blackmail were separate from the University's basketball program or other activities. Even if the complaint had adequately alleged that Mr. Brownlee was employed by the University and was the blackmailer, there is no nexus between any purported employment relationship and Mr. Brownlee's access to plaintiff. The complaint does not allege that any of the operative facts occurred during basketball activities or any other University activities, and it is alleged plaintiff and Mr. Brownlee were acquainted and communicating about the blackmailer while Mr. Brownlee was still a student and teammate of plaintiff. There are no allegations demonstrating that Mr. Brownlee's involvement as Director of Player Development of the basketball program was either a cause in fact or a legally cognizable cause of plaintiff's blackmail. *See Perry,*

23

447 Md. at 54–55. Accordingly, plaintiff's negligent hiring and retention claim against the University Defendants should be dismissed.

## CONCLUSION

Based upon the foregoing, Defendants Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon, respectfully request that the Court grant their motion and dismiss all claims asserted against them in the complaint in their entirety with prejudice.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

ARIEL LICHTERMAN
Attorney No. 1801110004
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
alichterman@oag.state.md.us
(410) 576-6459
(410) 576-6437 (facsimile)

May 18, 2023

Attorneys for Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon

24

IBN WILLIAMS,                              *

      *Plaintiff,*                      *          IN THE

v.                                        *          CIRCUIT COURT

COPPIN STATE UNIVERSITY,                  *          FOR
THE UNIVERSITY SYSTEM OF
MARYLAND,              LUCIEN             *          BALTIMORE CITY
BROWNLEE, DEREK CARTER,
JUAN DIXON, THE STATE OF                  *          No. 24-C-22-004662
MARYLAND, JOHN DOES I-X,
AND ABC CORP. I-X,                        *

      *Defendants.*                    *

    *    *    *    *    *    *    *    *    *    *    *    *

## **PROPOSED ORDER**

Upon consideration of the Motion to Dismiss filed by Defendants Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon, (collectively the "University Defendants"), and any responses thereto, and good cause appearing therefore, it is this _____ day of _____, 2023, ORDERED:

That the University Defendants' Motion to Dismiss is hereby GRANTED; and

All claims against the University Defendants shall be dismissed in their entirety with prejudice.

 

_____