# EXHIBIT 28

IBN WILLIAMS,            *

      *Plaintiff,*        *    IN THE

v.                      *    CIRCUIT COURT

COPPIN STATE UNIVERSITY,    *    FOR
THE UNIVERSITY SYSTEM OF
MARYLAND, LUCIEN        *    BALTIMORE CITY,
BROWNLEE, DEREK CARTER,
JUAN DIXON, THE STATE OF    *    No. 24-C-22-004662
MARYLAND, JOHN DOES I-X,
AND ABC CORP. I-X,         *

      *Defendants.*

*   *   *   *   *   *   *   *   *   *   *

RECEIVED FOR CIRCUIT COURT BALTIMORE CITY

2023 JUL 18 PM 3:50

CIVIL DIVISION

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## THE UNIVERSITY DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

ARGUMENT ................................................................................................ 1

    I.      DEREK CARTER AND JUAN DIXON ARE IMMUNE FROM SUIT. ..................... 1

    II.    THE UNIVERSITY DEFENDANTS ARE IMMUNE FROM PLAINTIFF'S BREACH OF CONTRACT CLAIM. ....................................................................................... 6

    A.     Plaintiff's Breach of Contract Claim is Not Based on a Written Contract... 6

    B.     Plaintiff's Breach of Contract Claim is Barred as Untimely. ....................... 7

    III.   THE COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST THE UNIVERSITY DEFENDANTS. ....................................................................... 9

    A.     The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress. .................................................................................................. 10

    B.     The Complaint Fails to State a Claim for Negligence. ............................... 11

    1.     The University Defendants Had No Duty to Protect Plaintiff from the Blackmailer. ...................................................................................... 11

    2.     The University Defendants Did Not Breach Any Purported Duty to Protect Plaintiff and Did Not Cause Plaintiff Any Injury. ................................. 15

    C.     The Compaint Fails to State a Claim for Negligent Hiring and Retention. 15

    IV.   PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED. ........ 16

CONCLUSION ........................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                                                                 **Page**

*Abrishamian v. Washington Med. Grp., P.C.,*
    216 Md. App. 386 (2014) ...................................................................................... 8

*Anne Arundel Cnty. v. Reeves,*
    474 Md. 46 (2021) .................................................................................................. 2

*Asphalt & Concrete Servs., Inc. v. Perry,*
    221 Md. App. 235 (2015), *aff'd*, 447 Md. 31 (2016) ...................................... 16

*Barbre v. Pope,*
    402 Md. 157 (2007) ................................................................................................ 1

*Barclay v. Briscoe,*
    427 Md. 270 (2012) .............................................................................................. 13

*Bobo v. State,*
    346 Md. 706 (1997) ................................................................................................ 3

*Boyer v. State,*
    323 Md. 558 (1991) ................................................................................................ 2

*Cont'l Masonry Co. v. Verdel Const. Co.,*
    279 Md. 476 (1977) ........................................................................................ 6, 7, 8

*Murphy-Taylor v. Hoffman,*
    968 F.Supp. 2d 693 (D. Md. 2013) ...................................................................... 4

*Polek v. J.P. Morgan Chase Bank, N.A.,*
    424 Md. 333 (2012) .......................................................................................... 6, 7

*Rhaney v. Univ. of Maryland E. Shore,*
    388 Md. 585 (2005) .............................................................................................. 11

*RRC Ne., LLC v. BAA Maryland, Inc.,*
    413 Md. 638 (2010) ........................................................................................ 6, 17

*Taylor v. Harford Cnty. Dep't of Soc. Servs.,*
    384 Md. 213 (2004) ................................................................................................ 2

*Taylor v. NationsBank, N.A.,*
    365 Md. 166 (2001) ................................................................................................ 6

**STATUTES**

State Gov't. § 12-201(a) ................................................................................................ 7

State Gov't. § 12-202 .................................................................................................... 8

**RULES**

Maryland Rule 5-201(d)..................................................................................... 8

**TREATISES**

Restatement (Second) of Torts § 317 ............................................................ 13

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants Coppin State University (the "University"), the University System of Maryland (the "System"), the State of Maryland, Derek Carter, and Juan Dixon (collectively the "University Defendants"), by their undersigned attorneys, submit this reply memorandum of law in support of their motion to dismiss the claims against them.

