IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

IBN WILLIAMS,

        PLAINTIFF,

                              CASE NO. 1:23-CV-02590-JRR

V.

COPPIN STATE UNIVERSITY,
THE UNIVERSITY SYSTEM OF
MARYLAND, LUCIEN BROWNLEE,
DEREK CARTER, JUAN DIXON,
THE STATE OF MARYLAND,
JOHN DOES 1-X, AND ABC CORP. 1-X,

        DEFENDANTS.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
THE UNIVERSITY DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

Thomas W. Keilty, III (Bar No. 18992)
tkeilty@kblitigation.com
Nicholas C. Bonadio (Bar No. 13679)
nbonadio@kblitigation.com
Keilty Bonadio, LLC
One South Street
1 South Street, Suite 2125
Baltimore, Maryland 21202
Telephone: 410-646-8880

Daniel N. Epstein, Esquire (I.D. #033981995)
EPSTEIN OSTROVE, LLC
200 Metroplex Drive, Suite 304
Edison, New Jersey 08817
(732) 828-8600;
d.epstein@epsteinostrove.com
(Pro Hac Admission Pending)

## Table of Contents

Background                                                          1

Argument                                                          10

    THE COURT SHOULD DENY THE UNIVERSITY DEFENDANTS'
    MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT.

Conclusion                                                          31

Certificate of Service                                      attached

## Table of Authorities

Page(s)

*Cases*

Ashcroft v. Iqbal,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................... 10
Asphalt & Concrete Servs., Inc. v. Perry,
   221 Md. App. 235, 108 A.3d 558 (2015) .................................................... 17
Bailey v. City of Annapolis,
   252 Md. App. 83, 258 A.3d 894 (2021) ..................................................... 15
Barbre v. Pope,
   402 Md. 157, 935 A.2d 699 (2007) ............................................ 11, 12, 14, 16
Bell Atl. Corp. v. Twombly,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................... 10, 20
Cannon v. Univ. of Chicago,
   441 U.S. 677, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979) .............................. 25
Cooper v. Rodriguez,
   443 Md. 680, 118 A.3d 829 (2015) ............................................................. 13
Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.,
   526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) .......................... 26
Est. of Alcalde v. Deaton Specialty Hosp. Home, Inc.,
   133 F. Supp. 2d 702 (D. Md. 2001) ...................................................... 20, 21
Fitzgerald v. Bell,
   246 Md. App. 69, 227 A.3d 796 (2020) ..................................................... 24

Franklin v. Gwinnett Cnty. Pub. Sch.,
   503 U.S. 60, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992) ............................ 25

Gebser v. Lago Vista Indep. Sch. Dist.,
   524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) .......................... 25

H.J. Inc. v. Nw. Bell Tel. Co.,
   492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) ..................... 10, 23

Hayut v. State Univ. of New York,
   352 F.3d 733 (2d Cir. 2003) ...................................................................... 25

Jackson v. Birmingham Bd. of Educ.,
   544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) .......................... 29

Jennings v. Univ. of N. Carolina,
   482 F.3d 686 (4th Cir. 2007) ....................................................25, 26, 27, 28

Lambeth v. Bd. Of Commissioners Of Davidson Cnty., NC,
   407 F.3d 266 (4th Cir. 2005) ...................................................................... 10

Lasater v. Guttmann,
   194 Md. App. 431, 5 A.3d 79 (2010) .....................................................20, 21

Liscombe v. Potomac Edison Co.,
   303 Md. 619, 495 A.2d 838 (1985) ............................................................ 14

Litz v. Maryland Dep't of Env't,
   434 Md. 623, 76 A.3d 1076 (2013) .........................................................23, 24

Murphy-Taylor v. Hofmann,
   968 F. Supp. 2d 693 (D. Md. 2013) ........................................................... 15

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,
   591 F.3d 250 (4th Cir. 2009) ...................................................................... 10

Newell v. Runnels,
   407 Md. 578, 967 A.2d 729 (2009) ................................................... 11, 12, 16

Perry v. Asphalt & Concrete Servs., Inc.,
   447 Md. 31, 133 A.3d 1143 (2016) ............................................................. 19

Placement Partners II v. Parker,
   247 F.3d 543 (4th Cir. 2001) ..................................................................10, 23

Stern v. Bd. of Regents, Univ. Sys. of Maryland,
   380 Md. 691, 846 A.2d 996 (2004) ............................................................ 21

Stover v. Coll. of William & Mary in Virginia,
   635 F. Supp. 3d 429 (E.D. Va. 2022) ......................................................... 25

Williams v. Morgan State Univ.,
   300 A.3d 54 (Md. 2023) ........................................................................12, 17

*Statutes*

20 U.S.C.A. § 1681(a) ........................................................................24
Md. Code Ann., State Gov't § 12-202 ...............................................23

*Rules*

Fed. R. Civ. P. 12(b)(6) .........................................................10, 15, 17

## Background

### *Facts Pleaded in Plaintiff's Amended Complaint*

Plaintiff Williams was recruited to play basketball at Coppin State University.  Am. Compl., para. 9-11.  As part of its recruitment, the University promised Williams and his family that it would provide him a safe environment, free from drugs, abuse, and violence, in which Williams could thrive.  Williams was promised financial assistance for tuition and housing as well.  Id. at para. 9-11.

Unfortunately, the University broke its promises.  Williams enrolled as a student at Coppin State starting in the fall semester of 2018, becoming a member of the men's basketball team.  Id. at para. 1.  Right away, in Williams' first semester as a first-year student, he was contacted through social media by a person purporting to be a young woman interested in a romantic relationship.  Id. at para. 12.  This person enticed Williams into sending sexually explicit images of himself that Williams believed were between him and the young woman.  Id. at para. 13.

