IBN WILLIAMS,                         *

        *Plaintiff*,                    *       IN THE

v.                                    *       CIRCUIT COURT

COPPIN STATE UNIVERSITY,              *       FOR
THE UNIVERSITY SYSTEM OF
MARYLAND,          LUCIEN             *       BALTIMORE CITY
BROWNLEE, DEREK CARTER,
JUAN DIXON, THE STATE OF              *       No. 24-C-22-004662
MARYLAND, JOHN DOES I-X,
AND ABC CORP. I-X,                    *

        *Defendants*.

   *    *    *    *    *    *    *    *    *    *    *    *

## UNIVERSITY DEFENDANTS' MOTION
## TO DISMISS AMENDED COMPLAINT

Defendants, Coppin State University, the University System of Maryland, the State

of Maryland, Derek Carter, and Juan Dixon, (collectively the "University Defendants"),

through counsel, move to dismiss the amended complaint under Maryland Rule 2-322(b)

because they are entitled to immunity and for failure to state a claim upon which relief can

be granted.  For the reasons set forth more fully in the accompanying memorandum, the

University Defendants respectfully request that all claims against them be dismissed in

their entirety with prejudice.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

ANN M. SHERIDAN
Attorney No. 9112190160
ARIEL LICHTERMAN
Attorney No. 1801110004
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
alichterman@oag.state.md.us
(410) 576-6459
(410) 576-6437 (facsimile)

September 18, 2023

*Attorneys for Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon*

## CERTIFICATE OF SERVICE

I certify that, on this 18th day of September, 2023, the University Defendants'

Motion to Dismiss Amended Complaint, Memorandum in Support, and proposed order

were served by first-class mail and email on all persons entitled to service:

Thomas W. Keilty, III, Esq.
Nicholas C. Bonadio, Esq.
Keilty Bonadio, LLC
One South Street, Suite 2125
Baltimore, Maryland 21202
tkeilty@kblitigation.com
nbonadio@kblitigation.com
*Attorneys for Plaintiff*

Daniel N. Epstein, Esq.
Epstein Ostrove, LLC
200 Metroplex Drive, Suite 304
Edison, NJ 08817
d.epstein@epsteinostrove.com
*Attorneys for Plaintiff*

Tiffani Collins, Esq.
Collins Legal Group, LLC
20 South Charles Street, Suite 901
Baltimore, MD 21201
Tiffani@tcollinslaw.com
*Attorney for Lucien Brownlee*

Ann M. Sheridan

IBN WILLIAMS,                                *

       *Plaintiff,*                    *          IN THE

v.                                          *          CIRCUIT COURT

COPPIN STATE UNIVERSITY,                    *          FOR
THE UNIVERSITY SYSTEM OF
MARYLAND,          LUCIEN                    *          BALTIMORE CITY
BROWNLEE, DEREK CARTER,
JUAN DIXON, THE STATE OF                     *          No. 24-C-22-004662
MARYLAND, JOHN DOES I-X,
AND ABC CORP. I-X,                          *

       *Defendants.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OF LAW
## IN SUPPORT OF THE UNIVERSITY DEFENDANTS∞
## MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Coppin State University (the "University"), the University System of

Maryland ("USM"), the State of Maryland, Derek Carter, and Juan Dixon (collectively the

"University Defendants"), by their undersigned attorneys, submit this memorandum of law

in support of their motion to dismiss the claims against them.

### INTRODUCTION

On or about November 2, 2022, Plaintiff Ibn Williams filed a complaint against the

University Defendants asserting claims of negligence, negligent hiring and retention,

negligent infliction of emotional distress, and breach of contract relating to their

management of the University's basketball program while Plaintiff was a student-athlete

on the basketball team. The initial complaint alleged that, as result of the University

Defendants' purported negligent management of the basketball team, Plaintiff was sexually

1

harassed and blackmailed outside of basketball activities by an unknown individual. The University Defendants moved to dismiss all claims asserted against them based on immunity and failure to state a claim, and the Court granted the Defendants' motion but permitted Plaintiff to amend his complaint.

Plaintiff has now filed an amended complaint which utterly fails to remedy the deficiencies in his case. The amended complaint more clearly identifies Plaintiff's blackmailer and sexual harasser as Defendant Lucien Brownlee, an individual who was a fellow student and basketball teammate when the alleged conduct began in the 2018-2019 school year, and who was engaged as part of the coaching staff during the 2019-2020 school year. The amended complaint now seeks, in Counts One and Three, to sue the State entities for Mr. Brownlee's conduct, but the State has not waived its immunity for the type of conduct (blackmail, sexual harassment, sexual assault, sexual coercion) that Mr. Brownlee is alleged to have committed.

As to Plaintiff's claim of negligent hiring and retention, Count Two, the amended complaint fails to allege facts from which it can be inferred that the University had actual or constructive notice of Mr. Brownlee's dangerousness and hired or retained him in disregard of such notice. Consequently, all of Plaintiff's tort claims against the State entities fail as a matter of law.

Plaintiff's claims, all Counts, also continue to be deficient as to Defendants Carter and Dixon because the amended complaint alleges no facts from which it can be inferred that they acted outside the scope of their employment or with malice or gross negligence. They, therefore, are entitled to statutory immunity under the Maryland Tort Claims Act.

Plaintiff's breach of contract claim, Count Five,[1] continues to be deficient because, despite the addition of an allegation regarding the existence of a written contract, the claim appears to rest on oral assurances not included in any writing, and it appears that it is still time-barred.

Plaintiff has added a new claim, Count Six, asserted under Title IX of the Education Amendments of 1972. As to Defendants Carter and Dixon, that claim fails because Title IX liability attaches only to fund recipients, not to the individual employees of fund recipients. As to the University, USM, and the State, the Title IX claim fails because the factual allegations do not demonstrate the type of intentional discrimination that Title IX claims are designed to address.

Finally, Plaintiff's new Count Seven fails because Maryland does not recognize *respondeat superior* as a separate basis for liability, and such concept does not apply to State entities in any event. For all of these reasons, the Court should dismiss all claims against the University Defendants.

