## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

IBN WILLIAMS,

        *Plaintiff*,

    v.

COPPIN STATE UNIVERSITY, *et al.*,

        *Defendants*.

Civil No.: 1:23-cv-02590-JRR

## MEMORANDUM OPINION

Pending before the court is Defendants Coppin State University ("Coppin State"), the University System of Maryland ("USM"), the State of Maryland, Derek Carter, and Juan Dixon's (collectively, "Defendants") Motion to Dismiss the Amended Complaint. (ECF No. 16; "the Motion").[1] The court has reviewed all papers, and no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.    BACKGROUND[2]

Coppin State is a public institution of higher education located in Baltimore, Maryland. (ECF No. 14 ¶ 2.) USM is a public higher education system responsible for the operation of public universities in the State of Maryland. *Id.* ¶ 3. At all times relevant, Defendants Lucian Brownlee, Derek Carter, and Juan Dixon were employees of Coppin State and USM. *Id.* ¶¶ 4–6. Brownlee was Director of Player Development and a coach for the basketball program. *Id.* ¶ 9. Carter was Director of the Athletic Department, and Dixon was head Coach of the basketball program. *Id.* ¶¶ 68, 93. Plaintiff Ibn Williams enrolled in Coppin State after Dixon recruited him to play for the

---

[1] Defendant Lucian Brownlee filed an answer. (ECF No. 15.) The court's reference to "Defendants" with respect to the Motion refers only to movants.

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 14.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

basketball team.  *Id.* ¶¶ 1, 10.

In 2018, during his first semester, Plaintiff "was contacted on social media by a person who presented themselves as a young woman interested in developing a romantic relationship."  (ECF No. 14 ¶ 12.)  Plaintiff sent the person sexual images of himself "in the context of developing a romantic relationship."  *Id.* ¶ 13.  After sending sexual images, Plaintiff learned that the woman he believed he had been communicating with did not exist and "instead was a person pretending to be his potential paramour to blackmail him."  *Id.* ¶ 14.

The "blackmailer" advised Plaintiff "that it was now in possession" of Plaintiff's images and text messages, and that if Plaintiff failed to comply with "further demands," the blackmailer would expose the images and conversations to fellow team members and the public.  (ECF No. 14 ¶¶ 15–16.)  In 2019, during Plaintiff's freshman spring semester, the "blackmailer's harassment escalated."  *Id.* ¶ 18.  "Plaintiff continued to respond to the person messaging him," because he was afraid of "losing his place in the basketball program, his tuition[,] and room and board payments he was promised by Coppin State."  *Id.* ¶ 19.

At the end of the 2019 spring semester, Brownlee advised Plaintiff that he "also exchanged sexual content and had communicated with Plaintiff's tormentor."  (ECF No. 14 ¶ 21.)  "Plaintiff was ordered by text by his blackmailer to engage in sexual encounters with" Brownlee, which "Plaintiff resisted."  *Id.* ¶ 23.  In the fall of 2019, Brownlee became a member of Coppin State's basketball coaching staff.  *Id.* ¶ 24.  Plaintiff "again began to receive threats from the blackmailer through" social media and text messages.  *Id.* ¶ 25.  The blackmailer, "with apparent knowledge of Plaintiff's schedule and availability, demanded that Plaintiff record and send a video of Plaintiff and Brownlee engaging in oral sex."  *Id.* ¶ 26.  Subsequently, the blackmailer informed Plaintiff that Brownlee "was going to coordinate a sexual encounter with Plaintiff."  *Id.* ¶ 31.  Plaintiff

ignored the messages, "hoping his non-response would end the blackmail," but the blackmailer warned Plaintiff that if he "continued to ignore or otherwise not comply[,] the blackmailer would 'wild out.'" (ECF No. 14 ¶¶ 31–32.)   Following continued demands for sexual videos, Plaintiff sent a video of himself, which the blackmailer rejected "as unsatisfactory;" the blackmailer demanded Plaintiff "provide a video of him engaging in sex with [] Brownlee." *Id.* ¶¶ 34–39.  The blackmailer's harassment continued and in March 2020, Plaintiff "responded to a demand by communicating his hopelessness that this harassment would never end." *Id.* ¶ 38.  Plaintiff alleges that Brownlee was the "blackmailer" and that others may have been acting with him to "blackmail" and harass Plaintiff.  *Id.* ¶ 15.

"Finally, on the brink of suicidal ideations, and in an attempt to extricate himself from further blackmail, but unable to bring himself to divulge the blackmail to his family, Plaintiff truthfully informed his family of concerns regarding [his] blatant, unchecked use of illegal drugs and inappropriate behavior of members of the basketball program while traveling for away games, in hopes that it would spur a transfer from Coppin State University to a different program."  (ECF No. 14 ¶ 40.)  In June 2020, Plaintiff and his father met with Dixon to discuss "the drug issues." *Id.* ¶ 41.  Dixon "indicated that he was helpless to address the drug issue" and "was adamant that Plaintiff should stay with the [basketball] program." *Id.*  To that end, Dixon promised Plaintiff and his father that, if Plaintiff stayed, Plaintiff would continue to receive "financial assistance and other benefits that he had been provided []." *Id.*

Relying on Dixon's "assurance," Plaintiff stayed at the school and returned to the basketball program for the 2020 fall semester. *Id.* ¶¶ 42–43.  Upon Plaintiff's return, "the material used to blackmail Plaintiff was published and revealed by Brownlee (and/or his conspirators) to members of the team, staff, and the public." *Id.* ¶ 43.  Dixon directed Plaintiff to attend practice

the following day and met personally with Plaintiff.  (ECF No. 14 ¶ 44.)  During that meeting, "Dixon admitted to [] Plaintiff that he was aware that Brownlee was [] a sexual predator, was aware that Brownlee had attempted to blackmail other students in the basketball program, and that Brownlee was emotionally imbalanced or otherwise ill." *Id.*  Later that evening, in a phone call with Plaintiff's family members, Dixon reiterated his awareness that Brownlee was "'sick' and had a troubled background." *Id.* ¶ 46.

According to Plaintiff, Dixon and Carter had become "aware" during the 2019-2020 school year "that other students [in] the basketball program had been the victim of blackmail and attempted sexual assault and/or harassment and failed to properly report same or take any action to advise or warn the student-athletes or student-body of this peril." *Id.* ¶ 45.  Plaintiff alleges that, despite "full knowledge of the previously described events, [Defendants] took no remedial action prior to, during, or after [P]laintiff's assault, blackmail and harassment to address that [Coppin State's] Director of Basketball Operations and Assistant Coach had victimized Plaintiff in this manner and to prevent the dissemination of the material used to blackmail [Plaintiff]." *Id.* ¶ 47.

