IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IBN WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 23-2590-JRR |
| | * | |
| COPPIN STATE UNIVERSITY, *et al.*, | * | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ibn Williams moves to compel Defendants Coppin State University ("CSU"), University System of Maryland, State of Maryland, Derek Carter, and Juan Dixon ("State Defendants") to produce a nine-page memorandum titled "Attorney Legal Analysis of Title IX Claim," authored by Ogletree Deakins, P.C. ("Ogletree"), and dated May 5, 2021 ("Title IX Legal Analysis.") State Defendants oppose, asserting attorney-client privilege and attorney work product protection.

The Court[1] has reviewed Plaintiff's letter brief and sealed exhibits, ECF Nos. 72, 92; State Defendant's response and sealed exhibits, ECF Nos. 81, 82; and Plaintiff's reply, ECF No. 87. For the reasons set forth below, the Court ORDERS the State Defendants to submit the Title IX Legal Analysis for *in camera* review.

---

[1] This matter has been referred to the undersigned for discovery and related scheduling, ECF No. 46.

1

## RELEVANT BACKGROUND[2]

At issue are two documents: the Title IX Legal Analysis which State Defendants have withheld, and a second document ("Investigative Summary"), also created by Ogletree Deakins and dated the same day. CSU sent the Investigative Summary to Plaintiff on May 26, 2021, along with a letter adopting its findings and closing Plaintiff's Title IX complaint, leading to the present litigation.

Plaintiff argues that no attorney-client privilege applies to the Title IX Legal Analysis because, he contends, Ogletree was retained solely as an external Title IX investigator, not as legal counsel, and performed a unified factual investigation under a civil rights investigator contract. *Id.* at 1. Plaintiff alleges that the engagement documents, emails, and billing records show there was one integrated investigative task, not a dual investigative and legal advisory role. ECF No. 84-1.

Plaintiff alternatively contends that CSU waived any privilege by adopting Ogletree's findings as its own Title IX determination, triggering subject-matter waiver over the related analysis. *Id.* at 2. Plaintiff also argues that references to legal risk, which the State Defendants proffer are discussed in the Title IX Legal Analysis, do not transform investigative work into privileged legal advice. *Id.* Finally, Plaintiff notes in his Reply that the State Defendants produced the Civil Rights Investigator Contract Task Order ("Task Order")—which governs their relationship with Ogletree—only *after* Plaintiff filed the instant Motion to Compel. ECF No. 87. Plaintiff further asserts that "[n]othing in the Contract permits Ogletree to provide privileged legal advice," which he contends further supports his positions that Ogletree performed a purely

---

[2] General factual and procedural background of this matter is set forth in Judge Rubin's Memorandum Opinion granting in part and denying in part the State Defendants' motion to dismiss the Amended Complaint. ECF No. 22 at 1-5.

investigative function, so that the Title IX Legal Analysis document is not privileged or protected. *Id.* at 1.

State Defendants oppose production of the Title IX Legal Analysis, arguing that it is protected by both attorney-client privilege and the work-product doctrine. ECF No. 81. They contend that, from the outset, CSU and Ogletree agreed that the firm would provide two separate deliverables: a non-privileged investigative summary and a privileged confidential legal analysis. *Id.* at 1. In support of this factual contention, State Defendants have submitted a declaration by Lisa Horne Early, CSU's Title IX Coordinator during the period at issue, attaching exhibits including the Task Order, emails, and billing records. ECF No. 82. State Defendants contend that this dual-track approach was discussed and approved in advance, reflected in the Task Order's allowance for "other services," and billed and paid as legal work. ECF No. 81.

