## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

Chambers of
Douglas R. Miller
United States Magistrate Judge



101 West Lombard Street
Baltimore, Maryland 21201
MDD_DRMChambers@mdd.uscourts.gov
(410) 962-7770

February 10, 2026

To:    Counsel of Record

Re:    *Williams v. Coppin State University et al.*
      Case No. 1:23-cv-02590-JRR

### <u>LETTER OPINION & ORDER</u>

Dear Counsel:

For the reasons which follow, I find that limited portions of the May 5, 2021 "Title IX Legal Analysis"[1] authored by Ogletree Deakins, P.C. ("Ogletree") are not protected by attorney-client privilege or the attorney work-product doctrine and are properly discoverable by the Plaintiff. I find that the remainder of the document is privileged and covered by work-product protection, and therefore not subject to discovery.

General factual and procedural background for this case is set forth in ECF No. 22 at 1-5, Judge Rubin's Memorandum Opinion granting in part and denying in part the State Defendants' motion to dismiss the Amended Complaint.

The relevant factual background for this discovery dispute—including a description of the parties' exhibits—are set forth in ECF No. 95, my Memorandum Opinion and Order directing production of the Title IX Legal Analysis for *in camera* review. The parties' arguments and the relevant caselaw are also set forth in ECF No. 95 and I will not recapitulate them here.

I have reviewed Plaintiff's letter brief and sealed exhibits, ECF Nos. 72, 92; State Defendant's response and sealed exhibits, ECF Nos. 81, 82; and Plaintiff's reply, ECF No. 87. I have also reviewed *in camera* the Title IX Legal Analysis, as well as the May 5, 2021, Ogletree "Investigative Summary" which was adopted by Coppin State University (CSU) and disclosed to Plaintiff.

---

[1] For consistency with prior filings, I will refer to the document by this abbreviated name. To avoid confusion, I note that the document was assigned Bates numbering range CSU000811-19 by the State Defendants.

*Williams v. Coppin State University et al*
Civil Case No. 1:23-cv-02590-JRR
<u>Letter Opinion & Order</u>
Page 2

Based on my review of these materials, I conclude that regardless of how CSU and Ogletree initially conceived of or documented Ogletree's assignment, Ogletree *in fact* undertook three tasks. First, Ogletree developed a written summary of the available evidence surrounding Plaintiff's allegations. I will call this task the "fact summary." Second, Ogletree analyzed whether the available evidence established a violation of CSU's Title IX policy, or other university policies. I will call this task the "policy analysis." Third, Ogletree analyzed the potential civil liability of CSU and its employees in connection with Plaintiff's Notice of Claim. I will call this task the "liability analysis."

I further conclude that, when carrying out the fact summary and policy analysis tasks, Ogletree was not operating as legal counsel providing confidential advice to a client. Rather, it was operating as a Title IX investigator, pursuant to a "Civil Rights Investigator" contract it held with CSU. In that role, Ogletree created output which CSU contemplated disclosing—and ultimately did disclose—to the Plaintiff, in fulfillment of its duties under the then-current regulations for resolving formal complaints of sexual harassment at educational programs and activities receiving federal financial assistance. *See* 34 C.F.R. §§ 106.45 (2021).

Regarding the liability analysis, however, I conclude that Ogletree was acting as legal counsel, creating output intended to be communicated confidentially from attorney to client, and not disclosed to others.

Ogletree reported the output of these three tasks in two documents, the Investigative Summary and the Title IX Legal Analysis. The Investigative Summary contained the full fact summary and an abbreviated version of the policy analysis. It did not contain any of the liability analysis. The Title IX Legal Analysis contained a condensed version of the fact summary, a more extensive version of the policy analysis, and the liability analysis.

I find that the liability analysis in the Title IX Legal Analysis is protected both by attorney-client privilege and work-product protection. It is a quintessential attorney-client communication of legal advice, and was prepared in anticipation of litigation whose risk was made obvious by Plaintiff's Notice of Claim.