## ARGUMENT

Plaintiff's memorandum in opposition to the University Defendants' motion to dismiss ("Plaintiff's opposition" or "Pl. Opp.") highlights the numerous insufficiencies in the complaint. As will be demonstrated below, all of plaintiff's claims rely on conjecture and would require the acceptance of numerous speculative inferential leaps that are not supported by the allegations in the complaint. As a result, plaintiff fails to show that his claims should survive the University Defendants' motion to dismiss.

## I.   DEREK CARTER AND JUAN DIXON ARE IMMUNE FROM SUIT.

Plaintiff's opposition incorrectly argues that Mr. Carter and Mr. Dixon are not entitled to statutory immunity from all of plaintiff's claims. Plaintiff bases this argument on the erroneous belief that he sufficiently alleged conduct rising to the level of malice or gross negligence. Pl. Opp. p. 9. Although "state personnel are not immune from suit and liability in tort when the plaintiff's complaint *sufficiently* alleges malice or gross negligence" against them, *Barbre v. Pope*, 402 Md. 157, 181–82 (2007), plaintiff's complaint fails to meet this burden.

Malice is defined as "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud....'" *Barbre*, 402 Md. at 182

1

(citations omitted). Gross negligence requires "something *more* than simple negligence, and likely more akin to reckless conduct, *Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 384 Md. 213, 229 (2004), and is defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Anne Arundel Cnty. v. Reeves*, 474 Md. 46, 72–73 (2021) (citations omitted). Importantly, a person is "guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.* (citation omitted). To meet this standard, a plaintiff must plead "*facts* showing that [the defendant] acted with a wanton and reckless disregard for others...." *Boyer v. State*, 323 Md. 558, 579 (1991). Allegations that are "somewhat vague" and "do not indicate that [the defendant] acted with wanton or reckless disregard for the safety of others" are insufficient as a matter of law to plead gross negligence. *Id.* at 580.

Plaintiff's complaint consists of vague allegations that fail to indicate that Mr. Carter and Mr. Dixon "acted with wanton or reckless disregard" for plaintiff's safety. *Id.* at 580. Plaintiff points to only two allegations from which he claims malice or gross negligence can be "inferred:" (1) that after the sexual content involving plaintiff and Mr. Brownlee was publicized, Mr. Dixon allegedly stated he and Mr. Carter knew Mr. Brownlee was "mentally ill or otherwise emotionally imbalanced," Pl. Opp. p. 9 (citing Compl. ¶ 38); and (2) that plaintiff believes Mr. Brownlee was the blackmailer. Pl. Opp p. 9. He urges the court to "permit an inference" based upon these two facts alone that Mr. Carter and Mr.

Dixon "knew that one of their coaches was harassing and sexually assaulting a student-athlete and did nothing about it." Pl. Opp. p. 9. This is not a reasonable inference supported by the allegations, but rather a chain of speculation and assumptions which should be rejected. *See Bobo v. State*, 346 Md. 706, 708 (1997) (holding that in considering a motion to dismiss, a court will "assume the truth of all well-pleaded relevant and material facts in the complaint, as well as all inferences that *reasonably* can be drawn therefrom," but allegations that are "doubtful and ambiguous . . . will be construed most strongly against the pleader in determining its sufficiency." (emphasis added)).   Indeed, one cannot reasonably infer from knowledge that Mr. Brownlee purportedly suffered from mental illness or emotional imbalance that he was a perpetrator of sexual assault and blackmail. Under this logic, plaintiff as well, who claims to suffer from "severe emotional distress," "depression," and "anxiety attacks," Compl. ¶ 61, should have been viewed as a sexual predator and others should have been protected from him.  This outlandish theory finds no support in the complaint and must therefore be dismissed.  Neither can it reasonably be inferred from knowledge of Mr. Brownlee's purported mental instability that Mr. Carter or Mr. Dixon knew about the sexual assault and blackmail.  Notably, such conjecture is actually contradicted by the unambiguous allegations that plaintiff never told *anyone* that he was assaulted or blackmailed until after the sexual content was publicized, when he requested an investigation into what happened. *See* Compl. ¶ 41 (alleging that he requested an investigation "to bring the foregoing situation to light" regarding his harassment, sexual assault, and blackmail), and generally, ¶¶ 22, 26 (alleging plaintiff faced the threat of