Williams soon learned there was no young woman.  She was a fabrication. Instead, Williams was the victim of blackmailer out to harass and extort him.  Id. at para. 14.  This blackmailer, to whom Williams had sent the sexually explicit images of himself, soon demanded that Williams submit to a series of depraved sexual demands -- or suffer the humiliation and shame of the publication of the images and messages to Williams' basketball teammates and to the public at large.

1

Id. at para. 15-16.  Williams feared that disclosure of the material would destroy his reputation and basketball career at Coppin State and cause irreparable shame and harm to him and his family.  Id. at para. 19.

The blackmailer's harassment of Williams then escalated during the spring 2019 semester (of Williams' freshman year), with demands for even more salacious content.  Williams continued to respond to the demands, fearing that if he did not do so he would lose his place in the basketball program and lose the tuition, room, and board the University Defendants were providing.  Id. at 18-19.

Then, near the end of Williams' freshman year (the spring 2019 semester), defendant Lucien Brownlee, a coach and Director of Player Development for the Coppin State basketball team, told Williams that he too had sent explicit material to this blackmailer.  Id. at para. 20.  Brownlee, as a coach of the team, had "appeared to express an interest in [Williams'] progress and continuing success" as a basketball player at the University.  Id. at para. 22.  Brownlee said that he, too, was a victim of this same blackmailer.  Id. at para. 21.

Brownlee's revelation was then followed, curiously, by a demand from the blackmailer that Williams engage in sexual acts with Brownlee.  Id. at para. 23. Williams resisted and ignored the blackmailer's demand.  Id.   By the fall 2019 semester of plaintiff's sophomore year, however, the blackmailer's threats and demands escalated to a constant barrage fixated on the demanded sexual acts with

Brownlee.  Id. at para. 25.  In November 2019, the blackmailer, showing an

apparent knowledge of Brownlee's schedule and availability, demanded that

Williams record and send to the blackmailer video of Williams engaging in oral

sex with Brownlee.  Id.  at para. 26.  Early the next month, around December 8, the

blackmailer tried to arrange another sexual encounter between Williams and

Brownlee.  Id. at para. 31.  When Williams ignored the blackmailer, this only

enraged the blackmailer, who threatened that he would "wild out" on Williams if

he continued to ignore him and did not comply with the demands.  Id. at para. 32.

Following the December demand, the blackmailer demanded more sexual

videos.  Williams sent the blackmailer a video of Williams himself, but the

blackmailer rejected this (Id. at para. 34-35), demanding this time a video of

Williams having sex with Brownlee and repeatedly messaging Williams with

Brownlee's availability.  Id. at para. 36-37.[1]

Williams became hopeless.  He believed that the harassment would never

end, even communicating this to the blackmailer.  Id. at para. 38.  Williams began

contemplating suicide as his only escape.  Id. at 40.

Williams was too ashamed to tell his family, however.  So, instead, Williams

told his family about concerns regarding "blatant, unchecked use of illegal drugs

---

[1] As plaintiff charges in his Amended Complaint, it became obvious, later, that
Brownlee himself was the blackmailer.  Am. Compl. at para. 33.

and inappropriate behavior" by members of the Coppin State basketball program during travel for away games (which was true as well but not the true reason for Williams' depression and anxiety).  Id. at para. 40.  Williams hoped that this would cause him to be transferred to a different school and a different basketball program away from the blackmailer.  Id.

This led to a June 2020 meeting in which Williams and his father met with Coppin State Head Coach Juan Dixon to discuss the drug issues and Williams' possible transfer.  Id. at para. 41.  At this meeting, Coach Dixon told Williams and his father that player drug use was inevitable, but Dixon was adamant that Williams should stay at Coppin State.  Id.  Dixon assured Williams and his father that the University's financial support and other benefits would continue.  So Williams decided to remain.  Id.

The COVID-19 pandemic then struck.  By the fall 2020 semester (the beginning of Williams' junior year), Williams returned to the University and its basketball program.  Id. at para. 42-43.  Upon Williams' return, however, the blackmailer had made good on his threats and revealed the sexually explicit material about Williams to the entire team and staff, and to the public.  Id.

Coach Dixon directed Williams to attend practice the next day, at which time Dixon met with Williams.  Id. at para. 44.  At this meeting, Dixon admitted to Williams that he (Dixon) was aware that Coach Brownlee was a sexual predator,

was aware that Brownlee had attempted to blackmail other students in the University's basketball program and was aware that Brownlee was emotionally imbalanced or ill.  Id. at para. 44.  Plaintiff alleges, "JUAN DIXON AND DEREK CARTER were also made aware, including but not limited to, during the 2019-2020 school year, that other students on the basketball program had been the victim of blackmail and attempted sexual assault and/or harassment and failed to properly report same or take any action to advise or warn the student-athletes or student-body of this peril."  Later that day, in the evening, Coach Dixon spoke with plaintiff's brother and father over the telephone and Dixon "again confirmed his awareness of LUCIAN BROWNLEE'S [] instability" and "repeated that Lucian was 'sick' and had a troubled background" (Am. Compl. at para. 45-46).