## FACTUAL ALLEGATIONS

Plaintiff began attending the University as a freshman in the Fall of 2018, after being recruited to become a member of the University's basketball program. Amended Complaint ¶¶ 9-10, 20. Plaintiff's initial complaint and amended complaint assert that, starting in his freshman year at the University (2018-2019), Plaintiff was a victim of a

---

[1] There is no Count Four in the amended complaint. Count Four of the initial complaint was a claim for negligent infliction of emotional distress. Plaintiff deleted that count from the amended complaint and did not substitute a new Count Four.

"catfishing" scheme[2] that induced him to send sexually explicit images of himself to an unknown recipient whom he believed was a potential romantic partner. Compl. ¶¶ 15-17; Am. Compl. ¶¶ 12-14. The initial complaint and amended complaint allege that once the images had been transmitted, the recipient began blackmailing Plaintiff and threatening to release the images if he did not send more "increasingly depraved" material. Compl. ¶¶ 18-19; Am. Compl. ¶¶ 15-16. Both complaints further allege that Defendant Lucian Brownlee, who then was a fellow student and teammate, told Plaintiff that he too had exchanged sexual content and communicated with the blackmailer. Compl. ¶ 22; Am. Compl. ¶ 21. Both complaints further allege that the blackmailer ordered Plaintiff to engage in sexual encounters with Mr. Brownlee and that Plaintiff initially resisted those demands. Compl. ¶ 24; Am. Compl. ¶ 23.

The initial complaint alleged that, at some point, Mr. Brownlee began working with the basketball team's coaching staff as a Director of Player Development. Compl. ¶ 22. The amended complaint clarifies that Mr. Brownlee began in that position in the fall of 2019. Am. Compl. ¶ 24. The complaints allege that, in November 2019, "[i]n the face of the threat of exposure and loss of his position in the basketball program and its financial support," and with Mr. Brownlee's "insistence and urging," Plaintiff finally "acquiesced" to the blackmailer's demands and sent a video of Plaintiff and Brownlee engaging in oral

---

[2] Catfishing refers to a situation "where an individual creates a false online identity, often with deceptive or malicious romantic goals." https://www.merriam-webster.com/dictionary/catfish.

sex to the blackmailer.[3]  Compl. ¶ 26;  Am. Compl. ¶¶ 26-30.  Both complaints allege, "upon information and belief," that Mr. Brownlee was the blackmailer.  Compl. ¶ 29; Am. Compl. ¶ 15.

The initial complaint and amended complaint allege that the blackmailer drove Plaintiff to the "brink of suicidal ideations," and that, in an attempt to extricate himself from further blackmail, but unable to bring himself to divulge the blackmail, Plaintiff sought to transfer to a different school, telling his family that there was "unchecked use of illegal drugs" by members of the basketball team while they travelled for away games. Compl. ¶ 35; Am. Compl. ¶ 40.

Both complaints allege that in June 2020, after the conclusion of the spring 2020 semester, Plaintiff and his father met with defendant Juan Dixon, who then was coach of the basketball team, to discuss Plaintiff's allegation about drug use on the basketball team and his desire to transfer to a different school, but Plaintiff did not inform his father or Coach Dixon about his blackmailer at that time.  Compl. ¶ 35; Am. Compl. ¶ 41.  Both complaints allege that Coach Dixon expressed that drug use by players was inevitable and that he was helpless to "address the drug issue in any meaningful way."  Compl. ¶ 35; Am. Compl. ¶ 41.  The complaints allege that Plaintiff agreed to exit the transfer portal[4] and

---

[3] The amended complaint stretches the allegation that Brownlee insisted and urged Plaintiff's acquiescence into four paragraphs that emphasize that Brownlee was a member of the coaching staff at the time and thereby abused his position of power, and that he failed to report the incident.  Am. Compl. ¶¶ 27-30.

[4] Defendants believe that Plaintiff is referring to the National Collegiate Athletic Association ("NCAA") transfer portal.

resume his status with the University's basketball team. Compl. ¶ 35; Am. Compl. ¶ 41. The complaints further alleged that Coach Dixon assured Plaintiff that the financial assistance that had previously been provided to him would continue if he returned to the basketball team the following semester. Compl. ¶ 35; Am. Compl. ¶ 41.

The complaints allege that, after the disruption caused by the COVID-19 pandemic, Plaintiff returned to campus in the fall of 2020. Compl. ¶¶ 36-37; Am. Compl. ¶¶ 42-43. By this time, Mr. Brownlee had left the University and was no longer the Director of Player Development for the basketball team.[5] The complaints further allege that Defendant Brownlee and/or his co-conspirators then publicly released the sexual videos of plaintiff and Mr. Brownlee to members of the team, staff, and the public. Compl. ¶¶ 36-37; Am. Compl. ¶ 43.

---

[5] *See* Men's Basketball Coaching Staff rosters for 2020-21, 2021-22, and 2022-23, available at https://coppinstatesports.com/sports/mens-basketball/coaches (last visited on February 14, 2023). The University Defendants request that the Court take judicial notice of this fact under Maryland Rule 5-201(d). It is appropriate for a court to take judicial notice "of matters of common knowledge or [those] capable of certain verification." *Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 413–14 (2014) (quotations and citations omitted). Maryland Rule 5-201(b) defines this as facts that are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." When requested by a party and the information is supplied, Rule 5-201(d) makes it mandatory for the court to take judicial notice. Md. Rule 5-201(d) ("A court shall take judicial notice if requested by a party and supplied with the necessary information."). The fact sought to be judicially noticed here is a public record of the University, readily available and ascertainable in the University's public files and searchable on its website. Furthermore, Defendants included this fact in their initial motion to dismiss and Plaintiff did not dispute it and has not alleged otherwise. Accordingly, the Court should take judicial notice of this fact.