Plaintiff "requested Coppin State conduct its own review of the harassment, sexual assault, and blackmail" that he had endured.  *Id.* ¶ 48.  "The review process further added to Plaintiff's distress."  (ECF No. 14 ¶ 49.)  "During the process and in violation of the [Coppin State's] own guidelines and standards, Plaintiff, a victim of sexual assault, was questioned regarding his past sexual experiences, and inquiry was made into his sexual orientation causing further emotional distress and Plaintiff was deprived of his tuition and housing funds previously provided by [Coppin State]." *Id.*

On November 2, 2022, Plaintiff filed suit in the Circuit Court for Baltimore City, Maryland, which Defendants moved to dismiss.  The court granted Defendants' motion to dismiss and granted

Plaintiff leave to amend.  Following service of Plaintiff's Amended Complaint, which added a claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), Defendants filed the instant Motion; four days later, Defendants removed the action to this court. Following removal, the parties agreed upon a briefing schedule for the Motion, which is now before the court.

The Amended Complaint sets forth six counts: Gross Negligence (Count I); Negligent Hiring and Retention (Count II); Intentional Infliction of Emotional Distress ("IIED") (Count III); Breach of Contract (Count V); Failure to Comply with Reporting Policy and Retaliation in Violation of Title IX (Count VI); and Respondeat Superior (Count VII).[3]  The Motion seeks dismissal of the Amended Complaint on grounds of sovereign immunity and failure to state a cognizable claim.

## II.   LEGAL STANDARDS

### Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction."  *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction."  *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).  Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge.  *Id.*  A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction."  *Id.*  A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true."  *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  "In a facial challenge, 'the facts alleged in the complaint are taken

---

[3] The Amended Complaint contains six, not seven, counts; erroneously, it does not include a Count IV.  To avoid confusion, the court refers to the counts as numbered in the Amended Complaint.

as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

Defendants raise a facial challenge to the court's subject matter jurisdiction, asserting that the doctrine of sovereign immunity bars Plaintiff's state law claims. (ECF No. 16 at 9–14, 18–22.) The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

## Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain

that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.  CONSIDERATION OF EXHIBITS

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker*

*v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'"  *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment.  *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").

Attached to Defendants' Motion is one exhibit—"Division I: Notification of Transfer." (ECF No. 16 at pp. 33–34; "the Exhibit.")  The Exhibit is neither material to, nor relied upon in, the Amended Complaint.  The Exhibit is merely a resource for Division I athletes seeking to transfer and provides information regarding the transfer rules.  *Id.*  Plaintiff's rights and entitlements on which he relies to state his claims or that otherwise form the basis of his claims do not arise out of the "very existence" of the Exhibit.  Therefore, the Exhibit is not integral to the Amended Complaint, and the court will not consider it in ruling on the Motion.

## IV. <u>ANALYSIS</u>

### A. <u>State Sovereign Immunity</u>

State sovereign immunity "is a broad[] doctrine that 'bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.'"  *Williams v. Morgan State Univ.*, 850 F. App'x 172, 174 (4th Cir. 2021) (quoting *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019)); *see Stern v. Bd. Of Regents, Univ. Sys. of Md.*, 380 Md. 691, 700 (2004) (explaining that the "[t]he doctrine of sovereign immunity has long been recognized as applicable in actions against the State of Maryland and its official representatives.").  "[W]hen a governmental agency or actor can, and

does, avail itself of the doctrine of sovereign immunity, no contract or tort suit can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Stern,* 380 Md. at 701. "[T]he question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling.'" *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Palmer v. Ohio*, 248 U.S. 32, 34 (1918)).

The parties do not dispute, and the court is satisfied, that Coppin State, as a constituent institution of USM, is an instrumentality of the State for sovereign immunity purposes. MD. CODE, EDUC. §§ 12-101(b)(6)(vi), 12-102(a)(1)-(3) (providing that Coppin State is a "constituent institution" of USM and USM is "an instrumentality of the State" and "an independent unit of State government"). In addition, inasmuch as Plaintiff alleges that Carter and Dixon are employees, agents, or servants of Coppin State, they are entitled to the same immunity to the extent they are sued in their official capacities. MD CODE ANN., STATE GOV'T § 12-105 ("State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article.").

### 1.  Tort Claims (Counts I, II, and III)

Defendants argue that, pursuant to the Maryland Tort Claims Act, MD CODE ANN., STATE GOV'T ("SG") §§ 12-101, *et seq.* ("MTCA"), Coppin State, USM, and the State of Maryland are entitled to immunity as to Plaintiff's claims in Counts I (gross negligence) and III (IIED). (ECF No. 16 at 9–10.) Defendants additionally argue that Carter and Dixon are entitled to MTCA immunity as to Counts I and III because the Amended Complaint contains only conclusory allegations as to gross negligence or malice. *Id.* at 12–14. As to Count II (Negligent Hiring and Retention), Defendants argue that Carter and Dixon are entitled to MTCA immunity because

negligence claims are "the very type of non-malicious conduct" for which they retain their immunity. *Id.* at 11. In response, Plaintiff contends that "[w]hether immunity extends to the State but not to Carter, Dixon, and Brownlee, or vice versa, cannot be determined on the face of the pleading" "because the acts and omissions of Carter, Dixon, and Brownlee could be determined to be only negligent, in which case the State is not immune, or grossly negligent or malicious, in which case the State is." (ECF No. 13 at 16–18.)

The MTCA provides in relevant part:

> (a) (1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection.
>
> (2) The liability of the State and its units may not exceed $200,000 to a single claimant for injuries arising from a single incident or occurrence.
>
> (b) Immunity is not waived under this section as described under § 5-522(a) of the Courts and Judicial Proceedings Article . . . .

SG § 12-104.

Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-522 provides:

> (a) Immunity of the State is not waived under § 12-104 of the State Government Article for:
>
> > (1) Punitive damages;
> >
> > (2) Interest before judgment;
> >
> > (3) A claim that arises from the combatant activities of the State Militia during a state of emergency;
> >
> > (4) Any tortious act or omission of State personnel that:
> >
> > > (i) Is not within the scope of the public duties of the State personnel; or
> > >
> > > (ii) Is made with malice or gross negligence;
> >
> > (5) A claim by an individual arising from a single incident or occurrence that exceeds $200,000; or

>       (6) A cause of action that law specifically prohibits.
>
>       (b) State personnel, as defined in § 12-101 of the State Government
>       Article, are immune from suit in courts of the State and from liability
>       in tort for a tortious act or omission that is within the scope of the
>       public duties of the State personnel and is made without malice or
>       gross negligence, and for which the State or its units have waived
>       immunity under Title 12, Subtitle 1 of the State Government
>       Article, even if the damages exceed the limits of that waiver . . . .

"As a result, the State does not waive its sovereign immunity for any tortious acts outside the scope of employment or when a 'state personnel' acts with malice or gross negligence." *Barbre v. Pope*, 402 Md. 157, 175 (2007); *see Rodriguez v. State*, 218 Md. App. 573, 615 (2014) ("When we read SG § 12-104 and CJP § 5-522 together, it is clear that State personnel are immunized for their tortious conduct committed within the scope of their public duties, unless that conduct was . . . committed 'with malice or gross negligence[.]'") (quoting CJP § 5-522(a)(4)(ii)).