State Defendants further assert that no subject-matter waiver occurred because adopting the investigative summary did not place the separate (in their view) legal advice at issue. *Id.* at 2. State Defendants argue the Title IX Legal Analysis is additionally protected as attorney work product because it was prepared in anticipation of litigation. *Id.* They note that Plaintiff's Title IX complaint was accompanied by a Notice of Claim seeking $50 million in damages, putting the University on notice of likely litigation before Ogletree conducted its assessment. *Id.* Because the Title IX Legal Analysis was prepared against that backdrop, State Defendants contend it qualifies for work-product protection and should not be compelled. *Id.*

## LEGAL STANDARD

Attorney-client privilege protects confidential communications between a client and an attorney for the purpose of obtaining legal advice. *Black & Decker Corp. v. United States*, 219

3

F.R.D. 87, 90 (D. Md. 2003). Courts have "discretion to determine whether to conduct an in camera review of [ ] documents" claimed to be privileged or protected. *Hall v. Baltimore Police Dep't*, No. RDB-24-1137, 2025 WL 1024069, at *1 (D. Md. Mar. 31, 2025) (quoting *Faller v. Faller*, No. DKC-09-0889, 2010 WL 3834865, at *9 (D. Md. Sept. 28, 2010)).

Generally, "the court should never be required to undertake in camera review unless the parties have first properly asserted privilege/protection, then provided sufficient factual information to justify the privilege/protection claimed for each document, and, finally, met and conferred in a good faith effort to resolve any disputes without court intervention." *Hall*, 2025 WL 1024069, at *1 (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 266 (D. Md. 2008)). The party asserting privilege must establish "an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document." *Id.* at 267. Before granting an in-camera review, there "must [be] a 'showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim of privilege/protection.'" *Prowess, Inc. v. RaySearch Labs. AB*, No. WDQ-11-1357, 2013 WL 509021, at *1 n.2 (D. Md. Feb. 11, 2013).

## ANALYSIS

Here, State Defendants have submitted a declaration and supporting materials asserting that the Title IX Legal Analysis contains confidential legal advice prepared in anticipation of litigation. Through the Declaration of Dr. Early, State Defendants assert that the Title IX Legal Analysis reflects legal and policy analysis from Ogletree attorneys to CSU officials and was expressly labeled "ATTORNEY-CLIENT PRIVLEGED COMMUNICATION," not shared outside of the University, and was prepared against the backdrop of Plaintiff's Title IX complaint

and accompanying $50 million Notice of Claim. *See* ECF No. 81. The Early Declaration also asserts that, from the outset of the engagement, the plan had always been for Ogletree to generate a non-privileged investigative summary and a separate privileged legal analysis. *Id.* In light of this factual showing, the Court finds a sufficient good-faith basis to believe that *in camera* review "may reveal evidence to establish the claim of privilege/protection." *Prowess, Inc.*, 2013 WL 509021, at *1 n.2. *See Hall*, 2025 WL 1024069, at *1; *Victor Stanley*, 250 F.R.D. at 266–67.

At the same time, Plaintiff has pointed to indicia suggesting either that the Title IX Legal Analysis contains non-privileged, severable material subject to disclosure; or that the two documents may functionally constitute a single analysis. In particular, Plaintiff notes that "[t]he Task Order makes no reference to legal advice, litigation preparation, or dual-track reporting"; that Ogletree billed its work on both documents under a single matter number evidently titled "Coppin State University Title IX Investigation"; and that contemporaneous email correspondence arguably suggests Dr. Early was surprised or confused to learn that Ogletree was preparing two separate documents. ECF No. 72 at 1-2.

If the two documents constitute a single analysis, CSU's adoption and disclosure of the Investigative Summary could waive privilege as to any portions of the Title IX Legal Analysis concerning the same subject matter. *See Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 61, 74 (E.D. Va.), *order aff'd in part, modified in part*, 178 F.R.D. 456 (E.D. Va. 1998); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 436 (D. Md. 2005).

**CONCLUSION AND ORDER**

Accordingly, in order for the Court to determine whether the Title IX Legal Analysis contains any non-privileged, non-protected information that may be severed and disclosed, it is

this 15th day of January, 2026, hereby ORDERED that Defendants shall submit the Title IX Legal Analysis for *in camera* review.

/s/
Douglas R. Miller
United States Magistrate Judge
District of Maryland