By contrast, the expanded policy analysis in the Title IX Legal Analysis is not an attorney-client communication or attorney work product, because Ogletree was not acting in the role of an attorney developing confidential legal advice for a client when it created that output. I therefore find that limited portions of the Title IX Legal Analysis, enumerated below in the Order, are subject to disclosure.

Ogletree's fact summary is also not, standing alone, an attorney-client communication or attorney work product. However, I find that the condensed version of the fact summary in the Title IX Legal Analysis (1) contains no information that was not also included in the Investigative Summary; and (2) reasonably appears to have been included as context for—and thus forms a part

*Williams v. Coppin State University et al*
Civil Case No. 1:23-cv-02590-JRR
<u>Letter Opinion & Order</u>
Page 3

of—the liability analysis. For that reason, I find that portion of the Title IX Legal Analysis is subject to the same attorney-client privilege and work-product protection which applies to the liability analysis.

Because I find that the expanded policy analysis in the Title IX Legal Analysis is not subject to the attorney-client privilege, I do not reach the issue of whether CSU's disclosure of a narrower policy analysis in the Investigative Summary effects subject matter waiver, an issue which has arisen in two Title IX cases cited by the Plaintiff. *See Doe v. Baylor Univ.*, 320 F.R.D. 430, 437 (W.D. Tex. 2017); *Doe v. Phillips Exeter Acad.*, No. 16-CV-396-JL, 2016 WL 5947263, at *4 (D.N.H. Oct. 13, 2016). These cases do, however, underscore a potential peril of engaging the same law firm as both Title IX investigator and legal counsel.

A larger peril is the potential that an educational institution and its outside dual-role investigator-counsel might seek to bury adverse or embarrassing facts and conclusions in a purportedly privileged "legal analysis," while reporting a favorable or sanitized version in an "investigative report" disclosed to a Title IX complainant or others. This would significantly undermine the purposes of Title IX and its implementing regulations. *See generally* 20 U.S.C. § 681; 34 C.F.R. §§ 106.45 & 106.46. And it is presumably what Plaintiff was attempting to ferret out in seeking this discovery.

To be clear, however, that peril does *not* appear to have manifested here. As noted above, I do not find that the Title IX Legal Analysis contains any facts not disclosed in the Investigative Summary. And while I do find that Plaintiff is entitled to discovery of the more extensive policy analysis in the Title IX Legal Analysis, I note that both versions reach the same conclusions.

For the reasons stated above, it is hereby ORDERED that Plaintiff's letter brief, ECF No. 72 (construed as a motion to compel production of the Title IX Legal Analysis) is GRANTED IN PART and DENIED IN PART.

It is further ORDERED that State Defendants shall produce to the Plaintiff a version of the Title IX Legal Analysis (Bates Nos. CSU000811-19), which it may redact as to all but the following components:

- Letterhead & heading (i.e. To, From, Date, and Subject fields)
- Page headers (i.e. recipient, date, and page numbers)
- The first sentence of the final paragraph on page 2
- Section II.B (including footnotes 6, 7, and 8)
- Section III.A (including footnotes 13 and 14)
- Exhibit A[2]
- Exhibit B

---

[2] To clarify, Exhibits A & B were not included in the version of the Title IX Legal Analysis which I reviewed *in camera*. From their descriptions, they appear to be policy documents which may

*Williams v. Coppin State University et al*
Civil Case No. 1:23-cv-02590-JRR
<u>Letter Opinion & Order</u>
Page 4

     Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion and Order of the Court.

                                         Sincerely,

                                         _____ */s/* _____
                                         Douglas R. Miller
                                         United States Magistrate Judge

---

already be in Plaintiff's possession, or which may be publicly available. Should this not be the case, State Defendants may submit these exhibits for *in camera* review if they believe these exhibits are subject to attorney-client privilege or work-product protection (notwithstanding my finding that the corresponding section of the Title IX Legal Analysis is not.)