exposure), and ¶ 35 (alleging that plaintiff was "unable to bring himself to divulge the blackmail").

Plaintiff's reliance on *Murphy-Taylor v. Hoffman*, 968 F.Supp. 2d 693 (D. Md. 2013), actually undercuts his own argument and supports the University Defendants' motion. In that case, the plaintiff, a deputy sheriff in the Queen Anne's County Sheriff's office, brought claims for employment discrimination, as well as common law tort claims for being sexually harassed and assaulted by co-workers, and against the Sheriff, for his failure to address the sexual assault and harassment. *Id.* at 704-06. In assessing the sufficiency of the complaint in alleging gross negligence, the court relied upon the fact that plaintiff explicitly alleged that she directly reported the sexual assault and harassment to her superior, the Sheriff, and that he took no action, and that when the assault and harassment continued, she reported it four additional times, but the Sheriff still took no action. *Id.* at 739. The court further relied on the complaint's allegation that the Sheriff's failure to act continued even after plaintiff's abuser was criminally charged and pled guilty to sexually assaulting and harassing the plaintiff. *Id.* The court held that these allegations sufficiently pled gross negligence against the Sheriff. *Id.*

In stark contrast, there are no such allegations against Mr. Carter and Mr. Dixon. As demonstrated above, the complaint makes clear that, unlike the plaintiff in *Murphy-Taylor*, plaintiff *never* reported the assault, harassment, or blackmail to Mr. Carter or Mr. Dixon. Even after the sexual content was publicized, the complaint makes clear that Mr. Carter and Mr. Dixon were only aware that plaintiff and Mr. Brownlee, who was no longer associated with the University and the basketball team, had a sexual encounter that was

4

recorded and publicized. According to the complaint, it was not until plaintiff decided "to bring the foregoing situation to light," that he *first* reported that he had been sexually assaulted and blackmailed and requested an investigation. Compl. ¶ 41. And, unlike the Sheriff in *Murphy-Taylor*, and contrary to a wanton and reckless disregard for his safety, the University Defendants immediately retained a third party to conduct an investigation. Compl. ¶ 42.

Although not pled as part of his negligence claims, *see* Compl. ¶¶ 46-50 (count I), 51-56 (count II), and 62-65 (count IV), to the extent plaintiff seeks to base his negligence claim against Mr. Carter and Mr. Dixon on the purported withdrawal of his financial assistance, the complaint still falls short. Notably, the complaint does not allege that Mr. Carter or Mr. Dixon were involved in the purported decision to withdraw his financial assistance. Compl. ¶ 45. Moreover, the complaint alleges that plaintiff's financial assistance was actually withdrawn as soon as he returned to the University for the fall 2020 semester, Compl. ¶ 70, which was prior to the release of plaintiff's sexual content, prior to anyone becoming aware of the harassment, assault, and blackmail, and prior to plaintiff's request for an investigation. Compl. ¶¶ 36-41.

It is therefore clear that the complaint falls far short of pleading malice or gross negligence against Mr. Carter and Mr. Dixon sufficient to overcome their entitlement to immunity. Accordingly, all claims against Mr. Carter and Mr. Dixon should be dismissed in their entirety.