Despite "full knowledge" of Brownlee's conduct, neither Dixon nor any of the other University Defendants[2] monitored Brownlee's interaction with Williams or any of the other student athletes on the basketball team or took any steps to even try to prevent Brownlee's heinous conduct.  Id. at para. 47.  Williams asked Coppin State to conduct its own review of and its own investigation into the harassment, sexual assault, and blackmail that he had endured (Id. at para. 48), but the

---

[2] Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon are referred to collectively as the "University Defendants" (which are all the defendants named in plaintiff's lawsuit except the blackmailer himself, defendant Brownlee).

University only harmed Williams further.  Id. at para. 49.  In violation of Coppin

State's own guidelines, Williams – the victim -- was questioned about his past

sexual encounters and even his sexual orientation, causing further emotional

distress and harm to the already damaged and extremely fragile young student.

The University then harmed Williams financially by stopping the tuition assistance

and housing funds it had been providing to Williams – leaving him broken both

psychologically and financially.  Id.

### Procedural History of this Action

Plaintiff filed a Complaint against defendants in Maryland state court on

November 2, 2022, asserting five claims for negligence, negligent hiring and

retention, negligent infliction of emotional distress, and breach of contract.  On

May 18, 2023, the University Defendants filed a motion to dismiss plaintiff's

Complaint based on alleged governmental immunity and failure to state a claim.

The Maryland Circuit Court entered a July 24, 2023, Order granting the University

Defendants' motion but permitting plaintiff leave to file an Amended Complaint.

Plaintiff filed his Amended Complaint on or about August 23, 2023,

asserting six claims against defendants for gross negligence (First Count),

Negligent Hiring and Retention (Second Count), Intentional Infliction of

Emotional Distress (Third Count), Breach of Contract (Fifth Count[3]), Failure to

_____

[3] There is no Fourth Count in the Amended Complaint.

Comply with Reporting Policy and Retaliation (Sixth Count), and Respondeat Superior (Seventh Count). Plaintiff charges that the University Defendants, through Dixon, Carter, and others in positions of authority at Coppin State, "knew that Brownlee was unfit to hold a position of authority or supervisory role over student-athletes" yet "hired and retained him as coach and Director of Player Development for the men's basketball team." Am. Compl. at para. 43. Dixon, Carter, and Coppin State failed to comply with reporting requirements that were triggered by Brownlee's heinous actions and failed to provide Williams a safe and suitable environment free from violence, harassment, and drug abuse. Id. at para. 44. "Dixon, Carter, Coppin State, and the University System failed to follow NCAA guidelines and their own policies regarding the financial, emotional, and physical well-being of Williams." Id. at para. 45. Then, "[a]fter Williams notified the University that he was the victim of sexual assault and harassment and formally demanded an investigation, Coppin State, through its agents, servants, and employees[,] retaliated against Williams by terminating, without cause, the housing and tuition assistance previously promised and provided," Id.

Plaintiff alleges, further, that Coppin State recruited him to play basketball for the University by promising, among other things, to provide him with a safe environment and with financial assistance -- promises that Coppin State broke in the ensuing years. Brownlee was the blackmailer all along. His employers and

supervisors, including defendants Carter and Dixon, knew that Brownlee was a sexual predator and obvious danger to Williams and the other players on the basketball team (at the very least). Yet the University Defendants retained Brownlee as a coach, maintained no oversight as to his relationships or relations with the young student athletes on the team, and took no actions whatsoever to prevent Brownlee from victimizing Williams (and who knows how many other young men on the basketball team over the years). When Williams demanded the University investigate and address the horrors he had endured, the University retaliated by terminating the financial assistance it had been providing since he began school – leaving Williams financially damaged as well and without any redress for the tremendous psychological and emotional harm he had suffered. Id.

***The Motion Before the Court Here***

Four days before filing their September 22, 2023 Notice of Removal to this Court, the University Defendants filed in the state court a Motion to Dismiss plaintiff's Amended Complaint, arguing that the Amended Complaint "utterly fails to remedy the deficiencies in his case."[4] The University Defendants again argue that they are immune under Maryland law; that plaintiff's claim of negligent hiring and retention "fails to allege facts from which it can be inferred that the University

---

[4] Defendant Brownlee filed an Answer to the Amended Complaint and is not moving for dismissal; Brownlee's liability is therefore not discussed herein.

had actual or constructive notice of Mr. Brownlee's dangerousness and hired or retained him in disregard of such notice"; that plaintiff's claims against defendants Carter and Dixon fail "because the amended complaint alleges no facts from which it can inferred that they acted outside the scope of their employment or with malice or gross negligence"; that plaintiff's breach of contract claim "continues to be deficient" because it rests "on oral assurances" and "it appears that it is still time-barred"; that plaintiff's claim under Title IX (pleaded in the Sixth Count of the Amended Complaint) fails because "the factual allegations do not demonstrate the type of intentional discrimination that Title IX claims are designed to address"; and that plaintiff's claim for respondeat superior liability under the Seventh Count fails "because Maryland does not recognize respondeat superior as a separate basis for liability."

Plaintiff submits this Memorandum in opposition to the University Defendants' Motion to Dismiss and, for the following reasons, asks that the Court deny the motion in its entirety and permit discovery to proceed on plaintiff's claims.

## **ARGUMENT**

### **THE COURT SHOULD DENY THE UNIVERSITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT.**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A claim is plausible when "plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Id. (citing Bell Atlantic Corp., 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to plaintiff.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Lambeth v. Bd. Of Commissioners of Davidson Cnty., NC, 407 F.3d 266, 268 (4th Cir. 2005).  The Court should grant a motion to dismiss for failure to state a claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." GE Inv. Priv. Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001); H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249–50, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

## I.    None of the University Defendants are immune on the face of plaintiff's Amended Complaint.

Maryland's Tort Claims Act was enacted in 1981 as a waiver of the State's sovereign immunity for tortious acts or omissions committed within the scope of the public duties of "state personnel," and committed without malice or gross negligence.  Newell v. Runnels, 407 Md. 578, 635, 967 A.2d 729 (2009).  The Act provides a framework where either the individual personnel, or the State itself, is immune from tortious acts – but not both.