Both complaints allege that Coach Dixon personally met with Plaintiff the day following the release of the sex videos. Am. Compl. ¶ 44. Whereas the initial complaint had alleged that, during this meeting, Coach Dixon noted that Mr. Brownlee had a "troubled background" and was "emotionally imbalanced," Compl. ¶ 38-39, the amended complaint now alleges that Coach Dixon stated that he was aware that Mr. Brownlee "was a sexual predator, was aware that Brownlee had attempted to blackmail other students in the basketball program, and that Brownlee was emotionally imbalanced or otherwise ill," Am. Compl. ¶ 44. Critically, the amended complaint does not indicate when Coach Dixon allegedly became aware of these things.

The amended complaint also alleges, for the first time, that Coach Dixon and defendant Derek Carter "were also made aware, including but not limited to, during the 2019-2020 school year, that other students on the basketball program had been the victim of blackmail and attempted sexual assault and/or harassment." Am. Compl. ¶ 45. The amended complaint does not indicate the source of Coach Dixon's or Mr. Carter's alleged knowledge, or the details of their alleged knowledge of such blackmail and sexual assault or harassment attempts, but it alleges that they "failed to properly report [the] same or take any action to advise or warn the student-athletes or student-body of this peril." Am. Compl. ¶ 45. Both complaints allege that the University Defendants took no remedial action to address Plaintiff's victimization, Compl. ¶ 40, Am. Compl. ¶ 47, and the amended complaint further alleges they took no action to prevent the dissemination of the blackmail material, Am. Compl. ¶ 47.

7

Both complaints allege that Plaintiff subsequently requested that the University review the blackmail and harassment. Compl. ¶ 41, Am. Compl. ¶ 48. And both complaints allege that the University hired a third party to conduct an independent review, but that Plaintiff became distressed when the reviewer questioned him about his sexual activities and orientation. Compl. ¶ 42; Am. Compl. ¶ 49. The amended complaint alleges that Plaintiff's emotional distress "deprived [him] of his tuition and housing funds previously provided by the UNIVERSITY." Am. Compl. ¶ 49.

## LEGAL STANDARD

Under Maryland Rule 2-322(b), a complaint should be dismissed if a defendant is entitled to governmental immunity or if the complaint fails to state a claim upon which relief may be granted. A defendant moving under this rule "is asserting that, even if the allegations of the complaint are true, the plaintiff is not entitled to relief as a matter of law." *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 322 (1996) (citing *Hrehorovich v. Harbor Hosp. Ctr.*, 93 Md. App. 772, 784 (1992)). In ruling on such a motion, the court assumes the truth of the complaint's well-pled factual allegations and any reasonable inferences that can be drawn therefrom. *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 95 (2014) (citing *Bobo v. State*, 346 Md. 706, 708 (1997)). However, "'the facts comprising the cause of action must be pleaded with sufficient specificity'" or the complaint will be dismissed. *Adamson v. Correctional Med. Svcs., Inc.*, 359 Md. 238, 246 (2000) (quoting *Bobo*, 346 Md. at 708-09). "Bald assertions and conclusory statements by the pleader will not suffice." *Id.* If a complaint contains allegations that are "doubtful and ambiguous, it will

be construed most strongly against the pleader in determining sufficiency." *Bobo*, 346 Md. at 709.

## ARGUMENT

I. **THE UNIVERSITY, USM, AND THE STATE OF MARYLAND ARE IMMUNE FROM SUIT FOR COUNTS ONE AND THREE.**

Coppin State University is a constituent institution of the University System of Maryland, Md. Ann. Code, Educ. § 12-101(b)(6)(vi) (LexisNexis 2018), which is an "instrumentality of the State," and "an independent unit of State government." Educ. § 12-102(a); *see also Stern v. Bd. of Regents, Univ. Sys. of Maryland*, 380 Md. 691, 702 (2004) (holding that the "Board [of Regents of the University System of Maryland] is considered to be an arm of the State Government for the purposes of asserting the defense of sovereign immunity").

Absent legislation consenting to suit, the doctrine of sovereign immunity precludes an action in tort or contract against the State. *Dept. of Natural Resources v. Welsh*, 308 Md. 54, 58-9 (1986). Although immunity may be waived "either directly or by necessary implication," *Katz v. Washington Suburban Sanitary Commission*, 284 Md. 503, 507-508 (1979), "dilution of the doctrine should not be accomplished by 'judicial fiat.'" *ARA Health Servs., Inc. v. Dep't of Pub. Safety & Corr. Servs.*, 344 Md. 85, 92 (1996) (citation omitted).

The State of Maryland has waived its sovereign immunity from actions in tort brought in courts of the State through the Maryland Tort Claims Act ("MTCA"). *See* Md. Code Ann., State Gov't § 12-104 (LexisNexis 2021). But the State has not waived its sovereign immunity for gross negligence or malicious conduct. *See* State Gov't §12-104(b)

(providing that "[i]mmunity is not waived under this section as described under § 5-522(a) of the Courts and Judicial Proceedings Article"), and Cts. & Jud. Proc. § 5-522(a)(4)(ii) (providing that the State has not waived immunity under State Gov't § 12-104 for "any tortious act or omission of State personnel that . . . [i]s made with malice or gross negligence"); *see also Barbre*, 402 Md. at 173 (observing that the MTCA acts as a waiver of the State's sovereign immunity for "tortious acts or omissions committed within the scope of the public duties of 'state personnel,' and committed without malice or gross negligence").

In Count One, Plaintiff asserts a claim for gross negligence against the University Defendants. That is not a claim for which the State has waived immunity. Consequently, as to the University, USM, and the State, those Counts are barred by sovereign immunity and subject to dismissal.

In Count Three, Plaintiff asserts a claim against the University Defendants for intentional infliction of emotional distress. Setting aside whether the factual allegations support Plaintiff's characterization, he asserts that the University Defendants engaged in intentional and/or reckless conduct of an extreme and outrageous nature that proximately caused his emotional injuries. Such conduct, if proven, would fall outside the MTCA's waiver of sovereign immunity. *See Barbre*, 402 Md. at 187 (observing that gross negligence is "akin to reckless conduct"). Consequently, Count Three is subject to dismissal as to the University, USM, and the State.