The Supreme Court of Maryland "has observed that, when read in tandem, [SG § 12-104 and CJP § 5-522] establish that the tort 'liability of the State and [the tort] liability of individual State personnel are mutually exclusive. If the State is liable, the individual is immune; if the individual is liable, the State is immune." *Marks v. Dann*, DKC-13-0347, 2013 WL 8292331, at *7 (D. Md. July 24, 2013) (quoting *Newell v. Runnels*, 407 Md. 578, 635 (2009)); *see Francis v. Maryland*, No. CV ELH-21-1365, 2023 WL 2456553, at *28 (D. Md. Mar. 10, 2023) ("If State personnel defendants are entitled to statutory immunity, any claims against them are instead asserted against the State itself. If, however, the state personnel are not entitled to immunity under the statute, then the State is immune from liability for their conduct."). In other words, "[a]t issue in MTCA cases like this one . . . is not whether a person injured by tortious state action . . . will have any remedy, but whether that remedy will lie against a state official in his or her personal capacity or against the state itself." *Marks v. Dann*, 600 F. App'x 81, 85 (4th Cir. 2015). The

11

Supreme Court of Maryland "has recognized consistently that the determination of whether a State actor enjoys State personnel immunity is a question for the trier of fact." *Newell*, 407 Md. at 636.

### a.      Gross Negligence (Count I)

"The determination of malice or gross negligence is not governed by the label of the claim filed, but by the conduct required." *Doe v. Bd. of Trustees of St. Mary's Coll. of Maryland*, No. CV CBD-19-1760, 2019 WL 6215543, at *4 (D. Md. Nov. 20, 2019); *see Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 739 (D. Md. 2013) (concluding that gross negligence was sufficiently alleged where only negligence was asserted as a claim). In order to overcome MTCA immunity at the pleading stage, a complaint must "sufficiently allege[] malice or gross negligence." *Barbre*, 402 Md. at 181–82. "[A] plaintiff 'must point to specific facts that raise an inference that [the official's] actions were improperly motivated.'" *Francis*, 2023 WL 2456553, at *29 (quoting *Nero v. Mosby*, 890 F.3d 106, 128 (4th Cir. 2018)). "Merely asserting that an act was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive does not suffice." *Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984).

Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre*, 402 Md. at 187 (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985)). Stated differently, "a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.*

Plaintiff alleges:

> At the time and place aforementioned, the Defendants COPPIN STATE UNIVERSITY, THE UNIVERSITY SYSTEM OF

12

MARYLAND, DEREK CARTER, JUAN DIXON, THE STATE OF MARYLAND ("THE UNIVERSITY DEFENDANTS") were careless, reckless and/or grossly negligent in the control/ operation/ supervision and oversight of the basketball program and those within the program in positions of authority over whom the Defendants had control.

Specifically, the University Defendants, including DIXON and CARTER grossly negligently

> a) procured, retained, appointed to the coaching staff and/or hired an individual (namely LUCIAN BROWNLEE) known to them to be a sexual predator, and to previously have engaged in abusive behavior
>
> b) permitted the Basketball Programs players to engage in rampant drug use on campus, during basketball activities, and off-campus but during basketball activities, by being aware of same and intentionally refusing to stop it
>
> c) by being aware of known prior instances of blackmail without properly reporting same, warning the players or preventing same.

The University Defendants so utterly disregarded the rights of Ibn Williams to have a safe environment, and to participate safely as a NCAA division I basketball recruit at Coppin State that they acted as if Ibn Williams' rights did not exist.

The facts that support the above allegations, that Carter and Dixon acted with disregard of Ibn Williams rights include but are not limited to:

> a. Juan Dixon's admission of actual knowledge that Lucian Brownlee was a predator, sexually and otherwise.
>
> b. Juan Dixon's and Derek Carter's knowledge of drug use by the basketball team and a member of the coaching staff, refusing to take any action to prevent such behavior and exposing Williams to an unsafe environment that facilitated Brownlee's wrongful behavior.
>
> c. Juan Dixon's and Derek Carter's knowledge of fraudulent misappropriation of University finances to perpetrate a fraud on Ibn Williams

13

> d. Juan Dixon's and Derek Carter's purposeful refusal to
> properly advise the team, or the student body, of the
> instances of prior blackmail that had been reported to them.
>
> e. The purposeful retaliation against IBN WILLIAMS for
> making this claim to JUAN DIXON.
>
> …
>
> DEREK CARTER and JUAN DIXON purposefully covered up
> BROWNLEE's past instances of predatory behavior, past instances
> of blackmail to other students on the basketball team, and
> purposefully retaliated against IBN WILLIAMS for reporting the
> blackmail.

(ECF No. 14 ¶¶ 53–56, 79.)[4]

Plaintiff further alleges that Carter and Dixon hired Brownlee knowing him "to be a sexual

predator, and to previously have engaged in abusive behavior" and purposefully refused "to

properly advise the team, or the student body, of the instances of prior blackmail."  Such

allegations permit an inference that Carter and Dixon acted with gross negligence.  *See Francis*,

2023 WL 2456553, at *30 (concluding that, at the motion to dismiss stage, the individual defendant

is not entitled to immunity where the complaint lodges a gross negligence claim against the

individual defendant and the individual defendant "is accused of intentional and unprovoked

violence").

Construed in the light most favorable to Plaintiff and taken as true, Plaintiff's allegations

are sufficient on their face to support a conclusion that Defendants Carter and Dixon acted with

reckless and/or thoughtless disregard of the consequences to the rights of students on the basketball

---

[4] Plaintiff does not allege that Carter and Dixon acted outside the scope of their employment duties; rather, Plaintiff alleges they failed to fulfill their duties to students (including Plaintiff) with reckless disregard for the rights of students, including Plaintiff, and with awareness and appreciation of the potential harmful consequences of their failures.

team, including Plaintiff.  As a result, at this stage of the case, Carter and Dixon are not entitled to immunity under the MTCA for Plaintiff's gross negligence claim (Count I).

Because Coppin State, USM, and the State of Maryland enjoy the protection of sovereign immunity for the gross negligence of their personnel/employees, the Motion will be granted as to Count I as against Coppin State, USM, and the State of Maryland.  *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-522 ("Immunity of the State is not waived . . . for . . . Any tortious act or omission of State personnel that: (i) Is not within the scope of the public duties of the State personnel; or (ii) Is made with malice or gross negligence . . .").  In sum, the Motion will be denied as to Count I as against Carter and Dixon; and granted as to Count I as against Coppin State, USM, and the State of Maryland.

### b.    *Negligent Hiring and Retention (Count II)*

Defendants Carter and Dixon argue they are immune from liability for negligent hiring and retention as asserted in Count II.  (ECF No. 16 at 11–12.)  The court agrees.

As set forth above, the MTCA provides in part that "State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." MD. CODE ANN., CTS. & JUD. PROC. § 5-522(b).  In Count II, Plaintiff alleges that "Defendants were negligent in failing to exercise due care in hiring, supervising and retaining incompetent individuals and that such negligence was a proximate cause of the plaintiff's injuries or damages." (ECF No. 14 ¶ 61.)  Accordingly, Defendants Carter and Dixon are entitled to immunity under the MTCA, and the Motion will be granted as to Count II as against Defendants Carter and Dixon.