## II.   THE UNIVERSITY DEFENDANTS ARE IMMUNE FROM PLAINTIFF'S BREACH OF CONTRACT CLAIM.

### A.   Plaintiff's Breach of Contract Claim is Not Based on a Written Contract.

Although plaintiff concedes that a breach of contract claim against a State entity must be based upon a written contract signed by an official with authority, he suggests that this information need not be pled in his complaint.  Pl. Opp. p. 12.  In support of this argument, he cites authority stating that pleading a breach of contract claim only requires allegations that a "contractual obligation" is owed, and that there was a material breach of that obligation.  Pl. Opp. at 12.[1]  However, plaintiff cites no authority to support the contention that the obligation to plead a contractual obligation does not require allegations that an enforceable contract existed.  To the contrary, a plaintiff alleging a breach of contract claim "must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff...." *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012) (quoting *Cont'l Masonry Co. v. Verdel Const. Co.*, 279 Md. 476, 480 (1977)).  The "threshold" inquiry is "whether a contractual relationship existed...." *Id.*  Courts routinely dismiss breach of contract claims that fail to plead facts demonstrating with certainty and definiteness the specifics of the contract at issue.  *See RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010) (dismissing a

---

[1] Plaintiff's opposition includes a quotation for this principle that is erroneously attributed to *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001).  This quotation should actually be attributed to *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010); however, *Taylor* does support this proposition generally, and is cited as the case on which this quotation is based in *RRC*.

breach of contract claim where the amended complaint did not "allege an explicit or implicit promise by [the defendant] to be so bound."); *Cont'l Masonry Co.*, 279 Md. at 481 ("[I]t is clear to us that the skeletal factual allegations accompanied by nothing more than mere conclusions and general averments of a breach of a contractual duty do not suffice....").

As demonstrated in the University Defendants' motion, Plaintiff has failed to plead his breach of contract claim with the requisite "certainty and definiteness." *Cont'l Masonry Co.*, 279 Md. at 480.  By statute, he is precluded from bringing a breach of contract claim because there was no written and signed contract to provide him with financial assistance for the fall 2020 semester. State Gov't. § 12-201(a); *Stern v. Bd. of Regents, Univ. Sys. of Maryland*, 380 Md. 691, 722 (2004).  Plaintiff suggests he has met his burden by alleging that he was promised financial assistance as part of his recruitment in 2018 and that "the factual inferences and basic logic dictate that the contract was in writing and signed." Pl. Opp. pp. 12-13.  Such vague and speculative allegations are not entitled to be construed in plaintiff's favor. *See Polek*, 424 Md. at 362 ("When we consider the sufficiency of the plaintiff's allegations [on a breach of contract claim], we construe any ambiguity in the complaint against the pleader.").  Accordingly, the University Defendants are immune from plaintiff's breach of contract claim.

**B.    Plaintiff's Breach of Contract Claim is Barred as Untimely.**

As demonstrated in the University Defendants' motion, even if the complaint is construed to plead the existence of a written and signed contract, plaintiff's breach of contract claim is untimely.  It is revealing that plaintiff does not argue that his breach of

7

contract claim was timely filed; rather, he argues that the complaint is too vague to determine when the claim accrued. Pl. Opp. at 14 (conceding that "the Complaint does not establish an accrual date," and "the Complaint on its face does not establish either of these dates."). Plaintiff cites no authority to support his contention that a plaintiff can defeat a motion to dismiss for failure to state a claim by pleading vague allegations. To the contrary, as stated above, a breach of contract claim must be pled with "certainty and definiteness." *Cont'l Masonry Co.*, 279 Md. at 480.

Plaintiff concedes that a breach of contract claim must have been filed within one year after the later of the date on which the claim arose or the completion of the contract that gives rise to the claim. Pl. Opp. p. 14; State Gov't. § 12-202. Contrary to plaintiff's assertion that the accrual date was not alleged in the complaint, the complaint stated explicitly that the purported breach of contract occurred at the beginning of the fall 2020 semester, when the "promised" financial assistance was allegedly withheld. Compl. ¶ 70.[2] Even if the accrual date is deemed to run from completion of the purported contract that gives rise to the claim, it concluded at the end of either the fall 2020 semester, *see* Compl. ¶ 70 (stating that the "promised" financial assistance was "for the 2020 fall semester"), or, construing the date in a light most favorable to plaintiff, the end of 2020-2021 academic

---

[2] Because the precise date during the fall of 2020 was not specified, the University Defendants requested that the Court take judicial notice of the date the fall 2020 semester began at the University, a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," *Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 413–14 (2014), and thus is permitted under Maryland Rule 5-201(d). Plaintiff objects to this request without any argument as to the basis of the objection.