State personnel are immune, but the State is not, for acts or omissions committed within the scope of the personnel's public duties "without malice or gross negligence," Barbre v. Pope, 402 Md. 157, 173, 935 A.2d 699, 710 (2007).  The State is immune, and the individual is not, where the act is committed with malice or gross negligence.

"In other words, liability of the State and liability of individual State personnel are mutually exclusive.  If the State is liable, the individual is immune; if the individual is liable, the State is immune."  Newell, 407 Md. at 635.  This mutual exclusivity shows that none of the University Defendants are immune as a matter of law on the face of plaintiff's Amended Complaint.

### A. *Individual Defendants Carter, Dixon, and Brownlee*

The immunity of these individual defendants cannot be determined at the pleadings stage of this case because a jury considering the actions and inactions of

Carter, Dixon, and Brownlee, as plaintiff has pleaded in his Amended Complaint, could find the acts and omissions to be only negligent, in which case Carter, Dixon, and Brownlee would be immune under Maryland's Tort Claims Act, or grossly negligent or malicious, in which case these defendants would not be immune. The Supreme Court of Maryland "has recognized consistently that the determination of whether a State actor enjoys State personnel [employee] immunity is a question for the trier of fact" because malice and gross negligence are "amorphous concepts" that must be determined in the context of the particular case. Newell, 407 Md. 578.

As noted, state personnel like Carter, Dixon, and Brownlee are immune under Maryland's Tort Claims Act for *negligent* acts or omissions, but not for *malicious or grossly negligent ones*, see Williams v. Morgan State Univ., 300 A.3d 54, 59 (Md. 2023) (citing Md. Code Ann. Section 5-522(b) as "providing that State Personnel as defined under the MTCA are 'immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence'"). Malice consists of an "evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." Barbre v. Pope, 402 Md. 157, 182, 935 A.2d 699 (2007). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the

life or property of another," and "implies a thoughtless disregard of the

consequences without the exertion of any effort to avoid them."  Cooper v.

Rodriguez, 443 Md. 680, 708, 118 A.3d 829 (2015).

Plaintiff has alleged acts and omissions by Carter, Dixon, and Brownlee that

a factfinder could find constitute malice or gross negligence, so dismissal of these

defendants on ground of immunity is not warranted here.  As summarized above,

plaintiff alleges that Dixon admitted to Williams that he (Dixon) was aware that

Brownlee was a sexual predator, was aware that Brownlee had attempted to

blackmail other students in the University's basketball program and was aware that

Brownlee was emotionally imbalanced or ill.  Am. Compl. at para. 44.  Plaintiff

details at paragraph 45 of his Amended Complaint, "JUAN DIXON AND DEREK

CARTER were also made aware, including but not limited to, during the 2019-

2020 school year, that other students on the basketball program had been the

victim of blackmail and attempted sexual assault and/or harassment and failed to

properly report same or take any action to advise or warn the student-athletes or

student-body of this peril."  In his phone call with plaintiff's brother and father

later that day, Coach Dixon "again confirmed his awareness of LUCIAN

BROWNLEE'S [] instability" and "where Defendant Dixon repeated that Lucian

was 'sick' and had a troubled background" (Am. Compl. at para. 46).  Plaintiff

specifically charges gross negligence (First Count) and intentional infliction of

emotional distress against these defendants (Third Count), which speak to

malicious or at least grossly negligent conduct -- "a thoughtless disregard of the

consequences without the exertion of any effort to avoid them," Barbre, 402 Md. at

187.  In the Sixth Count of his Amended Complaint, plaintiff again charges that

Carter and Dixon were aware of Brownlee's tortious and criminal acts:

> 93.  DEREK CARTER AND JUAN DIXON as head of the
> athletic department and a head coach, respectively, were made aware
> in the 2019-2020 school year of instances of blackmail and sexual
> coercion involving student athletes, prior to the dissemination of the
> blackmail photos and video and during the blackmail suffered by IBN
> WILLIAMS.
>
> 94.  LUCIAN BROWNLEE, DEREK CARTER, JUAN
> DIXON all acted with deliberate indifference to known acts of
> harassment, abuse, assault and/or blackmail in its programs or
> activities by intentionally and or gross negligently failing to properly
> report these known violations and acts of harassment.

Plaintiff's communications with Brownlee, following the Fall of 2019 when

Brownlee became a member of the coaching staff, was also an attempt by plaintiff

to report the blackmail and threats.

Brownlee will argue that he was not the blackmailer or cooperating with the

blackmailer.  He may argue that he was – as he claimed to Mr. Williams – another

victim of the blackmailer; even so Brownlee acted maliciously, with gross

negligence in his failure to properly or timely report his interaction with Mr.

Williams.  This again shows that dismissal of these defendants should not be on the

face of the Amended Complaint.