## II.   DEREK CARTER AND JUAN DIXON ARE IMMUNE FROM SUIT FOR ALL STATE LAW CLAIMS.

The State of Maryland has waived its sovereign immunity from actions in tort brought in courts of the State through the MTCA. *See* State Gov't § 12-104. In exchange for this waiver, however, the MTCA protects "State personnel" by conferring upon them immunity from suit in courts of the State and from liability for tortious acts or omissions made within the scope of their public duties and without malice or gross negligence. State Gov't § 12-105; Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (LexisNexis Supp. 2019). Thus, if State personnel "perform a negligent act, for which the State has waived immunity, then 'State personnel' are immune from suit." *Conaway v. State*, 108 Md. App. 475, 496 (1996). In other words, State personnel are immune from suit or liability as to any claim of negligence or other non-malicious tortious conduct arising out of the performance of their duties for the State. As the Athletic Director and Men's Basketball Coach at Coppin State University at all relevant times, respectively, Mr. Carter and Coach Dixon are "State personnel" entitled to such immunity. State Gov't § 12-105; Am. Compl. ¶ 43.

In his initial complaint, Plaintiff asserted claims against Mr. Carter and Coach Dixon for negligence, negligent hiring and retention, negligent infliction of emotional distress, and breach of contract, the very type of non-malicious conduct for which Mr. Carter and Coach Dixon retain their immunity as State personnel. *See Conaway*, 108 Md. App. at 496. Based on statutory immunity, this Court dismissed the claims against them. To the extent that the amended complaint reasserts such claims, those claims should be dismissed based on the same analysis.

11

Furthermore, Plaintiff's transparent attempts to recast his claims as ones for gross negligence (Count One) and intentional infliction of emotional distress (Count Three) are not sufficient to defeat Mr. Carter's and Coach Dixon's statutory immunity because the amended complaint is devoid of any *factual* allegations, as opposed to conclusory labels, suggesting that either acted outside the scope of their employment or with gross negligence or malice.

The only allegation that specifically references Mr. Carter alleges that he was "made aware, including but not limited to, during the 2019-2020 school year, that other students on the basketball program had been the victim of blackmail and attempted sexual assault and/or harassment and failed to properly report same or take any action to advise or warn the student-athletes or student-body of this peril." Am. Compl. ¶ 45. Even if true, this allegation does not demonstrate that Mr. Carter acted outside the scope of his employment or with malice or gross negligence. It is insufficient to defeat his statutory immunity.

With respect to Coach Dixon, the amended complaint makes the same allegation, Am. Compl. ¶ 45, which is deficient for the same reasons. Although the amended complaint includes two additional allegations relating to Coach Dixon, those allegations are insufficient as well. First, the amended complaint alleges that, in June 2020, Plaintiff and his father met with Coach Dixon to complain about drug use among the basketball team members and that Coach Dixon indicated drug use was inevitable and that he was helpless to address the issue in any meaningful way. Am. Compl. ¶ 41. As a preliminary matter, the amended complaint does not link player drug use to the alleged blackmail that is the genesis of Plaintiff's claims. Moreover, even if true, this allegation does not

12

demonstrate that Coach Dixon acted outside the scope of his employment or with malice or gross negligence.

Second, the amended complaint alleges that, in a conversation with Plaintiff following the publication of the sex videos in the fall of 2020, Coach Dixon stated that "he was aware that Brownlee was a sexual predator, was aware that Brownlee had attempted to blackmail other students in the basketball program, and that Brownlee was emotionally imbalanced." Am. Compl. ¶ 44. Critically, the amended complaint does not allege *when* Coach Dixon allegedly became aware of Brownlee's conduct.[6] It alleges no facts from which it can be inferred that Coach Dixon possessed such knowledge prior to Brownlee's hiring, while Brownlee was on the coaching staff, or at any other time when Coach Dixon may have been in a position to do anything about the conduct. Moreover, even if true, this allegation does not demonstrate that Coach Dixon acted outside the scope of his employment or with malice or gross negligence.

To pursue a claim of gross negligence, a plaintiff must allege facts that demonstrate that the defendant committed "'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another.'" *Barbre v. Pope*, 402 Md. 157, 187 (2007) (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985)). "'[A] wrongdoer is guilty of gross negligence . . . only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights

---

[6] Coach Dixon assumes the truth of this and all allegations for the purpose of this motion only. He strenuously denies this allegation and notes that it is incredible and not made in good faith.

13

did not exist.'" *Id.* The facts must support a finding that the defendant "'strayed so grossly from the ordinary standard of care as to support a finding of utter indifference to the rights of others.'" *Bailey v. City of Annapolis*, 252 Md. App. 83, 103 (2021) (quoting *Torbit v. Baltimore City Police Dep't*, 231 Md. App. 573, 589 (2017)). In other words, the type of conduct necessary to support a gross negligence claim is qualitatively different than that required to support a simple negligence claim. *See Bailey*, 252 Md. App. at 106-07 (observing that evidence of ordinary negligence is insufficient to create a jury issue as to gross negligence) (discussing *Stracke v. Estate of Butler*, 465 Md. 407, 421-27 (2019)).

The amended complaint is completely devoid of allegations that would support a finding of gross negligence or malicious against either Mr. Carter or Coach Dixon. Therefore, their statutory immunity remains intact.

## III. COUNT TWO SHOULD BE DISMISSED BECAUSE THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT HIRING AND RETENTION.

Plaintiff's negligent hiring and retention claim, asserted in Count Two of the amended complaint, remains deficient because he has not alleged facts from which it could be inferred that the University hired or retained Mr. Brownlee with actual or constructive notice of his alleged dangerousness.

A negligent hiring and retention claim requires a plaintiff to plead: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Asphalt & Concrete Servs., Inc.*

*v. Perry*, 221 Md. App. 235, 256 (2015), *aff'd*, 447 Md. 31 (2016).  In order for this claim to be "legally cognizable," it must have been "foreseeable that the negligent act would cause the specific injury complained of in the case." *Perry v. Asphalt & Concrete Servs., Inc.*, 447 Md. 31, 54–55 (2016).  This claim turns on "whether the employer knew or should have known that the individual was potentially dangerous." *Evans v. Morsell*, 284 Md. 160, 165–66 (1978).