### 3.     IIED (Count III)

Defendants argue that the court should dismiss Count III for IIED as against Carter and Dixon because the claim relies on conclusory allegations of malice or gross negligence, which are inadequate to "defeat" the immunity that would otherwise shield them from liability for merely negligent acts undertaken as Coppin State employees.  (*See* n.4, *supra.*)  (ECF No. 16 at 11–12.) Defendants additionally argue that Coppin State, USM, and the State of Maryland are entitled to immunity as to Plaintiff's IIED claim because Plaintiff alleges "intentional and/or reckless conduct of an extreme outrageous nature that proximately caused his emotional injuries," which squarely falls within the ambit of their MTCA immunity.  (ECF No. 16 at 10.)

With respect to whether Carter and Dixon are immune as individual Coppin State personnel, "[i]n cases involving allegations of malice . . .  well-pled facts showing 'ill-will' or 'evil or wrongful motive' are sufficient to take a claim outside of the immunity and non-liability provisions of the MTCA." *Barbre*, 402 Md. at 182.  As to USM, Coppin State, and the State of Maryland, "[w]hile 'malice' is not an element of the claim of IIED, it satisfies the legislative intent of protecting the State from suits based upon alleged intentional misconduct that is required by the IIED elements.  The essence of IIED claims is to 'intentionally' bring about 'injury.'" *Doe v. Bd. of Trustees of St. Mary's Coll. of Maryland*, No. CV CBD-19-1760, 2019 WL 6215543, at *4 (D. Md. Nov. 20, 2019).  Importantly, "[t]he conduct necessary to establish an IIED claim comports with the Maryland definition of malice." *Id.*

Here, Plaintiff alleges:

> Defendants are liable to plaintiff for the tort of intentional infliction of emotional distress in that (a) the acts of the Defendants and Plaintiffs emotional distress resulting therefrom were the result of intentional and/or reckless conduct on the part of Defendants; (b) the conduct was extreme and outrageous; (c) the conduct of Defendants was the proximate cause of the emotional injuries

16

> sustained by Plaintiff; and (d) the emotional distress sustained by Plaintiff was genuine and substantial and had a demonstrable negative effect on his life and work and has forced Plaintiff to seek medical and or psychological attention.
>
> …
>
> DEREK CARTER and JUAN DIXON purposefully covered up BROWNLEE's past instances of predatory behavior, past instances of blackmail to other students on the basketball team, and purposefully retaliated against IBN WILLIAMS for reporting the blackmail.
>
> As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained severe emotional distress, resulting in bodily injury. Plaintiffs emotional distress manifested itself in fear, humiliation, depression, insomnia, anxiety attacks and other distress. Plaintiff IBN WILLIAMS, was seriously and permanently injured, suffered and will experience great pain and suffering, will be required to expend large sums of money for medical care and attention, and has been and will in the future be disabled and prevented from attending to his necessary affairs and business.

(ECF No. 14 ¶¶ 77, 79–80.)

Construed in the light most favorable to Plaintiff and taken as true, Plaintiff's allegations are sufficient on their face to support a conclusion that Defendants Carter and Dixon acted with malice. *See Doe*, 2019 WL 6215543, at *4 (concluding that allegations of intentional misconduct are sufficient to establish malice). Accordingly, at this stage, Carter and Dixon are not entitled to immunity from liability for IIED, as alleged in Count III. Because Coppin State, USM, and the State of Maryland enjoy the protection of sovereign immunity for malicious tortious acts of personnel, the Motion will be granted as to Count III as against Coppin State, USM, and the State of Maryland.[5]

---

[5] The court addresses below Defendants' 12(b)(6) argument as to Count III.

### 2.      Breach of Contract (Count V)

As stated above, "when a governmental agency or actor can, and does, avail itself of the doctrine of sovereign immunity, no contract or tort suit can be maintained thereafter against it unless the General Assembly has specifically waived the doctrine." *Stern v. Bd. of Regents, Univ. Sys. of Md.*, 380 Md. 691, 701 (2004).  Pursuant to SG sections 12–201 and 12-202, "the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action . . . based on a written contract that an official or employee executed for the State" provided that "the claimant files suit within 1 year after the later of: (1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim."  SG §§ 12-201, 12-202.

Defendants assert they are entitled to sovereign immunity on Plaintiff's breach of contract claim because Plaintiff fails to allege a written contract and failed to meet the one-year filing deadline.  (ECF No. 16 at 18–22.)  In response, Plaintiff contends that discovery is necessary to determine "the dates on which the contract was completed, and Plaintiff's claim for breach [of contract] arose."  (ECF No. 13 at 25.)

SG section 12–201(a) "requires that a waiver of sovereign immunity exists only where it is 'based on a written contract that an official or employee executed for the State.'"  *Stern*, 380 Md. at 720–21.  The Supreme Court of Maryland "has interpreted this provision to mean that the contract in dispute must be both 'reduced to writing' and 'signed by a person expressly authorized to execute the contract.'"  *Student "C" v. Anne Arundel Cty. Cmty. College*, 513 F. Supp. 3d 658, 664–65 (D. Md. 2021) (quoting *Stern*, 380 Md. at 720–22 (noting that a statutory waiver of qualified immunity must be read in a "narrow light")).  "Indeed, '[l]etterhead, a school stamp or a school insignia on a document will not suffice to waive the defense of sovereign immunity under § 12-201(a).'"  *Id.* at 664 (quoting *Stern*, 380 Md. at 723).

On this issue, the court finds *Student "C"* informative.  513 F. Supp. 3d 658 (D. Md. 2021).

There, the parties disputed whether the defendant waived sovereign immunity as to the plaintiff's

breach of contract claim.  *Id.* at 663.  In analyzing whether the agreement at issue was a written

contract, the court explained:

> Plaintiff's Amended Complaint alleges that Plaintiff "had an express contract that called for the Plaintiff to fully pay demanded In-Person Tuition in exchange for Defendant's provision of in-person, in-classroom education," and further attests that the "contract agreement was executed by an official with authority to bind [AACC]." Plaintiff argues that these vague assertions should be credited as true and  are enough for the court to infer that a written contract exists. Plaintiff offers no other factual assertions to identify the alleged written contract. For example, Plaintiff does not allege what state or county official signed the contract, when the contract was written or executed, or how the terms of the contract were communicated to Plaintiff. Indeed, it appears Plaintiff does not actually know whether a written contract exists but "believes that [he] will, after appropriate discovery [in] this matter, be able to introduce binding tuition agreements that include all of the elements of contracts." In short, Plaintiff's Amended Complaint amounts to mere speculation that a written contract to provide in-person classes was created and breached, which does not constitute a plausible claim for relief. *See Twombly*, 550 U.S. at 555 (explaining that the "[f]actual allegations must be enough to raise a right to relief about the speculative level").
>
> Though it may be true that a plaintiff need not "cite precise contractual provisions in order to state a claim for breach of contract," *Class Produce Grp. LLC v. Harleysville Worchester Ins. Co.*, No. ELH-16-3431, 2018 U.S. Dist. LEXIS 49023, 2018 WL 1471682, at *9 (D. Md. Mar. 23, 2018), where a written contract is required to state a viable claim, a plaintiff must include facts to adequately show a sufficient writing exists. *See, e.g., Fidelity Nat'l Title Ins. Co. v. Radford*, No. &:15-CV-00018, 2016 U.S. Dist. LEXIS 71901, 2016 WL 3102233, at *5 (W.D. Va. June 2, 2016) (dismissing breach of contract claim because although the parties "may well have entered into a contract," plaintiff could not identify a writing that could constitute a written contract and the statute of limitations barred claims based on oral contracts); *Marley Mouldings, Inc. v. Suyat*, 970 F. Supp. 496, 500 (E.D. Va. 1997) (holding plaintiff did not state a cognizable claim where no written contract was identified and the breach of oral contract claims were