8

year, i.e., in the Spring of 2021.   Under either date, the latest date for timely filing a breach

of contract claim was the end of the Spring 2022, months before plaintiff actually filed his

complaint on November 2, 2022.

Plaintiff's contentions that the "completion date for the contract was within one year

of the date on which the suit was filed" and that the deadline should be tolled because of

the "continuing violation doctrine" are equally without merit.   Pl. Opp. p. 14.   He cites no

basis for how the purported contract for financial assistance was still in place in November

of 2021, one year prior to the filing of his complaint.   Nor does he provide any basis for

what the purported continuing violation is and how that tolls a statutory precondition to

suit.   Accordingly, plaintiff's breach of contract claim should be dismissed as untimely.

## III.   THE COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST THE UNIVERSITY DEFENDANTS.

Plaintiff incorrectly asserts that he can maintain his claims against the University,

the University System, and the State.   He concedes, however, that the University and the

University System are "instrumentalities of the State," that is, they are equivalent to the

State itself.   Pl. Opp. pp. 16-17.   As the University Defendants demonstrated in their

motion, plaintiff does not seek to proceed against the State, the System, and the University

under different legal theories, and does not allege different conduct against each of them

or seek different relief from them.   His claims against the University System and the State

are clearly duplicative of his claims against the University.   As such, the University System

and the State should be dismissed from this matter.

### A.    The Complaint Fails to State a Claim for Negligent Infliction of Emotional Distress.

Plaintiff concedes, as he must, that Maryland does not recognize the tort of negligent infliction of emotional distress, but now argues that count IV actually pleads a claim for intentional infliction of emotional distress. This argument is belied by the explicit language of count IV, which clearly alleges that the University Defendants "owed a duty of reasonable care to their student and program participant IBN WILLIAMS," and "by their omissions breached their duty...." Compl. ¶ 64. This unequivocally sets forth a negligence standard. By contrast, in the same paragraph, plaintiff claims that Mr. Brownlee, but not the University Defendants, committed "terroristic acts," which is more akin to an intentional infliction of emotional distress claim. Similarly, unlike count IV, count III actually asserts a claim for intentional infliction of emotional distress, but is brought only against Mr. Brownlee, not the University Defendants. Compl. ¶ 58-60. Indeed, plaintiff alleges that Mr. Brownlee intentionally and recklessly harassed and inflicted emotional injury on Plaintiff," including by "blackmailing the Plaintiff to engage in unwanted sexual assault" and "mentally abus[ing]" him. Compl. ¶ 60. If plaintiff intended to bring a claim for intentional infliction of emotional distress against the University Defendants, he would have stated as such in count III. But he appropriately chose not to bring such a claim against the University Defendants because there is no support for it in the complaint. Accordingly, plaintiff's claim for negligent infliction of emotional distress should be dismissed.