Plaintiff charges further than when Williams demanded the University investigate and redress the harms he had suffered at the hands of this sexual predator, the University Defendants "retaliated" against Williams by withdrawing his financial assistance.  Am. Compl. at para. 99.  All of these and the other allegations of plaintiff's Amended Complaint, read liberally in plaintiff's favor at the motion to dismiss stage, are sufficient to plead that Carter, Dixon, and Brownlee acted or declined to act with malice or gross negligence, <u>Barbre</u>, 402 Md. at 187 ("'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another'") (<u>quoting</u> <u>Liscombe v. Potomac Edison Co.</u>, 303 Md. 619, 635, 495 A.2d 838 (1985)).  "'[A] wrongdoer is guilty of gross negligence" when "he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist," <u>Bailey v. City of Annapolis</u>, 252 Md. App. 83, 103, 258 A.3d 894 (2021).

The University Defendants' argument that plaintiff's Amended Complaint "is devoid of allegations that would support a finding of gross negligence or malicious action" by Carter or Dixon (Memorandum at 14) simply ignores plaintiff's allegations and fails to construe them in the light most favorable to plaintiff as required under Fed. R. Civ. P. 12(b)(6) (a jury obviously can find that Brownlee acted maliciously and/or with gross negligence).  Plaintiff alleges that Carter and Dixon *knew* that Brownlee, a prominent member of the coaching staff

who was in close contact with and in a position of authority over the young student basketball players, was a "sexual predator," yet Carter and Dixon turned a blind eye to the threat that Brownlee obviously posed and effectively enabled this pervert to prey on the young men, including plaintiff.  That is the essence of "utter indifference" to not just the "rights" of "others" but to the health and safety of these young men.  Defendants' responsibility was to foster this protection of health and safety. Instead, they exposed plaintiff and the other young students to a predator that was able to use his position as Coach and a Director of "player development" to gain their trust for nefarious purposes.  Immunity does not obviously or indisputably apply to these defendants at the pleadings stage of this case such that plaintiff's claims against these defendants should be dismissed on their face, cf. Murphy-Taylor v. Hofmann, 968 F. Supp. 2d 693 (D. Md. 2013) (employee of sheriff's office sued superiors for negligence after workplace sexual harassment; individual defendants not immune under MTCA because complaint sufficiently alleged gross negligence where plaintiff complained to superiors about harassment and defendants took no action).

### B. The State of Maryland, USM, and Coppin State

The immunity of the State and its extensions (USM and Coppin) likewise cannot be determined at the pleadings stage for the same reason – because the acts and omissions of Carter, Dixon, and Brownlee could be determined to be only

negligent, in which case the State is not immune, or grossly negligent or malicious, in which case the State is.

Regarding Brownlee, plaintiff's communications with Brownlee, following the Fall of 2019 when Brownlee became a member of the coaching staff, was also an attempt by plaintiff to report the blackmail and threats.  Brownlee's culpability, whether malicious or grossly negligent or simply negligent would then determine whether Brownlee or the University Defendants are immune under Maryland law and again shows that dismissal of any of the defendants cannot be made on the face of the Amended Complaint.

Plaintiff alleges that Carter and Dixon knew that Brownlee was a sexual predator but did nothing to protect plaintiff, causing him great harm.  A jury can find that the acts and omissions of Carter and Dixon were grossly negligent or malicious, or only negligent.

Thus, dismissal of the State on ground of immunity, just like for the individual defendants, is not proper.  As the Supreme Court of Maryland has recently noted once again,

> The Legislature has created a comprehensive statutory scheme, where the waiver of the State's sovereign immunity for tort actions corresponds precisely with immunity from suit and liability for State personnel. In lieu of recovery from the negligent State personnel, the party may obtain compensation for that injury from the State. *Barbre, 402 Md. at 173–74, 935 A.2d 699*. 'In other words, liability of the State and liability of individual State personnel are mutually exclusive.  If the State is liable, the individual is immune; if the

17

individual is liable, the State is immune.' *Newell v. Runnels, 407 Md. 578, 635, 967 A.2d 729 (2009).* 'In effect, the MTCA substitutes the State for the State personnel as the appropriate defendant in such an action.' *Rodriguez v. Cooper, 458 Md. 425, 451–52, 182 A.3d 853 (2018).* [Williams, 300 A.3d at 59]

Whether immunity extends to the State but not to Carter, Dixon, and Brownlee, or vice versa, cannot be determined on the face of the pleading.  None of the University Defendants, therefore, are entitled to dismissal on grounds of immunity under Fed. R. Civ. P. 12(b)(6).  Before the Court can determine whether dismissal is appropriate, or not, the parties must engage in discovery and the development of its proofs.

## II.     Plaintiff sufficiently pleads a claim for negligent hiring and retention.

A negligent hiring and retention claim requires a plaintiff to plead (l) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.  Asphalt & Concrete Servs., Inc. v. Perry, 221 Md. App. 235, 256, 108 A.3d 558 (2015), aff'd, 447 Md. 31, 133 A.3d 1143 (2016).

Plaintiff pleads those elements in his Amended Complaint, per his Second Count (paragraphs 57-75).  Defendants Brownlee, Carter, and Dixon were at all relevant times employees of Coppin State and USM.  Am. Compl. at para. 4-6.

Plaintiff charges that the University Defendants, through Dixon, Carter, and others in positions of authority at Coppin State, "knew that Brownlee was unfit to hold a position of authority or supervisory role over student-athletes" yet "hired and retained him as coach and Director of Player Development for the men's basketball team."  Am. Compl. at para. 43.  Brownlee was "at the very least incompetent to hold this position and was, in fact, a known or knowable danger to the students" (Am. Compl. at para. 63).  Carter and Dixon also "were at the very least incompetent to hold" their positions (Am. Compl. at para. 69).  The University Defendants' suggestion that plaintiff "fails to allege facts from which it can be inferred that the University had actual or constructive notice of Mr. Brownlee's dangerousness and hired or retained him in disregard of such notice" again ignores the plainly stated allegations and fails to construe the Amended Complaint as the motion to dismiss standard requires.