According to the amended complaint, Mr. Brownlee was a student through the spring semester of 2019, and was a member of the coaching staff for just one year – the 2019-2020 school year.  Critical to Plaintiff's claim are factual allegations demonstrating that the University placed or retained Mr. Brownlee on the coaching staff while in possession of actual or constructive knowledge of his potential dangerousness.  The amended complaint alleges only that, following the disclosure of the sex videos in the fall of 2020 and after Mr. Brownlee's departure from the basketball program, Coach Dixon told plaintiff that he was aware that Mr. Brownlee "was a sexual predator, was aware that Brownlee had attempted to blackmail other students in the basketball program, and that Brownlee was emotionally imbalanced or otherwise ill." Am. Compl. ¶ 44.  Critically, the amended complaint does not indicate *when* Coach Dixon allegedly became aware of these things.  Since the amended complaint does not allege facts from which it could be inferred that Coach Dixon's awareness of Mr. Brownlee's alleged dangerousness pre-dated his departure from the coaching staff, this claim fails as a matter of law.

**IV.  COUNT THREE SHOULD BE DISMISSED AS TO THE UNIVERSITY DEFENDANTS FOR THE ADDITIONAL REASON THAT IT FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THEM.**

In his initial complaint, Plaintiff alleged intentional infliction of emotional distress against Defendant Brownlee only. He now asserts the claim against the University Defendants as well. For the reasons explained above, the claim is barred by the State's sovereign immunity and the individuals' statutory immunity. Even if not barred, however, the claim fails because the amended complaint has not alleged conduct that would support a claim of intentional infliction of emotional distress ("IIED").

To state an IIED claim, Plaintiff must allege: "(1) intentional or reckless conduct that is (2) extreme and outrageous and is (3) causally connected to the emotional distress, which is (4) severe." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 759 (D. Md. 2015) (*citing Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000)). Plaintiff has the burden of pleading facts showing "'extreme and outrageous' conduct by the defendant[s], and conduct will be found to rise to that level only if it 'go[es] beyond all possible bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1481 (4th Cir. 1996) (*quoting Harris v. Jones*, 281 Md. 560, 567 (1977)).

Sexual assault, blackmail, harassment, and coercion of sex acts certainly could fall within the category of outrageous conduct that could support an IIED claim, but those allegations pertain to Mr. Brownlee only, and the State has not waived immunity for such

16

conduct. *See* Argument Section I, above. As to Mr. Carter and Coach Dixon, the factual allegations fall woefully short of the type of conduct necessary to support an IIED claim.

In an effort to include Mr. Carter's and Coach Dixon's conduct as a basis for his IIED claim, Plaintiff, for the first time, has added the following preposterous and conclusory allegation: "DEREK CARTER and JUAN DIXON purposefully covered up BROWNLEE's past instances of predatory behavior, past instances of blackmail to other students on the basketball team, and purposefully retaliated against IBN WILLIAMS for reporting the blackmail." Am. Compl. ¶ 79. But the factual allegations do not support the conclusion that Mr. Carter and Coach Dixon engaged in a cover up or that they retaliated against Plaintiff. As to an alleged cover up, the amended complaint alleges only that Mr. Carter and Coach Dixon were "made aware, including but not limited to, during the 2019-2020 school year, that other students on the basketball program had been the victim of blackmail and attempted sexual assault and/or harassment and failed to properly report same or take any action to advise or warn the student-athletes or student-body of this peril." Am. Compl. ¶ 45. That bare allegation does not support the conclusion of a cover-up. As to the retaliation, the amended complaint alleges no specific *facts* from which it could be inferred that there was a link between the alleged withdrawal of University funds and any report of blackmail by Plaintiff.

In any event, the conclusory allegations of a cover up and retaliation do not provide a basis for finding outrageous conduct that would support an IIED claim.

## V.   COUNT FIVE SHOULD BE DISMISSED BECAUSE THE UNIVERSITY DEFENDANTS ARE IMMUNE FROM THE BREACH OF CONTRACT CLAIM.

The State of Maryland has enacted only a limited waiver of sovereign immunity for contract claims against State entities which requires that certain preconditions be met. If a claim is not "based on a written contract that an official or employee executed for the State," and the claimant does not meet a one-year filing deadline, then the State retains its immunity. State Gov't. §§ 12-201(a), 12-202. Plaintiff's breach of contract claim fails to meet both preconditions.

### A.   The Amended Complaint Does Not Identify Terms of a Written Contract that Has Been Breached.

Although Plaintiff has amended his complaint to now assert that, on behalf of the University, Mr. Carter signed a written contract promising Plaintiff four years of financial assistance for tuition and housing, Am. Compl. ¶¶ 82-83, the amended complaint does not attach or incorporate the contract or identify the express written terms that were breached. That omission is critical, because Plaintiff has alleged facts suggesting that he likely voided any contract by entering the NCAA transfer portal. Am. Compl. ¶ 41; *see* http://fs.ncaa.org/Docs/eligibility_center/Student_Resources/Notification_of_Transfer.pdf.[7] He further alleges that, when Coach Dixon promised Plaintiff and his father that if he exited the transfer portal and "agreed to resume his status as a member of the team," the financial assistance and other benefits the University previously provided would continue.

---

[7] A copy of the NCAA guidance, which is publicly available, is attached hereto. It indicates that, following notification that a player has entered the NCAA transfer portal, the player's original school is not obligated to take the player back as a student-athlete.

Am. Compl. ¶ 41. That allegation suggests that Plaintiff's contract claim is not based on a written contract at all but upon verbal assurances by Coach Dixon. Indeed, Plaintiff's initial breach of contract claim made it clear that he was basing his claim on the "assurances provided by Defendant Dixon in June of 2020." *Compare* Compl. ¶ 71 *with* Am. Compl. ¶ 86.