> barred by the statute of limitations). Because Plaintiff's Amended Complaint is devoid of any facts that identify a written contract, the Court finds he has not stated a plausible claim that AACC waived its sovereign immunity under Maryland Code Annotated State Government Article § 12-201 or Courts and Judicial Proceedings Article § 5-510 by entering into a signed, written contract.
>
> …
>
> Here, Plaintiff's Amended Complaint claims "[AACC] has a written tuition and fee refund policy, enacted pursuant to [AACC]'s delegated authority to create tuition policies and collect and refund on the same, one that should allow for refunds under these circumstances." The Amended Complaint contains no further allegations regarding when or how that refund policy was authorized and adopted, nor who is subject to the policy. Plaintiff defends his bare bones allegations by asserting, "[I]t is obvious that some sort of refund policy was created by [AACC], although, in the absence of discovery,  Plaintiff does not yet know what the exact terms of that refund policy are." Like his speculation regarding a written contract, Plaintiff's vague allegations fall short of identifying a relevant refund policy authorized by the legislature and adopted by AACC to waive sovereign immunity. The Court also notes the kind of refund policy that could preserve Plaintiff's claim under Frankel—one formally adopted by AACC based on a specific delegation by the General Assembly—is not likely to be in the sole custody or control of AACC and would not require the tools of formal discovery to uncover.

513 F. Supp. 3d at 664–66 (internal ECF citations omitted).  Accordingly, the *Student "C"* court

dismissed the plaintiff's breach of contract claim, reasoning that sovereign immunity bars the

claim "unless it is based on a signed writing or a specific refund policy, neither of which has been

plausibly identified or alleged by Plaintiff."  *Id.* at 666.

Here, Plaintiff alleges:

> When recruited by Defendant Coppin State University's basketball program, Plaintiff contracted in a written contract for the University to provide financial assistance for tuition and housing pursuant to a written document, that was by its own terms in effect for a period of four years from its signing in April of 2018.
>
> The contract was signed by an authorized University employee namely the Athletic Director DEREK CARTER.

Subsequent to bringing to light the sexual assaults and harassment Plaintiff suffered at the hands of LUCIAN BROWNLEE, a member of the coaching staff and an employee, agent and/or servant of COPPIN STATE UNIVERSITY's basketball program, Defendants reneged on the contractual promises and breached this agreement on a continuing basis for the entire term of the contract.

Promised and previously provided financial assistance in the form of housing costs and tuition assistance were withheld from Plaintiff upon his return to COPPIN STATE UNIVERSITY for the 2020 fall semester and thereafter and eventually, among the other wrongful acts set forth above, forced Plaintiff to seek enrollment at another college.

(ECF No. 14 ¶¶ 82–85.)

In contrast to *Student "C,"* here, Plaintiff alleges sufficient facts to identify a written contract.  *Id.*  Specifically, Plaintiff alleges that a written contract existed to provide financial assistance for tuition and housing for a period of four years from its signing in April of 2018. Plaintiff also names the school official, Carter, who signed the written contract.  Plaintiff need not "cite precise contractual provisions in order to state a claim for breach of contract."  *Class Produce Grp. LLC v. Harleysville Worchester Ins. Co.*, No. ELH-16-3431, 2018 U.S. Dist. LEXIS 49023, 2018 WL 1471682, at *9 (D. Md. Mar. 23, 2018).

As referenced above, in addition to a signed writing, SG section 12–202 has been read to require as a condition precedent to the State's waiver of sovereign immunity that "contract actions against the State must be brought within one year of the injury."  *Challenger Transp., Inc. v. Washington Metro. Area Transit Auth.*, No. CIV.A. TDC-I4-3322, 2015 WL 4608060, at *4 (D. Md. July 30, 2015) (citing *Samuels v. Tschechtelin*, 135 Md. App. 483, 540 (2000) (affirming that "[t]he rule in Maryland is that when a statute creating a cause of action contains a limitation period on the filing of such cause of action that limitation will not be considered an ordinary statute of limitations but rather a condition precedent")).  In other words, Plaintiff's breach of contract claim

21

is barred by sovereign immunity "unless the claimant files suit within 1 year from the date on which the claim arose or within 1 year after completion of the contract giving rise to the claim, whichever is later." *Lewis v. Balt. Convention Ctr.*, 231 Md. App. 144, 153 (2016).

Defendants argue that Plaintiff's breach of contract claim "arose when the 'promised' financial assistance was allegedly withheld 'upon his return to Coppin State University for the 2020 fall semester.'" (ECF No. 16 at 21.)  Therefore, the argue, because Plaintiff did not initiate suit until November 2, 2022, Defendants retain their statutory immunity. *Id.* at 21–22.  In response, as described earlier, Plaintiff maintains that "[d]iscovery is needed to determine the dates on which the contract was completed, and plaintiff's claim for breach arose." (ECF No. 13 at 25.)

On the face of the pleading, the court does not find that Plaintiff's breach of contract claim is barred by sovereign immunity on the basis of Plaintiff's failure to fulfill the statutory condition precedent of timeliness.  According to the Amended Complaint, the written contract "was by its own terms in effect for a period of four years from its signing in April of 2018." (ECF No. 14 ¶ 82.)  Therefore, "1 year after completion of the contract giving rise to the claim" would be April of 2023.  Plaintiff filed suit on November 2, 2022.  Accordingly, the Motion will be denied as to Count V.

### B.   <u>Failure to State a Claim</u>

#### 1.   **Negligent Hiring and Retention (Count II)[6]**

Defendants argue that Count II should be dismissed because Plaintiff fails to allege "facts from which it could be inferred that [Coppin State] hired or retained Mr. Brownlee with actual or constructive notice of his alleged dangerousness." (ECF No. 16 at 14.)

---

[6] As set forth in Section IV.a.1.b., *supra,* Defendants Carter and Dixon are immune from liability as to Count II.

"An employer is obligated 'to the public to use due care in selecting and retaining only competent and careful employees.'" *State v. Jones*, 197 Md. App. 638, 669–70 (2011), *rev'd on other grounds,* 425 Md. 1 (2012) (citing *Henley v. Prince George's Cnty.,* 60 Md. App. 24, 36 (1984)).