**B.    The Complaint Fails to State a Claim for Negligence.**

**1.    The University Defendants Had No Duty to Protect Plaintiff from the Blackmailer.**

Plaintiff first argues incorrectly that the University Defendants owed him the duty of a business owner to an invitee. The University Defendants demonstrated in their motion that the duty of a business owner to an invitee was not applicable in this case because the complaint does not allege that the conduct between plaintiff and his blackmailer occurred in the common spaces, dining halls, and academic buildings of the University campus. *See Rhaney v. Univ. of Maryland E. Shore*, 388 Md. 585, 602 (2005). Plaintiff argues that although the complaint does not actually allege that the conduct occurred on campus, it "support[s] a reasonable inference that the blackmail occurred while Williams was on campus." Pl. Opp. p. 23. The allegations plaintiff relies upon for this "inference" are that plaintiff was a student during the time he was blackmailed, and the blackmail temporarily ceased when the world shut down during the onset of the COVID-19 pandemic. Pl. Opp. pp. 22-23. It cannot reasonably be inferred from these two allegations that the blackmail occurred on campus. In contradistinction, the complaint unambiguously states that the blackmail occurred in "private," via social media communications with the blackmailer's "account." Compl. ¶¶ 15-16, 25. As such, the University Defendants did not owe plaintiff the duty of a business owner to an invitee.

Nevertheless, even if plaintiff's contention that the University Defendants owed an affirmative duty to protect plaintiff as a business invitee is assumed to be true, this argument still fails. Plaintiff's reliance upon *Rhaney* reveals the chain of speculation and

inferential leaps that would be required to show the University Defendants had and breached any such duty. In *Rhaney*, the court held that a business owner could breach its affirmative duty to protect against the "dangers associated with employees or other invitees," but, as plaintiff concedes, only if the business owner, "as a reasonably prudent person ... should have anticipated the possible occurrence and the probable results of such acts." *Rhaney*, 388 Md. at 602; Pl. Opp. p. 22. The court further held that because there was "no pattern of sufficient prior violence ... similar to what ultimately happened to [plaintiff], [the university] could not be said to be responsible for reasonably foreseeing what happened and, therefore, to have a duty to forestall its occurrence or stand liable for the consequences." *Id.* at 603. In other words, without the business owner being aware of a pattern of similar conduct by the invitee, the invitee's actions were not foreseeable and therefore the business did not have a duty to protect against them. This is not, as plaintiff suggests, the converse of the instant case, but rather is perfectly analogous.

Much like the university in *Rhaney*, the complaint does not allege any pattern of conduct by Mr. Brownlee that would have made it foreseeable that he would perpetrate sexual assault and blackmail. The only factual allegation plaintiff relies upon is that the University Defendants knew Mr. Brownlee suffered from mental illness or emotional instability. Plaintiff again urges the court to conclude not only that Mr. Brownlee was the blackmailer, despite numerous contrary allegations in the complaint, but that the University Defendants "should have anticipated" that Mr. Brownlee would sexually assault and blackmail plaintiff solely because they purportedly knew that Mr. Brownlee was "emotionally unstable." Pl. Opp. pp. 26-27. As demonstrated above, this inferential leap

12

is unreasonable, and, like the court held in *Rhaney*, it is insufficient to conclude that the University Defendants should have foreseen what happened and been responsible for preventing it. *Rhaney*, 388 Md. at 603.

Plaintiff advances the alternative argument that the University Defendants had a duty to control Mr. Brownlee as their employee. Pl. Opp. p. 27. Although the University Defendants' motion clearly demonstrated the complaint's failure to sufficiently plead that Mr. Brownlee was the blackmailer and that he had an employment relationship with the University, even if both contentions are assumed to be true, the complaint still fails to plead the elements required to impose this duty upon the University Defendants. The University Defendants' motion set forth the rule that unless a special relationship exists, "[t]here is no duty generally to control the conduct of a third person so as to prevent him or her from causing physical harm by criminal acts or intentional torts..." *Rhaney*, 388 Md. at 597. Plaintiff concedes that an employer's duty to control an employee "while acting outside the scope of his employment" to "prevent him from intentionally harming others" only exists if the following criteria are met: (1) the employee is on the employer's premises or using the employer's property; (2) the employer "knows or has reason to know that he has the ability to control his [employee];" and (3) the employer "knows or should know of the necessity and opportunity for exercising such control." *Barclay v. Briscoe*, 427 Md. 270, 295–96 (2012); Restatement (Second) of Torts § 317.