The University Defendants claim that the Amended Complaint does not specify when Coach Dixon became aware that Brownlee was a sexual predator and "ill."  Not so.  Plaintiff alleges that Coach Dixon told plaintiff at the practice the day after the blackmailer released the explicit material that he knew that Brownlee was a sexual predator, was aware that Brownlee had attempted to blackmail other students in the University's basketball program and was aware that Brownlee was emotionally imbalanced or ill.  Am. Compl. at para. 44.  "JUAN DIXON AND

19

DEREK CARTER were also made aware, including but not limited to, during the
2019-2020 school year, that other students on the basketball program had been the
victim of blackmail and attempted sexual assault and/or harassment and failed to
properly report same or take any action to advise or warn the student-athletes or
student-body of this peril." Later that same day, Coach Dixon had a phone call
with plaintiff's brother and father in which Dixon "again confirmed his awareness
of LUCIAN BROWNLEE'S [] instability" and "where Defendant Dixon repeated
that Lucian was 'sick' and had a troubled background" (Am. Compl. at para. 46).
In paragraph 93 of his Amended Complaint, plaintiff again charges, "DEREK
CARTER AND JUAN DIXON as head of the athletic department and a head
coach, respectively, were made aware in the 2019-2020 school year of instances of
blackmail and sexual coercion involving student athletes, prior to the dissemination
of the blackmail photos and video and during the blackmail suffered by IBN
WILLIAMS." Despite "full knowledge" of Brownlee's conduct, neither Dixon nor
any other University Defendant did anything to monitor Brownlee's interaction
with Williams or any other student athletes, or to prevent Brownlee's inappropriate
interaction with and torment of Williams. Am. Compl. at para. 47; see, e.g., Perry
v. Asphalt & Concrete Servs., Inc., 447 Md. 31, 52, 133 A.3d 1143 (2016)
(plaintiff must show that employer hired or retained employee despite knowledge
of incompetence or threat of harm that proximately caused plaintiff's injuries).

These allegations are sufficient to state at least a "plausible claim" that permits a court "to draw the reasonable inference that defendant is liable for the misconduct alleged" at the pleadings stage, Bell Atlantic Corp., 550 U.S. at 556.

On the day after the sexually explicit content was made public, plaintiff alleges that Dixon stated he already knew about Brownlee's predatory behavior. This fact alone, and particularly in conjunction with plaintiff's allegation that Dixon was aware, at this time, of Brownlee's predatory behavior toward other student-athletes, supports a reasonable inference that Dixon and Carter, on the behalf of the University Defendants, had actual knowledge of Brownlee's conduct and ample opportunity to act before Brownlee published the blackmail material, causing substantial damage to the Plaintiff.

### III. Plaintiff sufficiently pleads a claim for intentional infliction of emotional distress.

To prove intentional infliction of emotional distress, a plaintiff must show (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe.  Lasater v. Guttmann, 194 Md. App. 431, 448, 5 A.3d 79 (2010).  The intentional or reckless element is satisfied if the defendant "either desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from his conduct, or acted recklessly in deliberate disregard of a high degree of

21

probability that the emotional distress will follow." Est. of Alcalde v. Deaton
Specialty Hosp. Home, Inc., 133 F. Supp. 2d 702, 712 (D. Md. 2001).  Conduct is
"extreme and outrageous" when it is "so outrageous in character, and so extreme in
degree, as to go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized community." Lasater, 194 Md. App.
at 448.

Plaintiff's allegations in his Amended Complaint and the reasonable
inferences drawn from them show that Dixon and Carter were aware that Brownlee
posed a palpable risk of inflicting egregious harm to the young students on the
basketball team yet willfully ignored the danger he posed.  When plaintiff
demanded an investigation and redress, the University Defendants harmed
Williams further by questioning him about his own past sexual encounters and
sexual orientation, then taking away his financial assistance - causing even more
damage to the already damaged and fragile young student.  Those allegations
sufficiently plead at least deliberate disregard – a "high degree of probability" --
that Williams would suffer emotional distress as a result.  Estate of Alcalde, 133 F.
Supp. 2d at 712.  The allegations sufficiently plead conduct by the University and
its employees that goes "beyond all possible bounds of decency" and is "utterly
intolerable in a civilized community." Lasater, 194 Md. App. at 448.  Williams has
sufficiently pleaded emotional distress that was severe, moreover, since his

Amended Complaint details his plans for suicide caused by the shame, humiliation, and depression caused to him.

### IV.   Plaintiff sufficiently pleads a claim for breach of contract.

The University Defendants contend they are immune from plaintiff's breach of contract claim pleaded under the Fifth Count because plaintiff's Amended Complaint does not identify the terms of a written contract that has been breached (citing State Gov't § 12-201; see Stern v. Bd. of Regents, Univ. Sys. of Maryland, 380 Md. 691, 721, 723, 846 A.2d 996 (2004)).  But plaintiff specifically alleges in the Fifth Count of his Amended Complaint,

> 82.  When recruited by Defendant Coppin State University's basketball program, Plaintiff contracted in a written contract for the University to provide financial assistance for tuition and housing pursuant to a written document, that was by its own terms in effect for a period of four years from its signing in April of 2018.

> 83.  The contract was signed by an authorized University employee namely the Athletic Director DEREK CARTER.