A breach of contract claim is "based on" a contract "where that contract contains the terms whose breach is alleged." *Dep't of Pub. Safety & Corr. Servs. v. ARA Health Servs., Inc.*, 107 Md. App. 445, 409 (1995), *aff'd*, 344 Md. 85 (1996). The explicit "waiver language of [State Gov't] § 12–201(a) requires a written contract signed by a person expressly authorized to execute the contract for the University System." *Stern v. Bd. of Regents, Univ. Sys. of Maryland*, 380 Md. 691, 722 (2004). "A written contract is defined as one 'whose terms have been reduced to writing.'" *Id.* at 721 (citation omitted). Because this condition is unambiguously stated in the statute, there is "little, if any, room for a court to find a common law exception to SG § 12–201 on the basis of theories of quasi-contract or implied contract." *Baltimore City Bd. of Sch. Comm'rs v. Koba Inst., Inc.*, 194 Md. App. 400, 413 (2010), disapproved on other grounds by *Monarch Acad. Baltimore Campus, Inc. v. Baltimore City Bd. of Sch. Commissioners*, 457 Md. 1 (2017).

Consistent with this understanding of the statute, courts have held that student tuition bills, although written, did not constitute "a signed written contract sufficient to satisfy the requirements of § 12–201(a)." *Stern*, 380 Md. at 723. In fact, even written policies and procedures from the University System of Maryland and its member institutions have been deemed insufficient to create a written contract under the statute.

*Student "A" v. Hogan*, 513 F. Supp. 3d 638, 644 (D. Md. 2021) (citing *Doe v. Bd. of Trustees of St. Mary's Coll. of Maryland*, No. CV CBD-19-1760, 2019 WL 6215543, at *1 (D. Md. Nov. 20, 2019), and *Keerikkattil v. Hrabowski*, No. CIV.A. WMN-13-2016, 2013 WL 5368744, at *8 (D. Md. Sept. 23, 2013)).  Consequently, Plaintiff's allegation that the withholding of financial assistance and benefits violated "an implied covenant of good faith and fair dealing" is wholly insufficient to void the University Defendants' sovereign immunity as to the breach of contract claim. State Gov't. § 12-201(a); *see also Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012) (holding that a breach of contract suit "'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'") (citation omitted)).  Count Five, therefore, must be dismissed.

**B.      Plaintiff's Breach of Contract Claim is Barred as Untimely.**

Any contract claim against the State is barred if a claimant fails to file suit within one year after the later of: "(1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim." State Gov't. § 12-202.  This one-year filing deadline "is not a mere statute of limitations but sets forth a condition to the action itself." *State v. Sharafeldin*, 382 Md. 129, 148 (2004).  "At the end of the one-year period, '[t]he waiver of the State's immunity vanishes' and any action is barred." *Daughton v. Maryland Auto. Ins. Fund*, 198 Md. App. 524, 538 (2011) (quoting *Sharafeldin*, 382 Md. at 148-49).

The amended complaint alleges, for the first time, that Plaintiff's breach of contract claim is based on a written contract covering a four-year term from the date of its signing in April 2018. Am. Compl. ¶ 82.  Presumably, Plaintiff will argue that he filed this lawsuit

within one year of April 2022, the end of the contract term.  The problem with that argument is that Plaintiff also alleges that he entered the NCAA transfer portal in June 2020, Am. Compl. ¶ 41, an action that voids any obligation to maintain the student-athlete through the term of the contract, *see* fn. 10 above.  In view of that allegation, the amended complaint fails to establish that the contract term extended until April 2022.

Plaintiff's purported breach of contract claim arose when the "promised" financial assistance was allegedly withheld "upon his return to Coppin State University for the 2020 fall semester."  Am. Compl. ¶ 85.  Although the complaint fails to state a specific date for plaintiff's return to campus, the fall 2020 semester began on August 31, 2020.[8]  Thus, to be timely, Plaintiff must have filed the instant lawsuit by August 31, 2021.  State Gov't. § 12-202(1).  However, Plaintiff did not initiate this lawsuit until November 2, 2022, over one year late.

Even if the oral "promises" of financial assistance were deemed breached at the end of Plaintiff's 2020-2021 academic year, Plaintiff's claim would still be barred as untimely.  The 2020-2021 academic year concluded on May 6, 2021,[9] and thus even under this theory,

---

[8] *See* Coppin State University Fall 2020 Academic Calendar, publicly available at https://www.coppin.edu/sites/default/files/pdf-library/2021-05/fall_2020_academic_calendar_0.pdf (last visited February 14, 2023).  The University Defendants request that the Court take judicial notice of this fact under Maryland Rule 5-201(d).  *See* footnote (4) above.

[9] *See* Coppin State University Fall 2020 Academic Calendar, publicly available at https://www.coppin.edu/sites/default/files/pdf-library/2021-07/Spring_2021_Academic_Calendar.pdf (last visited February 14, 2023).  The University Defendants request that the Court take judicial notice of this fact under Maryland Rule 5-201(d).  *See* footnote (4) above.

plaintiff's suit was required to be filed by May 6, 2022 to be timely. State Gov't. § 12-202(2). Yet Plaintiff filed suit nearly six months after this date. Therefore, under any interpretation, the University Defendants retain their statutory immunity against Plaintiff's untimely breach of contract claim.

## VI.   COUNT SIX SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE A VIABLE CLAIM ARISING UNDER TITLE IX.

### A.   There is No Individual Liability for Purported Violations of Title IX, So Count Six Should Be Dismissed as to Defendants Carter and Dixon.