> To state a claim for negligent hiring, training, or supervision, Plaintiff must show: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of plaintiff's injuries."

*Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022); *see also Mitchell v. Rite Aid of Maryland, Inc.* 257 Md. App. 273, 333, *cert. denied,* 483 Md. 579 (2023) (same); *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254, 272–73 (2011), *abrogated on other grounds by Plank v. Cherneski*, 469 Md. 548 (2020) (same); and *Francis v. Maryland*, No. CV ELH-21-1365, 2023 WL 2456553, at *35 (D. Md. Mar. 10, 2023) (same).

"[U]nder Maryland law 'the Plaintiff must establish that her injury was caused by the tortious conduct of a coworker . . . .'" *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 419 (D. Md. 2022) (quoting *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996)).  But a "negligent hiring, training, supervision, and retention 'must be based on actions that constitute a common law violation, not a federal statutory violation.'" *Id.* at 419–20 (quoting *Nammack v. Hampstead Pre-Owned*, DKC-19-1798, 2020 WL 1033589, at *6 (D. Md. Mar. 3, 2020) and citing *Young v. Hous. Auth. of Balt. City*, MJG-17-713, 2017 WL 5257127, at *12 (D. Md. Nov. 13, 2017) (dismissing negligent hiring claim on the ground that there was no "underlying tort claim at common law that could give rise to a negligence claim in this context"); *see also Bryant*, 923 F. Supp. at 751 (explaining that a court "may not impose liability on

employers for failing to prevent a harm that is not a cognizable injury under the common law")
(citation and internal quotation marks omitted)).

Although Plaintiff's Title IX claim may not form the predicate for Plaintiff's negligent
retention/supervision claim, Plaintiff's IIED and gross negligence claims against Defendant
Brownlee are at issue, because Brownlee filed an answer (ECF No. 15).  *See Doe, supra* 595 F.
Supp. at 419–20; *Cf. Parker v. Ciena Corp.*, WDQ-14-4036, 2016 WL 153035, at *7 (D. Md. Jan.
12, 2016) (noting that the plaintiff's negligent hiring claim would have been viable if she stated a
claim for IIED).

Plaintiff alleges that Defendants hired and retained Brownlee knowing of his "dangerous
or predatory tendencies," and covered up Brownlee's "past instances of predatory behavior, [and]
past instances of blackmail to other students on the basketball team[.]"  (ECF No. 14 ¶¶ 54, 56,
69, 79.)  Construed in the light most favorable to Plaintiff (and taken as true), the Amended
Complaint sufficiently alleges that Defendants negligently hired, retained and supervised
Brownlee, "thereby providing him an opportunity to engage in tortious conduct."  *Doe*, 595 F.
Supp. 3d at 420; *see Bryant*, 923 F. Supp. at 751 (noting that the plaintiff alleging negligent
supervision must show that "the employer knew or should have known that the individual was
potentially dangerous").  Accordingly, the Motion will be denied as to Count II as against
Defendants Coppin State, USM and the State of Maryland with respect to the hiring, retention, and
supervision of Brownlee.[7]

---

[7] To the extent Plaintiff seeks to assert a claim that Coppin State, USM, and the State of Maryland are liable for the
negligent hiring of Dixon and Carter, which "resulted in" the hiring of Brownlee, *see* ECF No. 14 ¶¶ 68–72, 74,
Plaintiff alleges no facts to suggest that Coppin State, USM, and/or the State of Maryland knew, or should have known,
that Dixon and Carter were "incompetent to hold" their positions at the time of their respective hiring, or otherwise
during the relevant period relative to Brownlee's hiring, retention, and supervision.  *See Bryant v. Better Bus. Bureau*,
923 F. Supp. 720, 751 (D. Md. 1996) (noting that for a negligent training and supervision claim, the plaintiff must
allege that employer knew or should have known of the employee's "conduct or general character which would have
caused a prudent employer in these circumstances to have taken action."); *Jarvis v. Securitas Sec. Servs. USA, Inc.*,
No. 11-CV-00654-AW, 2012 WL 527597, at *6 (D. Md. Feb. 16, 2012), *aff'd sub nom. Jarvis v. Contractor Securitas*

2.      **IIED (Count III)[8]**

Defendants argue that Count III should be dismissed in accordance with Rule 12(b)(6) because the Plaintiff fails to allege facts sufficient to support an IIED claim.  (ECF No. 16 at 16.)

"To state a prima facie case of intentional infliction of emotional distress, a plaintiff must allege facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 624 (D. Md. 2014) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). "When attempting to make such a showing, plaintiffs need to plead with specificity, as reciting 'in conclusory form the bare elements of an intentional infliction of emotional distress claim' will not do." *Lilly v. Balt. Police Dep't*, No. CV RDB-22-2752, 2023 WL 6216605, at *18 (D. Md. Sept. 25, 2023) (quoting *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 683 (D. Md. 2012)).  *See Farasat, supra; see also Lee v. Queen Anne's Cnty. Off. of Sheriff*, No. CIV.A. RDB-13-672, 2014 WL 476233, at *16 (D. Md. Feb. 5, 2014) (dismissing IIED claim where the plaintiff "alleges that he struggles sleeping, avoids socializing, and sees a psychiatrist for anxiety and depression," and "only vaguely alluded to the intensity and the duration of his distress") (citation omitted); *McDaniel v. Maryland*, No. CIV.A. RDB-10-00189, 2010 WL 3260007, at *9 (D. Md. Aug. 18, 2010) (dismissing IIED claim where the plaintiff "has not set forth 'specific facts regarding the nature, intensity, and duration of the alleged emotional trauma'") (quoting *Chin v. Wilhelm*, 2006 U.S. Dist. LEXIS 13101, at *31 (D. Md. Mar. 24, 2006)).  "To be actionable, the conduct relied

---

*Sec.*, 474 F. App'x 271 (4th Cir. 2012) (dismissing negligent hiring claim where "[p]laintiff alleges only that Defendant should be responsible for the actions of its employees without providing any factual basis that Defendant had "actual or constructive knowledge" of the "conduct or general character" of its security guard").  Therefore, Count II shall proceed as against USM, Coppin State, and the State of Maryland with respect to the hiring, retention, and supervision of Brownlee only.

[8] As stated in Section IV.a.1.c., *supra.* Defendants USM, Coppin State, and the State of Maryland are immune from liability for IIED under the MTCA.

upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59–60, *cert. denied*, 306 Md. 118 (1986)). Because of these extraordinarily high pleading hurdles, IIED claims are "rarely viable." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514 (1995).

Here, Plaintiff alleges:

> Defendants are liable to plaintiff for the tort of intentional infliction of emotional distress in that (a) the acts of the Defendants and Plaintiffs emotional distress resulting therefrom were the result of intentional and/or reckless conduct on the part of Defendants; (b) the conduct was extreme and outrageous; (c) the conduct of Defendants was the proximate cause of the emotional injuries sustained by Plaintiff; and (d) the emotional distress sustained by Plaintiff was genuine and substantial and had a demonstrable negative effect on his life and work and has forced Plaintiff to seek medical and or psychological attention.