The complaint is devoid of allegations to show that these criteria are met. Plaintiff does not dispute this, but again urges the Court to accept a series of inferences. For instance, plaintiff asks the Court to overlook the allegations stating that the blackmail took

13

place in private over social media communications and conclude instead that it actually occurred on campus.  Pl. Opp. p. 28.  Plaintiff also urges the Court to conclude, without any support or authority, not only that Mr. Brownlee was the blackmailer, but that he was subject to the University's control even when not acting within the scope of his employment.  Pl. Opp. p. 28.  And again, based solely upon Mr. Brownlee's purported mental instability, he urges the Court to conclude that the University Defendants "knew or should have known of the need to control him."  Pl. Opp. p. 28.  As demonstrated above, these speculative conclusions are not reasonable inferences, are not supported by the factual allegations, and should therefore be rejected.

Equally unavailing is plaintiff's attempt to impose a duty upon the University Defendants based upon the theory that Mr. Brownlee was a victim of the blackmailer but failed to report it.  Pl. Opp. p. 28.  Plaintiff appears to fault Mr. Brownlee for doing precisely what plaintiff did, i.e., not report the blackmail out of fear or reprisal. *See* Compl. ¶ 20.  More importantly, plaintiff cites no authority under which a duty can be imposed upon the University Defendants for Mr. Brownlee's purported failure to report that he was a victim of blackmail.

Plaintiff's opposition, like his complaint, seeks to impose upon the University Defendants a sweeping duty to be the guarantor of every student's safety, and to monitor and regulate every aspect of their students' personal lives and conduct.  As the University Defendants demonstrated in their motion, this runs contrary to established law and should be rejected.

14

2.     **The University Defendants Did Not Breach Any Purported Duty to Protect Plaintiff and Did Not Cause Plaintiff Any Injury.**

Plaintiff offers a single unavailing argument in favor of the breach and causation elements of his negligence claim, namely, that the complaint asserts that the University Defendants, "with full knowledge of the previously described events, took no action...." Compl. ¶ 40. This allegation is vague and conclusory, provides no real factual information, and contradicts numerous other allegations in the complaint. For instance, the complaint states explicitly that plaintiff never reported the blackmail and harassment to the University Defendants until after the videos were publicized. Compl. ¶¶ 35, 37, 41. The complaint additionally alleges that once plaintiff reported the blackmail and harassment and requested an investigation, the University retained a third party to conduct an independent investigation. Compl. ¶ 42. Given these explicit allegations, it cannot be concluded that the University Defendants had "full knowledge" of the harassment and blackmail and failed to act. Accordingly, plaintiff's negligence claim asserted against the University Defendants should be dismissed.

C.     **The Complaint Fails to State a Claim for Negligent Hiring and Retention.**

Plaintiff's opposition to the motion to dismiss his negligent hiring and retention claim suffers from the same failures as his negligence claim. As analyzed more fully above, it relies on conjecture and inferential leaps about the identity of the blackmailer, Mr. Brownlee's relationship with the University, and Mr. Brownlee's purported propensity for sexual assault and blackmail. Plaintiff concedes that this claim requires a showing that

the University Defendants knew or should have known that their employee was "potentially dangerous," but again urges the Court to conclude that Mr. Brownlee's purported mental imbalance alone satisfies this requirement. Pl. Opp. pp. 30-31. Like with plaintiff's negligence claim, these speculative conclusions fail to meet plaintiff's burden to sufficiently plead a claim for negligent hiring and retention.

In the hope of salvaging this claim, plaintiff now asserts, contrary to the explicit allegations in the complaint, that the complaint "supports a finding" that the University negligently hired or retained Mr. Carter and Mr. Dixon. Pl. Opp. p. 32. The complaint unequivocally alleges that the purported negligence was in hiring or retaining Mr. Brownlee "to serve as Director of Player Development." Compl. ¶ 56. In any event, there are no allegations in the complaint showing any of the elements of such a claim regarding Mr. Carter or Mr. Dixon. *See Asphalt & Concrete Servs., Inc. v. Perry*, 221 Md. App. 235, 256 (2015), *aff'd*, 447 Md. 31 (2016). Accordingly, plaintiff's negligent hiring and retention claim against the University Defendants should be dismissed.