> 84.  Subsequent to bringing to light the sexual assaults and harassment Plaintiff suffered at the hands of LUCIAN BROWNLEE, a member of the coaching staff and an employee, agent and/or servant of COPPIN STATE UNIVERSITY's basketball program, Defendants reneged on the contractual promises and breached this agreement on a continuing basis for the entire term of the contract.

> 85.  Promised and previously provided financial assistance in the form of housing costs and tuition assistance were withheld from Plaintiff upon his return to COPPIN STATE UNIVERSITY for the 2020 fall semester and thereafter and eventually, among the other wrongful acts set forth above, forced Plaintiff to seek enrollment at another college.

86.  Defendant improperly withheld the scholarship and tuition and housing assistance in breach of the written agreement.

87.  Defendants actions violated the express terms of their agreement as well as an implied covenant of good faith and fair dealing.

88.  It was subsequently discovered that COPPIN STATE UNIVERSITY violated the written contract in other ways as well, as the financial aid that was provided to the Plaintiff was not in the form of athletic financial aid but rather funds that were misappropriated or otherwise wrongfully obtained from other academic departments in breach of the agreement, NCAA Guidelines, and State and other reporting requirements. This misappropriation facilitated the ability of the University to breach its written agreement with the Plaintiff.

Failing to attach the written contract itself, at the pleading stage of this case before any discovery and production of documents by the defendants, is not ground to conclude that plaintiff's breach of contract claim is not "plausible" and that "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," GE Investment Private Placement Partners II, 247 F.3d at 548; H.J. Inc., 492 U.S. at 249–50.

With regard to defendants' argument that the statute of limitations on the breach of contract claim has run, Md. Code Ann., State Gov't § 12-202 imposes a limitation on breach of contract claims against a unit of the State, requiring that a plaintiff file suit "within 1 year after the later of: (1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim."  Md. Code Ann., State Gov't § 12-202.  However, "[w]hen it is necessary to make a factual

determination to identify the date of accrual, ...  those factual determinations are generally made by the trier of fact, and not decided by the court as a matter of law." Litz v. Maryland Dep't of Env't, 434 Md. 623, 641, 76 A.3d 1076 (2013). "[A] motion to dismiss ordinarily should not be granted by a trial court based on the assertion that the cause of action is banned by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." Id.

Plaintiff's Amended Complaint, read in his favor, does not show that the statute of limitations has expired.  Plaintiff alleges that there was a four-year written contract covering his undergraduate years at Coppin State, which would have ended in or around May 2022 (the anticipated graduation date).  Plaintiff filed his lawsuit in this case only a few months afterward, in November 2022. Discovery is needed to determine the dates on which the contract was completed, and plaintiff's claim for breach arose, see also Litz, 434 Md. at 646 ("The continuing harm or continuing violation doctrine tolls the statute of limitations in cases where there are continuing violations").  Because the Amended Complaint, read liberally in plaintiff's favor, does not show that the breach of contract is plainly time barred, dismissal on this ground is also unwarranted.[5]

---

[5] Issues related to the breach of contract were included in the Notice of Claim and the Title IX investigation that plaintiff Williams requested.  The State was made aware of these allegations and should not be rewarded with purposefully delaying

### V.      Plaintiff sufficiently pleads a claim under Title IX.

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination

under any education program or activity receiving Federal financial assistance." 20

U.S.C.A. § 1681(a).  "Discrimination under Title IX includes coach-on-student

sexual harassment that creates a hostile environment in a school sports program."

Jennings v. Univ. of N. Carolina, 482 F.3d 686, 694 (4th Cir. 2007) (citing

Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 75, 112 S. Ct. 1028, 117 L. Ed.

2d 208 (1992)); Stover v. Coll. of William & Mary in Virginia, 635 F. Supp. 3d

429, 441 (E.D. Va. 2022).  A private right of action against the institution is

implied under Title IX, Cannon v. Univ. of Chicago, 441 U.S. 677, 709, 99 S. Ct.

1946, 60 L. Ed. 2d 560 (1979), and money damages are available as a remedy,

Franklin, 503 U.S. at 76; Jennings, 482 F.3d at 694.

Title IX provides a remedy to a student who is subjected to sexual

harassment by a teacher or professor – or here a coach -- at an educational

institution receiving federal funds.  Hayut v. State Univ. of New York, 352 F.3d

733, 749–50 (2d Cir. 2003); Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274,

---

resolution of plaintiff's complaints by staging a sham Title IX investigation then
claiming that Williams' Complaint filed in court is untimely, cf. Fitzgerald v. Bell,
246 Md. App. 69, 89, 227 A.3d 796 (2020) ("[Maryland] courts recognize the
'continuation of events' theory, pursuant to which the statute of limitations may be
tolled when a confidential or fiduciary relationship exists between the parties.")

280, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998).  For an educational facility to be liable, the plaintiff must establish that a school official with "authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge" of the discrimination and failed to adequately respond.  Gebser, 524 U.S. at 290.  A school fails to adequately respond if it provides no response or if it provides a response that "amount[s] to deliberate indifference to discrimination." Id.  The school's response must be "clearly unreasonable" considering known circumstances.  Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999); Jennings, 482 F.3d at 694.

Plaintiff's Amended Complaint adequately pleads these elements against the State of Maryland, USM, and Coppin State.  In the Sixth Count of his Amended Complaint, plaintiff alleges that Coppin State and USM are Title IX funding recipients (Am. Compl. at para. 91) then alleges,

93.  DEREK CARTER AND JUAN DIXON as head of the athletic department and a head coach, respectively, were made aware in the 2019-2020 school year of instances of blackmail and sexual coercion involving student athletes, prior to the dissemination of the blackmail photos and video and during the blackmail suffered by IBN WILLIAMS.