In Count Six, the amended complaint asserts, for the first time, a claim against the University Defendants arising under Title IX of the Education Amendments of 1972. Although the claim is not viable against any of the defendants, it particularly fails against Defendants Carter and Dixon because Title IX provides no basis for liability against individual employees of a recipient of Title IX funds. Because Title IX applies to institutions and programs that receive federal funds, "it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (citation omitted); *Klug v. Marshall Univ. Joan C. Edwards Sch. of Med.*, CV 3:18-0711, 2019 WL 1386403, at *5 (S.D.W. Va. Mar. 27, 2019) (dismissing school official from Title IX claims in both individual and official capacities); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 986 (S.D. Tex. 2014) (dismissing individual defendants in official and individual capacities), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015). The institution,

not the individual employees, receives federal funds and therefore is subject to Title IX liability. Consequently, as to Mr. Carter and Coach Dixon, Count Six should be dismissed.

**B.      Count Six Fails to Allege Facts Supporting a Title IX Claim for Damages Against the University.**

Title IX of the Education Amendments of 1972 provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. The Supreme Court has recognized a private right of action against fund recipients for Title IX violations *committed by the fund recipients*, not third parties. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641-42 (1999). The rationale for limiting Title IX claims to the misconduct of the fund recipients is that Title IX was enacted by Congress pursuant to its authority under the Spending Clause. *Id.* at 639-40. In return for federal funds, the states and other educational institutions agree to comply with federally imposed conditions which must be stated "with a clear voice." *Id.*

Since the private right of action under Title IX is judicially implied, the United States Supreme Court has been careful to delimit the right so that it comports with the goals of the Title IX statute. *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 284 (1998). Title IX conditions the receipt of federal funds on a promise not to discriminate and authorizes the suspension or termination of such funding if the funding recipient has violated the nondiscrimination requirements of the law. *Id.* at 288. Critical to Title IX enforcement, however, is actual notice of the violation and an opportunity to correct the violation through voluntary means. *Id.* Given this clear statutory structure, the Supreme

Court has held that a Title IX plaintiff may not recover damages on a theory of vicarious liability or constructive notice. *Id.* at 289-90.

Applying these principles, the Supreme Court held that a school district could not be held liable for Title IX damages for a teacher's sexual harassment unless it had actual knowledge of the harassment and an opportunity to take remedial action. *Id.* Under Title IX, the funding recipient is only liable for "an official decision" "not to remedy the violation," not for "its employees' independent actions." *Id.* at 290-91. Consequently, under Title IX, the University cannot be liable for Mr. Brownlee's wrongdoing or his failure to report his own wrongdoing. *Id.* at 291 ("Where a school district's liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis.")

The only other individual actors mentioned in Count Six are Mr. Carter and Coach Dixon. But the factual allegations regarding their conduct do not demonstrate they had actual notice of Mr. Brownlee's alleged misconduct and failed to address it. Nowhere in the amended complaint does Plaintiff allege that he made a report of sexual harassment or sexual assault which the University failed to investigate. Moreover, the amended complaint alleges that when the sex videos did surface, the University began an inquiry the very next day. Am. Compl. ¶¶ 43-44. Although the amended complaint alleges that Mr. Carter and Coach Dixon were "made aware, including but not limited to, during the 2019-2020 school year, that other students on the basketball program had been the victim of blackmail and attempted sexual assault and/or harassment and failed to properly report same or take any action to advise or warn the student-athletes or student-body of this peril,"

Am. Compl. ¶ 45, this vague allegation provides no details of the contours of their awareness, *e.g.*, what was reported and by whom? It lacks sufficient specificity to establish they had actual knowledge of discrimination that was within the University's power to address.

Similarly, Count Six fails to allege facts demonstrating that the University engaged in Title IX retaliation. "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Critical to such a claim, however, are facts demonstrating a causal link between the plaintiff's complaint and the alleged retaliatory conduct. *Id.* at 174. ("when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX") (emphasis in original). In this regard, the amended complaint falls short.

The amended complaint alleges that, upon Plaintiff's return to campus for the 2020 fall semester, the sex videos were published to the basketball team, staff, and the public. Am. Compl. ¶ 43. It further alleges that, the very next day, Coach Dixon met personally with Plaintiff to discuss the situation, Am. Compl. ¶ 44, and that, when Plaintiff requested a review, the University retained an outside attorney to conduct such review, Am. Compl. ¶¶ 48-49. Finally, the amended complaint alleges that when he was interviewed by the outside reviewer, Plaintiff "was questioned regarding his past sexual experiences, and inquiry was made into his sexual orientation causing further emotional distress and Plaintiff was deprived of his tuition and housing funds previously provided by the UNIVERSITY."

Am. Compl. ¶ 49. Later, the amended complaint alleges that the University withheld financial assistance from Plaintiff "upon his return to [the University] for the 2020 fall semester." Am. Compl. ¶ 85. Nowhere in the amended complaint does Plaintiff allege facts from which it can be inferred that his financial assistance was withheld *because* he complained about sexual harassment.

### C.   COUNT SEVEN SHOULD BE DISMISSED BECAUSE THERE IS NO SEPARATE CLAIM FOR *RESPONDEAT SUPERIOR*, AND THE PRINCIPLE DOES NOT APPLY TO THE STATE.

The doctrine of *respondeat superior* is a common law principle that allows an employer to be held vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship. *Oaks v. Connors*, 339 Md. 24, 30 (1995). Although it is a doctrine that "may, in certain contexts, be raised to impute liability on a principal or employer for the act of an agent or employee . . . the doctrine may not be asserted as a separate cause of action." *McDaniel v. State of Maryland*, 2010 WL 3260007, at *12 (D. Md. 2010) (internal citation omitted); *see also Farmer v. Kent*, No. CV TDC-20-1806, 2021 WL 690025, at *7 (D. Md. Feb. 23, 2021) ("[v]icarious liability is 'not an independent cause of action, but rather a theory of assigning liability'") (*quoting McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011)).

More importantly, the doctrine has no application against the State because, at common law, the State was a sovereign not subject to suit. Instead of common law principles such as *respondeat superior*, the State's liability for the actions or omissions of its employees is governed by the statutory waiver of immunity provided in the MTCA. By

26

enacting the MTCA, the Legislature created a comprehensive statutory scheme, where the waiver of the State's sovereign immunity for tort actions corresponds precisely with immunity from suit and liability for State personnel. *Williams v. Morgan State Univ.*, ___ Md. _____, 2023 WL 5198267, at *3 (No. 9, Sept. Term, 2022) (Aug. 14, 2023). In lieu of recovery from the negligent State personnel, the party may obtain compensation for that injury from the State. *Id.*

For these reasons, Count Seven fails and should be dismissed.