> During the course of Plaintiff's tenure within the basketball program, Defendant BROWNLEE intentionally harassed and inflicted emotional injury on Plaintiff by subjecting him to outrageous treatment beyond all bounds of decency; examples include but are not limited to sexual assault, blackmail, harassment and coercing Plaintiff to engage in unwanted sexual acts. Defendant mentally abused Plaintiff and treated him in a demeaning and inferior manner, which no reasonable person could be expected to endure.

> DEREK CARTER and JUAN DIXON purposefully covered up BROWNLEE's past instances of predatory behavior, past instances of blackmail to other students on the basketball team, and purposefully retaliated against IBN WILLIAMS for reporting the blackmail.

> As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained severe emotional distress, resulting in bodily injury. Plaintiffs emotional distress manifested itself in fear, humiliation, depression, insomnia, anxiety attacks and other distress. Plaintiff IBN WILLIAMS, was seriously and permanently injured, suffered and will experience great pain and suffering, will be required to expend large sums of money for

> medical care and attention, and has been and will in the future be
> disabled and prevented from attending to his necessary affairs and
> business.

(ECF No. 14 ¶¶ 77–80.)

Construed in the light most favorable to Plaintiff, Plaintiff's relevant allegations in the Amended Complaint are conclusory as to Defendants Carter and Dixon. While Plaintiff makes allegations of assault, sexual harassment, blackmail, and coercion of sexual acts, those allegations pertain only to Defendant Brownlee. Carter and Dixon's alleged cover up of Brownlee's past predatory behavior and blackmail does not satisfy the high bar imposed by Maryland law to state a claim for IIED. Further, Plaintiff's alleged harm is also insufficient to sustain an action for IIED. Plaintiff alleges that he was "seriously and permanently injured," and "prevented from attending to his necessary affairs and business," and that he sustained various forms of emotional distress (including insomnia, humiliation, and depression) for which he sought/seeks healthcare (ECF No. 16 ¶¶ 40, 80), but "has not set forth 'specific facts regarding the nature, intensity, and duration of the alleged emotional trauma.'" *McDaniel*, 2010 WL 3260007, at *9 (quoting *Chin v. Wilhelm*, 2006 U.S. Dist. LEXIS 13101, at *31); *see Doe*, 123 F. Supp. 3d at 759 n.6 ("Maryland courts have previously found no severe emotional distress . . . : (1) where a plaintiff visited a psychologist once, experienced feelings of insecurity and weight loss, and developed an inability to trust others, *Caldor*, 625 A.2d at 963–65 (Md. 1993); (2) where a plaintiff suffered from severe depression, humiliation, and anxiety, *Hanna v. Emergency Med. Assocs.*, 77 Md. App. 595, 551 A.2d 492, 499 (1989); (3) where a plaintiff failed to specifically allege what kind of treatment he had received, 'how long the treatment lasted, whether it was successful or is still continuing, whether it was periodic or intensive, and so forth,' *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 758 A.2d 95, 115 (2000); and (4) where a plaintiff needed to see a physician, suffered from humiliation, an

aggravated nervous condition, and a newly developed speech impediment, *Harris*, 380 A.2d 611, 616–17.").

Accordingly, the Motion will be granted as to Count III for failure to state a claim.

### 3.    Title IX (Count VI)

Title IX provides, in relevant part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

#### a.    *Individual Liability*

Defendants argue, and the court agrees, that there is no individual liability under Title IX. (ECF No. 16 at 22.)  Plaintiff's response brief does not address Defendants' argument as to individual liability, but contends that he adequately states a claim against Coppin State, USM, and the State of Maryland.  "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals[.]" *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)).  Moreover, "even if the individuals were subject to suit in their official capacities, such suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent[.]'"  *Willey v. Bd. of Educ. of St. Mary's Cty.*, No. 20-cv-161-PWG, 2021 WL 3857950, at *6 (D. Md. Aug. 30, 2021) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  "[T]he real party in interest is the entity," and "a plaintiff seeking to recover . . . in an official-capacity suit must look to the government entity itself."  *Graham*, 473 U.S. at 166.

Here, to the extent Plaintiff seeks to assert the Title IX claim against Carter and Dixon in their individual capacities, the claim is improper.  *See Fitzgerald, supra*; *Does v. Bd. of Educ.*, 644 F. Supp. 3d 149, 157 (D. Md. 2022) ("[B]ecause school officials are not themselves recipients of federal funds, they may not be sued in their individual capacities for violations of Title IX."); *Carter v. Bowie State Univ.*, No. GJH-20-2725, 2022 WL 717043, at *7 (D. Md. Mar. 9, 2022) (dismissing with prejudice Title IX and ADA claims against all the individuals defendants in their personal capacities).  To the extent Plaintiff seeks to assert the Title IX claim against Carter and Dixon in their official capacities, the claim is duplicative because Plaintiff also sues Coppin State, USM, and the State of Maryland.  *See Does*, 644 F. Supp. 3d at 157 ("Because the Title IX claims against the Individual Defendants in their official capacities are duplicative of the Title IX claim against the BOE, they will be dismissed."); *Carter*, 2022 WL 717043, at *7 (dismissing with prejudice Title IX and ADA claims against all the individuals defendants in their official capacities).

Accordingly, Count VI will be dismissed with prejudice as against Defendants Carter and Dixon.

### b.    *Failure to State a Claim*

"The Supreme Court has held that Title IX's ban on 'discrimination' encompasses bans on sexual harassment and retaliation, and that private rights of action are implied for both forms of discrimination under the statute."  *Doe v. Salisbury Univ.*, 17 F. Supp. 3d 481, 487 (D. Md. 2015). In Count VI, Plaintiff appears to allege a claim of sexual harassment and retaliation under Title IX.  (ECF No. 14 ¶¶ 91–99.)

### 1.     Sexual Harassment

In the context of Title IX, "[s]exual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007). "Discrimination under Title IX includes coach-on-student sexual harassment that creates a hostile environment in a school sports program." *Id.* at 694. "To establish a claim of sexual harassment, 'a plaintiff must show that (1) [he] was a student at an educational institution receiving federal funds, (2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.'" *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 488 (D. Md. 2015) (quoting *Jennings*, 482 F.3d at 695). "An institution can be held liable for a Title IX violation only if 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond' or displays 'deliberate indifference' to discrimination.'" *Jennings*, 482 F.3d at 700 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). The court finds *Jennings v. University of North Carolina* instructive.[9] 482 F.3d 686 (4th Cir. 2007) (en banc).

Defendants only dispute whether Plaintiff's pleading satisfies the fourth element—as to whether a basis exists to impute liability to Coppin State, USM, and the State of Maryland. (ECF No. 16 at 23–25.) In response, Plaintiff contends that he sufficiently alleges that Carter and Dixon had actual notice of Brownlee's conduct and failed to address it. (ECF No. 13 at 28–29.) *Jennings, supra,* is instructive.

---

[9] Although *Jennings* was before the court on appeal from a motion for summary judgment, the Fourth Circuit's analysis remains instructive.