IV.   **PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED.**

Plaintiff now requests that in the event the Court dismisses any of his claims, he be granted leave to amend his complaint "to cure the deficiency." Pl. Opp. p. 33. His sole basis for his request to leave is his belief that it "would not serve the ends of justice" if he were not allowed to pursue his claims. Pl. Opp. p. 31. However, an amendment that would "change the operative fact pattern or state a new cause of action," should be denied. *Perry*, 221 Md. App. at 269. Plaintiff's opposition makes clear that he would seek to bring new facts and causes of action. For instance, he asserts that the purported misrepresentations

regarding his financial assistance "may give rise to a fraud-based claim or claims," and he seeks leave to "add any additional claims…." Pl. Opp. p. 15. Further, he seeks to add a claim for intentional infliction of emotional distress against the University Defendants, Pl. Opp. pp. 18-20, and a claim for negligent hiring and retention of Mr. Carter and Mr. Dixon. Pl. Opp. p. 32.

In addition, "an amendment should not be allowed if it would result in prejudice to the opposing party or undue delay, such as where amendment would be futile because the claim is flawed irreparably." *RRC Ne.*, 413 Md. at 673–74. Courts have found that where a plaintiff fails to point to what facts, if pled, would improve the claim, cure the deficiency, and "answer[] the key question," leave to amend is not warranted. *Id.* at 674. Plaintiff's request for leave to amend does not state what facts would be added to cure the numerous and significant deficiencies in the complaint. For instance, he does not assert that he has additional facts to support his conjecture that Mr. Brownlee was the blackmailer, which underlies all of his claims. To the contrary, he concedes that he needs discovery "to flesh out the extent of Brownlee's role." Pl. Opp. p. 29. The fact that he does not know what role Mr. Brownlee had underscores the incurability of the deficiencies in his complaint. These deficiencies are not "formal slips or slight variances," as he suggests, but indicate that plaintiff's claims are not viable. Leave to amend would therefore be futile and should be denied.

17

## CONCLUSION

Based upon the foregoing, as well as the arguments set forth in the University Defendants' motion to dismiss, the University Defendants respectfully request that the Court grant their motion and dismiss all claims asserted against them in the complaint in their entirety with prejudice.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

ARIEL LICHTERMAN
Attorney No. 1801110004
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
alichterman@oag.state.md.us
(410) 576-6459
(410) 576-6437 (facsimile)

July 18, 2023

Attorneys for Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon

18

IBN WILLIAMS,                             *

        *Plaintiff,*                        *        IN THE

v.                                        *        CIRCUIT COURT

COPPIN STATE UNIVERSITY,                  *        FOR
THE UNIVERSITY SYSTEM OF
MARYLAND,            LUCIEN               *        BALTIMORE CITY
BROWNLEE, DEREK CARTER,
JUAN DIXON, THE STATE OF                  *        No. 24-C-22-004662
MARYLAND, JOHN DOES I-X,
AND ABC CORP. I-X,                        *

        *Defendants.*                       *

   *    *    *    *    *    *    *    *    *    *    *

### CERTIFICATE OF SERVICE

I certify that, on this 18th day of July, 2023, the University Defendant's Reply Memorandum of Law in Support of their Motion to Dismiss was served by first-class mail and email on all persons entitled to service:

> Terence Davis, Esq.
> Morgan & Morgan
> 1901 Pennsylvania Ave. N.W., Suite 300
> Washington, DC 20006
> tdavis@forthepeople.com
> *Attorney for Plaintiff*
>
> Thomas W. Keilty, III, Esq.
> Keilty Bonadio, LLC
> One South Street – Suite 2125
> Baltimore, Maryland 21202
> *Attorney for Plaintiff*

Tiffani Collins, Esq.
Collins Legal Group, LLC
20 South Charles Street, Suite 901
Baltimore, MD 21201
Tiffani@tcollinslaw.com
*Attorney for Lucien Brownlee*

Ariel Lichterman