94.  LUCIAN BROWNLEE, DEREK CARTER, JUAN DIXON all acted with deliberate indifference to known acts of harassment, abuse, assault and/or blackmail in its programs or activities by intentionally and or gross negligently failing to properly report these known violations and acts of harassment.

27

95.  The harassment, abuse, blackmail and assault were so severe, pervasive, and objectively offensive that it effectively barred access to an equal opportunity to education to IBN WILLIAMS.

96.  All of the named Defendants did not follow appropriate policies and procedures properly investigate and accommodate the plaintiff (or the prior incidences of blackmail to the detriment of IBN WILLIAMS) as required under Title IX as adopted by COPPIN STATE UNIVERSITY and its own policies and procedures on Sexual Harassment and Other Sexual Misconduct.

Plaintiff alleges that Coppin State, "a [signatory] to the NCAA Association-Wide Policy on Campus Sexual Violence," also violated those policies and procedures by Dixon and Carter "failing to properly report that they had been made aware of sexual coercion and blackmailing of their student athletes prior to and during the blackmailing and sexual assault on IBN WILLIAMS and prior to the dissemination of the blackmail photos in September of 2020 and for failing to properly report any other predatory sexual behavior of LUCIAN BROWNLEE of which JUAN DIXON advised plaintiff that he was aware.  The UNIVERSITY defendants further violated all the above-mentioned policies, procedures and guidelines by retaliating against IBN WILLIAMS for reporting the blackmail by withdrawing his tuition and housing scholarship."  Am. Compl. at para. 98-99.

The University Defendants' argument that plaintiff's allegations "do not demonstrate" that Carter and Dixon "had actual notice of Mr. Brownlee's alleged misconduct and failed to address it" (Memorandum at 24) again disregards plaintiff's allegations and fails to construe them as required on a motion to dismiss.

28

As noted above, plaintiff alleges that Carter and Dixon were aware that Brownlee was a sexual predator who was preying on the young men on the basketball team. Coach Dixon, at his meeting with plaintiff, admitted that he (Dixon) was aware that Brownlee was a sexual predator, was aware that Brownlee had attempted to blackmail other students in the University's basketball program, and was aware that Brownlee was emotionally imbalanced or ill. Id. at para. 44. "JUAN DIXON AND DEREK CARTER were also made aware, including but not limited to, during the 2019-2020 school year, that other students on the basketball program had been the victim of blackmail and attempted sexual assault and/or harassment and failed to properly report same or take any action to advise or warn the student-athletes or student-body of this peril." In his phone call with plaintiff's brother and father, Coach Dixon "again confirmed his awareness of LUCIAN BROWNLEE'S [] instability" and "repeated that Lucian was 'sick' and had a troubled background" (Am. Compl. at para. 46). "DEREK CARTER AND JUAN DIXON as head of the athletic department and a head coach, respectively, were made aware in the 2019-2020 school year of instances of blackmail and sexual coercion involving student athletes, prior to the dissemination of the blackmail photos and video and during the blackmail suffered by IBN WILLIAMS."

As noted above, on the day after the sexually explicit content was made public, plaintiff alleges that Dixon stated he already knew about Brownlee's

29

predatory behavior.  This fact alone, and particularly in conjunction with plaintiff's
allegation that Dixon was aware, at this time, of Brownlee's predatory behavior
toward other student-athletes, supports a reasonable inference that Dixon and
Carter, on the behalf of the University Defendants, had actual knowledge of
Brownlee's conduct and ample opportunity to act before Brownlee published the
blackmail material, causing substantial damage to the Plaintiff.   Yet, despite "full
knowledge" of Brownlee's conduct, neither Dixon nor any other University
Defendant did anything to monitor Brownlee's interaction with Williams or any
other student athletes, or to prevent Brownlee's inappropriate interaction with and
torment of Williams.  Id. at para. 47.  Then, instead of helping its young student,
the University harmed Williams further during the investigation by questioning the
victim about his past sexual encounters and sexual orientation and causing him
even more emotional distress and harm.  Id.  Plaintiff also alleges that during the
claimed investigation, the University Defendants "retaliated" against him by
stopping his financial assistance - a claim for relief that Title IX also recognizes (as
the University Defendants acknowledge, citing Jackson v. Birmingham Bd. of
Educ., 544 U.S. 167, 173, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005)).  Plaintiff
specifically pleads a causal link in paragraph 99 of his Amended Complaint: "The
UNIVERSITY defendants further violated all the above-mentioned policies,
procedures and guidelines by retaliating against IBN WILLIAMS for reporting the

blackmail by withdrawing his tuition and housing scholarship." These allegations, construed in plaintiff's favor, are sufficient to state a claim for relief under Title IX at the pleadings stage.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should deny the University Defendants' motion to dismiss plaintiff's Amended Complaint.

Dated: November 9, 2023

/s/ *Thomas Keilty*
Thomas W. Keilty, III (Bar No. 18992)
tkeilty@kblitigation.com
Nicholas C. Bonadio (Bar No. 13679)
nbonadio@kblitigation.com
Keilty Bonadio, LLC
One South Street
1 South Street, Suite 2125
Baltimore, Maryland 21202
Telephone: 410-646-8880

Daniel N. Epstein (pro hac vice)
EPSTEIN OSTROVE, LLC
200 Metroplex Drive, Suite 304
Edison, NJ 08817
T: (732) 828-8600
F: (732) 828-8601
d.epstein@epsteinostrove.com

Attorneys for Plaintiff, Ibn Williams