## CONCLUSION

Based upon the foregoing, Defendants Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon, respectfully request that the Court grant their motion and dismiss all claims asserted against them in the complaint in their entirety with prejudice.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

ANN M. SHERIDAN
Attorney No. 9112190160
ARIEL LICHTERMAN
Attorney No. 1801110004
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Floor
Baltimore, Maryland 21202
alichterman@oag.state.md.us
(410) 576-6459
(410) 576-6437 (facsimile)

September 18, 2023

*Attorneys for Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon*

28

# DIVISION I: NOTIFICATION OF TRANSFER

## WHAT DIVISION I UNDERGRADUATE STUDENT-ATHLETES SHOULD KNOW

The decision to transfer to another school is an important and often difficult one in your college career. Before you act, do your homework. Helpful resources, including the Division I Transfer Module, are available here.



When you are ready to move forward with submitting your notification of transfer, talk to your administrator (and others you feel should know at this time) about your intention to transfer.

Once you have completed the Transfer Module and communicated notification of transfer within your sport's transfer window, compliance will place your name in the NCAA Transfer Portal within the time requirement.

After your name enters the Transfer Portal, you will receive an email, verifying a coach's ability to contact you.

## IMPLICATIONS OF NOTIFICATION OF TRANSFER

» After notifying your current school of your intent to transfer, a Division I school can cancel or reduce your athletically related financial aid for the next academic term and subsequent terms.

» After notification, your original school is NOT obligated to take you back as a student-athlete.

» Consider the academic implications of transferring to a new school. How many of your credits will transfer? Do they offer your major?

» Some student-athletes who transfer are NOT able to compete immediately due to NCAA and conference rules. Discuss with your compliance officer what this means for you.

» **43%** of student-athletes who were entered into the portal in 2022 are currently active (still exploring options, transferred to a non-NCAA school or left their sport).

» Of those Division I student-athletes who did transfer, **22% did not receive athletics aid** at their new school.

» **15%** of the 9,294 student-athletes who left with athletics aid transferred to a new school without athletics aid.

» More recent Division I transfer trends that may help you make a decision, including sport-specific patterns, can be found using this tool.



**YOU** decide your future, but **CONSIDER** all options carefully before making any decisions.



ELIGIBILITY CENTER

1

# FREQUENTLY ASKED QUESTIONS

**Q: WHO CAN ENTER MY NAME INTO THE PORTAL?**

**A:** Your school's compliance officer or other authorized athletics administrators.

**Q: WHEN CAN I START TALKING WITH COACHES AT OTHER SCHOOLS?**

**A:** Communication with coaches at other schools can begin after you notify your current school of the intent to transfer (within your sport-specific transfer window), complete the transfer educational model, and your name is placed into the Transfer Portal.

**Q: WHAT ACTIONS CAN I TAKE BEFORE PROVIDING MY NOTIFICATION OF TRANSFER?**

**A:** Communication with another school's office of admissions is permissible. You can also contact other student-athletes at the school you are looking to transfer to, provided communication is not at the direction of the coach from that school.

**Q: WHEN I NOTIFY MY CURRENT SCHOOL THAT I WANT TO TRANSFER, WHAT CAN HAPPEN TO MY FINANCIAL AID?**

**A:** After notifying your current school of your intent to transfer, a Division I school can cancel or reduce your athletically related financial aid for the next academic term and subsequent terms.

**Q: AM I ABLE TO RECEIVE FINANCIAL AID AT MY NEXT SCHOOL IMMEDIATELY?**

**A:** Yes! With the notification-of-transfer model comes the opportunity to receive financial aid immediately at your new school if offered, provided you depart your current school academically eligible.

**Q: WHAT INFORMATION WILL BE IN THE TRANSFER PORTAL?**

**A:** Your NCAA ID, school, sport, athletics aid status, undergraduate/postgraduate status and email address will initially be the only information listed in the portal. After the compliance office submits the notification of transfer, your academic and athletics history will be entered to help other schools assess your NCAA eligibility.

**Q: HOW WILL I KNOW THAT I HAVE BEEN ENTERED INTO THE TRANSFER PORTAL?**

**A:** You will receive an email notification once the compliance office has completed the entry. Be sure to save this confirmation email.

For more information on transfer rules, visit ncaa.org/transfer.

**CONTACT THE NCAA ELIGIBILITY CENTER**

U.S. and Canada (except Quebec): 317-917-6008
Monday-Friday, 9 a.m. to 5 p.m. Eastern time
ncaa.org/playcollegesports

@ncaaec   @playcollegesports   @ncaaec

ELIGIBILITY CENTER

NCAA is a trademark of the National Collegiate Athletic Association. May 2023.

IBN WILLIAMS,                          \*

       *Plaintiff,*              \*           IN THE

v.                                     \*           CIRCUIT COURT

COPPIN STATE UNIVERSITY,               \*           FOR
THE UNIVERSITY SYSTEM OF
MARYLAND,              LUCIEN          \*           BALTIMORE CITY
BROWNLEE, DEREK CARTER,
JUAN DIXON, THE STATE OF               \*           No. 24-C-22-004662
MARYLAND, JOHN DOES I-X,
AND ABC CORP. I-X,                     \*

       *Defendants.*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## ORDER

Upon consideration of the Motion to Dismiss the Amended Complaint filed by Defendants Coppin State University, the University System of Maryland, the State of Maryland, Derek Carter, and Juan Dixon, (collectively the "University Defendants"), and any responses thereto, and good cause appearing therefore, it is this _____ day of _____, 2023, ORDERED:

That the University Defendants' Motion to Dismiss is hereby GRANTED; and

All claims against the University Defendants shall be dismissed in their entirety with prejudice.

_____
Judge, Circuit Court for Baltimore City