In *Jennings*, a former student and soccer player brought a Title IX claim alleging that the school had "allow[ed] . . . the women's soccer coach[ ] to subject her to severe and pervasive sexual harassment." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007). During the plaintiff's freshman year, she notified the school of the hostile sexual environment and lodged a complaint against the coach during a meeting with counsel to the school; the plaintiff described several instances of sexual harassment, as well as the hostile and abusive environment of the women's soccer program. *Id.* at 693–94. Legal counsel to the university "dismissed these concerns and suggested that [the plaintiff] simply 'work it out' with [the coach]." *Id.* at 694.

In analyzing whether a basis existed to impute liability to the university – the *Jennings* court explained:

> Jennings's facts show that in the fall of 1996 Jennings met with Susan Ehringhaus, Assistant to the Chancellor and counsel to the University. Ehringhaus was UNC's highest ranking lawyer and an official responsible for fielding sexual harassment complaints. Jennings informed Ehringhaus that Dorrance had created an abusive environment in the women's soccer program. Ehringhaus was given vivid details of Dorrance's sexual comments about his players when the team was together. Jennings also reported that the situation was causing her intense feelings of discomfort and humiliation. Ehringhaus dismissed this complaint by telling Jennings that Dorrance was a "great guy" and that she should work out her problems directly with him. J.A. 1341–42. Ehringhaus took no action on the complaint, and Dorrance's harassment continued. These facts are sufficient to establish that Jennings gave Ehringhaus, and by extension UNC, actual notice of the hostile environment created by Dorrance. This notice and the University's failure to take any action to remedy the situation would allow a rational jury to find deliberate indifference to ongoing discrimination.

*Id.* at 700–701. Accordingly, the court concluded that the plaintiff adequately set forth a basis to impute liability to the university for the soccer coach's conduct. *Id.*

Here, construed in the light most favorable to Plaintiff, the relevant allegations in the Amended Complaint provide a basis to impute liability to Coppin State, USM, and the State of

Maryland.  Plaintiff alleges that Carter and Dixon were aware of "known violations and acts of harassment," failed to properly report such acts, and "took no remedial action prior to, during, or after plaintiffs assault, blackmail and harassment to address that their Director of Basketball Operations and Assistant Coach had victimized Plaintiff in this manner and to prevent the dissemination of the material used to blackmail [Plaintiff]."  (ECF No. 14 ¶ 47.)  Plaintiff further alleges that once he made Coppin State aware of the alleged harassment, Plaintiff was questioned by an attorney engaged by Coppin State, who questioned him regarding his past sexual experiences, and his sexual orientation.  (ECF No. 14 ¶ 49.)  Plaintiff alleges further that Coppin State then deprived him of "his tuition and housing funds previously provided."  *Id.*

Accordingly, Plaintiff states a claim for sexual harassment under Title IX.  *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 690–91 (4th Cir. 2018) (finding it significant that "after the Feminists United members placed the UMW administration on notice of the hostile environment permeating the campus, the University made no real effort to investigate or end the harassment and threats contained in the Yaks") (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 654 (1999) (recognizing that deliberate indifference can be shown through failure to investigate or failure to attempt to remedy harassment)); *Davis*, 526 U.S. at 654 (explaining that the lack of response could suggest "deliberate indifference on the part of the Board, which made no effort whatsoever either to investigate or to put an end to the harassment"); *Jennings*, 482 F.3d at 701 (explaining that "[u]niversity's failure to take any action to remedy the [harassment] would allow a rational jury to find deliberate indifference to ongoing discrimination"); *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000) (noting that "[a]lthough no particular  response is required, and although the school district is not required

to eradicate all sexual harassment, the school district must respond and must do so reasonably in light of the known circumstances.").

### 2.    Retaliation

Defendants argue that Plaintiff's allegations are insufficient to state a Title IX retaliation claim.  (ECF No. 16 at 25.)  Specifically, Defendants argue that Plaintiff fails to allege facts to suggest that his financial assistance was withheld because he complained about sexual harassment. *Id.* at 26.   In response, Plaintiff contends that during the claimed investigation, Defendants retaliated against him by stopping his financial assistance.  (ECF No. 13 at 30.)

"[W]hen a federally-funded educational institution 'retaliates against a person because he complains of sex discrimination, this constitutes intentional discrimination on the basis of sex, in violation of Title IX.'"   *Feminist Majority Found.*, 911 F.3d at 693–94 (4th Cir. 2018) (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005)).  At the pleading stage, a plaintiff is "required to sufficiently allege two elements to state a Title IX retaliation claim." *Id.* at 694. "First, [he] must allege that [he] engaged in protected activity under Title IX, and second, [he] must allege that — as a result of the[ ] protected activity — [he] suffered an adverse action attributable to the defendant educational institution." *Id.* (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010)).  "To be actionable, the retaliatory conduct must be 'materially adverse'; that is, it must suffice to 'dissuade[ ] a reasonable [person] from making or supporting a charge of discrimination.'"  *Id.* (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).

Construed in the light most favorable to Plaintiff (and taken as true), Plaintiff sufficiently alleges that he engaged in a protected activity under Title IX and, after doing so, Defendants took retaliatory action against him.  Specifically, Plaintiff alleges that he reported the blackmail and

requested that Coppin State "conduct its own review of the harassment, sexual assault and black mail" and that he suffered an adverse action as a result when he was deprived of his tuition and housing funding. (ECF No. 14 ¶¶ 49, 99.)

The Motion will be denied as to Count VI (Title IX – sexual harassment; and retaliation) as against Coppin State, USM, and the State of Maryland, and granted as against Dixon and Carter.

### 4. Respondeat Superior (Count VII)

Defendants argue, and Plaintiff appears to concede, that Plaintiff's respondent superior claim is subject to dismissal because is not an independent, cognizable cause of action. (ECF No. 16 at 26–27.) The court agrees. *See Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 601 (D. Md. 2013) ("[R]espondeat superior is not a separate cause of action."); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 n.8 (D. Md. 2012) (stating that under Maryland law, "there is no separate cause of action for respondent superior" and that it is instead "a doctrine that imputes liability for a cause of action to a principal"), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). Accordingly, the Motion will be granted as to Count VII.

## V. CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 16) will be granted in part and denied in part as follows: granted as to Count I as against Defendants Coppin State, USM, and State of Maryland; granted as to Count II as against Defendants Carter and Dixon; granted as to Count III as against all Defendant movants; granted as to Count VI as against Defendants Carter and Dixon; granted as to Count VII as against all Defendant movants; and denied in all other respects.

Therefore, the case shall proceed as follows:

Count I (Gross Negligence): Defendants Brownlee, Carter, Dixon;

Count II (Negligent Hiring and Retention): Defendants Coppin State, USM, State of Maryland;

Count III (IIED): Defendant Brownlee;

Count V (Breach of Contract): Defendants Coppin State, USM, State of Maryland; and

Count VI (Title IX Harassment and Retaliation): Defendants Coppin State, USM, State of Maryland.


August 22, 2024

/S/
_____
Julie R. Rubin
United States District Judge